**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 25-12829 |
| CHICAGO SOUTH LOOP HOTEL OWNER LLC, | Chapter 11 |
| Debtor. | Judge Deborah L. Thorne<br>**Hearing Date:  November 19, 2025**<br>**Hearing Time: 1:00 p.m. Central time** |

**NOTICE OF MOTION**

**TO:**    **The Parties on the attached Service List**

 **PLEASE TAKE NOTICE** that on November 19, 2025, at **1:00 p.m. Central time**, I will appear before the Honorable Deborah L. Thorne, or any judge sitting in her stead, either in courtroom 682 of the Dirksen Federal Building, 219 S. Dearborn St., Chicago, IL 60604, or electronically as described below, and present the attached **Motion of Louis Dodd to Dismiss This Chapter 11 Case or Appoint a Chapter 11 Trustee, and to Shorten Time**.

 **Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

 **To appear by Zoom using the internet,** go to this link: https://www.zoomgov.com/. Then enter the meeting ID.  There is no passcode.

 **To appear by Zoom using a telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID. There is no passcode.

 **Meeting ID and passcode.** The meeting ID for this hearing is 16093621728.  There is no passcode.  The meeting ID can also be found on the judge's page on the court's web site.

 **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

/s/  Mark S. Melickian
Mark S. Melickian (No. 6229843)
RAINES FELDMAN LITTRELL LLP
30 N. LaSalle Street, Suite 3100
Chicago, IL 60602
(312) 704-9400
mmelickian@raineslaw.com

1

## CERTIFICATE OF SERVICE

I, Mark S. Melickian, an attorney, certify that I served or caused to be served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the methods shown on November 10, 2025.

*/s/ Mark S. Melickian*

**Via CM/ECF** on all parties of record entitled to receive notice via CM/ECF

**Via First Class Mail**

Chicago South Loop Hotel Owner LLC
11 W 26th St
Chicago, IL 60616

Harley J. Goldstein and Jeffrey C. Dan
Goldstein & McClintock LLLLP
111 W. Washington Street Suite
1221 Chicago, IL 60602

Department of the Treasury
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

Internal Revenue Service
Mail Stop 5014CHI
230 S. Dearborn Street, Room 2600
Chicago, IL 60604

City of Chicago – Dept. of Law
Bankruptcy Unit
121 N LaSalle Street. Room 107
Chicago IL 60602

Cook County Treasurer
118 N Clark Street
Chicago IL 60602

Hospitality Structured Funding IV LLC
c/o Scott & Kraus LLC
Attn:  Jason Sleezer
150 S. Wacker Drive, Ste. 2900
Chicago, IL  60606-4206

Hospitality Structured Funding IV LLC
9311 Sweetspire Ave
Saint John IN 46373

Gregory Jordan
350 N LaSalle Drive, Ste. 1100
Chicago IL 60564

Paris Fountis
8150 W 111th Street, Suite 12
Palos Hills IL 60465

Paris Spirits LLC
8150 W 111th Street, Suite 12
Palos Hills IL 60465

Premier Hospitality
8150 W 111th Street, Suite 12
Palos Hills IL 60465

Paris Fountis
c/o Chitkowski Law Offices
Attn:  Corey B. Stern
901 Warrenville Rd. Ste. 103
Lisle, IL  60532-4309

Premier Hospitality
c/o Chitkowski Law Offices
Attn:  Corey B. Stern
901 Warrenville Rd. Ste. 103
Lisle, IL  60532-4309

Sector Corporation
8150 W 111th St., Suite 12
Palos Hills IL 60465

Tiffany Webb
429 W Ohio St. Unit 112
Chicago IL 60654

Adam G. Brief
Office of the United States Trustee
Region 11
219 S. Dearborn, Room 873
Chicago, IL  60604

Schmidt Salzman and Moran Ltd
111 W Washington St., Suite 1300
Chicago IL 60602

Vickie White
704 Ambriance
Burr Ridge IL 60527

Sector Corporation
c/o Chitkowski Law Offices
Attn:  Corey B. Stern
901 Warrenville Rd. Ste. 103
Lisle, IL  60532-4309

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHICAGO SOUTH LOOP HOTEL OWNER LLC,<br><br>　　　　　　Debtor. | Case No. 25-12829<br><br>Chapter 11<br><br>Judge Deborah L. Thorne<br><br>**Hearing Date:  November 19, 2025**<br>**Hearing Time: 1:00 p.m. Central time** |

**MOTION TO DISMISS CHAPTER 11 CASE**
**OR APPOINT A CHAPTER 11 TRUSTEE, AND TO SHORTEN TIME**

Louis Dodd, on his own behalf and derivatively on behalf of the debtor, Chicago South Loop Hotel Owner LLC ("**Debtor**"), by and through undersigned counsel, hereby moves this Court to dismiss this chapter 11 case or, in the alternative, to appoint a chapter 11 trustee, and in support, respectfully states as follows:

**BACKGROUND**

1.　　　Louis Dodd ("Dodd") holds a 42.5% membership interest in Chicago South Loop Hotel LLC ("CSLH"), which holds 100% of the membership interest of the Debtor.  Dodd is also the legitimate co-manager and officer of CSLH and arguably the only legitimate manager of CSLH, based on rulings made by this Court in the Debtor's prior, ill-fated trip through a voluntary chapter 11 in 2023 ("**South Loop 1**").[1]  This Court dismissed that case after finding that the persons and entities alleged to have the authority to put the Debtor into bankruptcy at that time did not have such authority, and in fact had engaged in a scheme over several years to illegally divest Dodd of his management role and responsibilities, culminating in the invalid appointment

---

[1]　　　Bankruptcy case no. 23-02595.

of Todd Hansen as manager of Debtor's sole manager/member, CSLH.[2]  Because Hansen's appointment was invalid, his ability to authorize Owner's voluntary petition and to sign any papers in support was similarly invalid and void.  This Court's opinion and order of dismissal of South Loop 1 is appended hereto as **Exhibit 1**.

2.       Hansen did not cede his wrongful control of the Debtor following dismissal of South Loop 1, and as maintained illegitimate control over the Debtor through its parent (CSLH), and thus of the operating hotel itself.  Dodd is the plaintiff in two of three chancery court proceedings pending in Cook County related to the Debtor, its parent, and the hotel assets.[3]  In one proceeding, Dodd seeks a receiver to assume plenary control of the Debtor and its hotel assets (the "**Receivership Action**").  See **Exhibit 2**.[4]  In the other, Dodd pursues remedies for the corporate wrongs committed against him and the Debtor by the illegitimate owners/operators and their hand-picked management company, seeking, among other remedies, the removal of the illegitimate owners/managers, an accounting, and damages for conversion of corporate assets (the "**Corporate Theft Action**").  See **Exhibit 3**.

3.       As set forth in both the Corporate Theft Action and Receivership Action, Hansen and other invalid control parties refused to relinquish their invalid control after the dismissal of South Loop 1, leaving Dodd to pursue his remedies in state court.  While the Corporate Theft Action has not reached trial, the Receivership Action proceeded to the point where, on August 19, 2025, the presiding court held, on facts and law, that a receiver should be appointed over Owner.  All that remained to occur was the state court's entry of an order of appointment.

---

[2]       *See In re Chicago South Loop Hotel Owner LLC*, 2023 WL 3643533 (Bankr. N.D. Ill., May 24, 2023).  The illegitimate owners/managers appealed the dismissal but soon thereafter dismissed the appeal without further action.
[3]       The third state court matter is an action to quiet title.  Dodd is not a party to the third suit.  However, all three suits are subject to the motion to consolidate for which this court entered an order granting relief from stay to allow the motion to consolidate to move forward.
[4]       Exhibits 2 and 3 are appended without their voluminous exhibits.

4.      As of the close of business on August 19, 2025, the alleged control parties needed a miracle to prevent the appointment of a receiver for Owner.  A miracle they received, in the form of an involuntary proceeding commenced by a single alleged creditor (Tiffany Webb – "**Webb**") on August 20, 2025.[5]  Notably, the Debtor - directed by Hansen - did not oppose the involuntary but immediately consented to it.  Judge Barnes entered an order for relief on September 11, 2025 [Dkt. 15].

5.      Since the order for relief, activity in the case has been limited.  The Debtor filed a voluntary petition on October 1, 2025 [Dkt. 23], executed by Hansen as the "Authorized Representative" of the Debtor.  Schedules and the Statement of Financial Affairs [Dkts. 28 and 29] followed on October 1, also signed by Hansen in that alleged capacity.  An interim cash collateral order was approved on November 6, 2025 [Dkt. 51].  A status hearing has been set for December 10, 2025.

6.      Dodd has observed this case to date to evaluate whether, notwithstanding that cause exists to dismiss the case, Dodd's claims and the fate of the Debtor and the operating hotel are better served in bankruptcy.  The Debtor's activities to date, however, do not support that conclusion.  For that reason, Dodd moves this Court to dismiss the case to allow the state court receiver to be appointed in the Receivership Action.  In the alternative, Dodd requests that a chapter 11 trustee be appointed as quickly as possible.

### JURISDICTION, VENUE, PREDICATES

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

---

[5]      Based on an affidavit filed in the Sector Corporation/Premier Hospitality mechanics lien case pending in the Circuit Court of Cook County, Chancery Division (Case no 2025CH02225), Webb claims to be a participant in the Hospitality Structured Funding IV, LLC, facility that is currently receiving adequate protection payments under the cash collateral order approved in this case.  She is not a direct creditor of the Debtor.

proceeding under 28 U.S.C. § 157(b)(2) under which this Court has authority to enter a final order. The predicates for the relief requested herein are sections 105(a), 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code.

## ARGUMENT

8.     The Debtor's fatal flaw – the failure of governance that led this Court to dismiss South Loop 1 – still exists. Hansen was not then, and is not now, an "Authorized Representative" of the Debtor. He did not have the authority to direct the Debtor to accept the involuntary and consent to this chapter 11 filing. He did not have the authority to sign the voluntary petition, Schedules, or Statement of Financial Affairs. While the Court has ratified the Debtor's entry into an interim cash collateral agreement – and Dodd does not, at present, challenge that arrangement – Hansen's role as the so-called "Authorized Party" for the Debtor must end. He never had and does not have the authority to direct the Debtor through this case. As a result, the case must be dismissed, or, in the alternative, a chapter 11 trustee must be appointed as soon as possible to exercise control and authority over the Debtor and its assets.

### A.     GROUNDS EXIST TO DISMISS THE CASE

9.     Section 1112(b) of the Code governs conversion or dismissal of a Chapter 11 case. Section 1112(b) provides, in pertinent part:

> ...on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause...

See 11 U.S.C. § 1112(b)(1).

10.     Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. See 11 U.S.C. § 1112(b)(4)(A)-(P). This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section

1112(b)(4). *See e.g. In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); *In Matter of Strug-Division, LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007); *Novak v. Wagnitz* (*In re Wagnitz* ), No. 03C5106, 2004 WL 626821, at *3 (N.D. Ill. Mar. 29, 2004); *In re Jakovljevic-Ostojic,* 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014). *See also* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed)

11.      "The court must convert a case to chapter 7 or dismiss the case if there is 'cause' to do so" unless the debtor can establish one of the exceptions. *See In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). Once cause is established, the debtor has the burden of proving the required exceptions to fend off conversion or dismissal. *Id*. To fend off dismissal or conversion, the court must find "unusual circumstances" "establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11 U.S.C. §1112(b)(2).  In particular, the debtor or another party must establish (A) there is a reasonably likelihood that a plan will be confirmed as provided for in sections 1121(e) and 1129(e) or within a reasonable time if those section do not apply and (B) "the grounds for converting or dismissing the case include an act or omission of the debtor other than paragraph [§1112(b)] (4A) – (i) for which there exists a reasonable justification for the act or omissions; and (ii) that will be cured within a reasonable period of time fixed by the court."  *Id*.

12.      The court has significant discretion to determine whether "cause" exists.  *In re Rahim,* 442 B.R. 578, 581 (Bankr.E.D.Mich.2010); *See In re Gaulden*, 522 B.R. 580, 588 (Bankr. W.D. Mich. 2014).

13.      Here, Dodd submits that dismissal is in the best interest of all creditors.  Debtor's handling of this case is fatally flawed by its illegitimacy.  Hansen cannot act in good faith on behalf of the Debtor and its stakeholders because Hansen has no authority to act on behalf of the Debtor.  He is not an "authorized party" and cannot, among other things, continue to approve

5

court filings on behalf of the Debtor. This flaw is not a defect that "will be cured within a reasonable period of time." There is no remedy.

14.    Nothing has occurred in the case that mitigates against this result. Only one "creditor" filed the miraculously-timed involuntary case (Webb) and her legitimacy as a creditor of the Debtor is doubtful. The lender that has negotiated adequate protection payments (Hospitality Structured Funding) is fully protected by its collateral rights under state law. There are only a handful of scheduled "unsecured" creditors, including the City of Chicago and Webb, whose alleged claim (if it exists) is not against the Debtor. Other parties scheduled with claims or disputed claims include parties who appear to have insider relationships with the Debtor, including Paris Fountis, his entities Paris Spirits and Premier Hospitality, and Vickie White. Scheduled creditor Sector Corporation (also owned by Paris Fountis) asserts a mechanics lien which is preserved under state law, to the extent valid. The only apparently unaffiliated, third-party general unsecured creditor is a law firm scheduled as owed approximately $37,000.

15.    The United States Trustee has not appointed an official committee of unsecured creditors and, at this point, appointment of a committee seems very unlikely.

16.    Debtor's counsel has indicated in open court that the Debtor intends to address the many issues that were joined in the state court litigations as well as the claims of creditors (such as they are). Specifically, Debtor's counsel has stated in open court that there will be a plan to address Dodd's claims and concerns. However, ten weeks into the case, Movant's counsel has not been approached by Debtor's counsel to discuss the Debtor's plans. Whatever those plans may be, the Debtor should not have the ability to commit to any plan, given Todd Hansen's lack of authority to guide the Debtor.

**B.     IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A CHAPTER 11 TRUSTEE**

17.     Dodd does not request conversion to chapter 7 as Dodd does not believe that a chapter 7 trustee is appropriate in this case.  The Hotel continues to operate, and the assumption is that the path for the Hotel and its owners involve either a successful reorganization with refinancing or a going concern sale.  Neither path is consistent with the appointment of a chapter 7 trustee.

18.     Instead, in the alternative to dismissal, appointment of a chapter 11 trustee is appropriate.  Assuming that this Court determines that the better course for the estate and its stakeholders is to resolve the Debtor's matters in chapter 11, the Debtor must be guided by a party with the authority to act on behalf of the Debtor.

19.     Hansen does not have the authority to act on behalf of the Debtor or direct the Debtor's actions.  His actions during the South Loop 1 case and its aftermath, including the acceptance of the involuntary filing and the execution of documents on behalf of the Debtor during this case, constitute on-going bad faith.  Hansen and others working with him have defied and continued to defy the findings and conclusions made by this Court in South Loop 1.

20.     The appointment of a trustee in a chapter 11 matter is governed by section 1104 of the Bankruptcy Code.  Section 1104 provides that, "[a]t any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee." 11 U.S.C. § 1104(a).  Triggering conditions under Section 1104(a) include "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ..." and "(2) if such appointment is in the interests of creditors, any equity security holders, and other interests

of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. §§ 1104(a)(1) & (2).

21.     While appointment of a chapter 11 trustee is considered to be an extraordinary remedy, "section 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." *In re Spiegel*, 662 B.R. 666, 684 (Bankr. N.D. Ill. 2024), quoting *In re Bellevue Place*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994).   Furthermore, the list of triggering conditions for appointment of a trustee in section 1104(a) is not exhaustive.  *In re Spiegel,* 662 B.R. at 683, at note 12 (citing *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) (Schmetterer, J.), aff'd Case No. 99B9876, 2000 WL 329574, at *3 (N.D. Ill. Dec. 8, 1994); *In re Madison Mgmt. Grp., Inc.*, 137 B.R. 275, 281 (Bankr. N.D. Ill. 1992) (Sonderby, J.).

22.     Furthermore, while section 1104(a)(1) "mandates the appointment of a trustee when the bankruptcy court finds cause," *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir.1989), section 1004(a)(2) creates a more "flexible standard." *Id.*; *see also In re LHC, LLC*, 497 B.R. 281, 292 (Bankr. N.D. Ill. 2013) (Cassling, J.).   "Both the determination of whether cause exists under section (a)(1) and whether the more flexible standard under (a)(2) has been met are left to the distention of the court." *In re Spiegel*, 662 B.R. at 683.

23.     The situation this Court faced in South Loop 1 is the typical situation in which corporate authority is raised – whether the party authorizing the debtor's petition had the authority to do so.  Nevertheless, the same principal applies.  The party directing the Debtor, the party to whom Debtor's counsel reports, the party authorizing, for example, the Debtor to enter into a cash collateral agreement, must have the authority to do so.  Hansen does not.  Even if certain acts (e.g., the interim cash collateral agreement) have been ratified by the Court, Hansen has no authority to continue making such decisions.

24.     The facts here are far less common (in case law, at least) than that faced in South Loop 1, but not unprecedented.  Courts faced with questions about a debtor's governance failings have appointed trustees to remedy such situations.  *See In re New Orleans Paddlewheels, Inc.*, 350 B.R. 667 (Bankr. E.D. La. 2006).  In *Paddlewheels*, the court found some malfeasance in connection the company president's disclosure failures, but primarily based its decision to appoint a chapter 11 trustee on a series of material governance failures that led to the conclusion that the debtor's board and executives lacked the authority to formulate and approve a plan of reorganization. Id. at 691-693.  *See also In re William A. Smith Construction Company, Inc*., 77 B.R. 124, 128 (Bankr. N.D. Ohio 1987) (interim trustee appointed because the company's lack of a key officer position (president) caused it to act in continual breach of material covenants in a key prepetition agreement); *In re Products International Co*., 395 B.R. 101, 112 (Bankr. D. Ariz. 2008) (chapter 11 trustee appointed because management's prepetition conduct and ongoing internal governance disputes in the family-owned business justified the appointment).

25.     Dodd posits that Hansen has no authority to act on behalf of or otherwise direct the Debtor, as this Court found in South Loop 1.  Nothing has occurred between dismissal of South Loop 1 and the filing of this chapter 11 case that granted the authority necessary to Hansen to allow him to direct the Debtor.  His status as a "Manager" was illegitimate in South Loop 1 and his authority as an "Authorized Party" is no more legitimate now.  As a result, cause exists to appoint a chapter 11 trustee under section 1104(a) and Dodd submits that appointment under the circumstances is mandated here.  Alternatively, appointment of a chapter 11 trustee is in the best interests of the Debtor's creditors, equity security holders, and other interested parties.

### C.    REQUEST TO SHORTEN NOTICE

26.    Notice of this Motion was provided by CM/ECF on parties registered in this case and by first class mail in compliance with Federal Rule of Bankruptcy Procedure 2002 and Local Rule 9013-1.

27.    Federal Rule of Bankruptcy Procedure 9006(c)(1) provides that the Court may, "for cause shown," shorten the notice period otherwise required for a motion to be heard.  In this case, Bankruptcy Rule 2002(a) requires twenty one (21) days notice of presentment of dismissal for cause absent the Court's approval of shortened notice.

28.    The Debtor requests that the notice period for the Motion be reduced from twenty one (21) days to nine (9) days.  Cause exists to grant such relief, and no creditor will be materially prejudiced by such shortened notice.

29.    As a threshold matter, every day this case continues with Todd Hansen as the "Authorized Representative" of the Debtor is a case in which the Debtor is acting at the direction of a party without authority to do anything, including direct Debtor's counsel.  Furthermore, creditors are not prejudiced by shortening notice.  Dodd submits that all or substantially all of the identified creditors and parties in interest in this case were involved in some fashion in South Loop 1 and are aware of the outcome and the aftermath, including the pendency of the Receivership Action.  This motion cannot be a surprise.

30.    If the court determines that a chapter 11 trustee should be appointed, for the same reason, creditors and parties in interest are not prejudiced by shortened notice here.  Rather, any prejudice they may face would be remedied by the prompt appointment of a third-party fiduciary to act in the best interest of the Debtor's estate.

### NO PRIOR REQUEST

31.    No prior request for the relief sought herein has been made.

WHEREFORE, Dodd respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit 4**, dismissing this chapter 11 case or, in the alternative, in the form attached hereto as **Exhibit 5** directing the United States Trustee to appoint a chapter 11 Trustee to assume authority and control over the Debtor and its assets, and in either case, to approve shortened notice of presentment of this Motion.

Dated: November 10, 2025          **RAINES FELDMAN LITTRELL LLP**

_/s/ Mark S. Melickian/_
Mark S. Melickian (No. 6229843)
30 N. LaSalle Street, Suite 3100
Chicago, IL 60602
(312) 704-9400
mmelickian@raineslaw.com

*Counsel for Louis Dodd*

# EXHIBIT 1

2023 WL 3643533
Only the Westlaw citation is currently available.
United States Bankruptcy Court, N.D. Illinois, Eastern
Division.

## IN RE CHICAGO SOUTH LOOP HOTEL OWNER, LLC, Debtor.

Case No. 23-02595
|
Signed May 24, 2023

**Attorneys and Law Firms**

Paul M. Bach, Bach Law Offices, Attorney for Debtor.

Aaron Davis, Jason DeJonker, Bryan Cave Leighton Paisner LLP, Attorneys for Creditor, US Bank.

## MEMORANDUM OPINION

Deborah L. Thorne, United States Bankruptcy Judge

**\*1** Chicago South Loop Hotel Owner, LLC filed a chapter 11 petition in late February 2023. As an Illinois limited liability company, it is managed by its member, Chicago South Loop Hotel, LLC ("Parent"). There are numerous motions pending in this case, but, as a threshold issue, the court must determine whether the Debtor had proper authority to file its petition. The court has reviewed the parties' papers and exhibits[1] and taken into consideration arguments made in court. For the reasons stated below, the motion of U.S. Bank National Association ("Lender")[2] is granted, and Debtor's case is dismissed.

## I. Background

The Debtor is an Illinois limited liability company that owns and operates the South Loop Hotel. It has one member, the Parent, who manages the Debtor. (Mot. to Dismiss ¶ 12, Dkt. No. 9.) An Operating Agreement executed on January 1, 2007 and subsequent amendments to this Agreement govern the operations of the Parent and Debtor. (See Operating Agreement, Dkt. No. 9, Ex. 9.)

The Operating Agreement was executed by the Parent's four original members: Louis Dodd (42.5%), James White (42.5%), Floyd Mix (10%), and Jerry Cooper (5%).[3] (Id. at 15.) Under the Agreement, the manager of the Parent is elected annually at a meeting of the members or by other action of the members. Unanimous approval of the members is needed to elect a manager. (Id. § 9.2.) The Agreement states that "the manager shall not perform any act on behalf of the limited liability company without the approval of those members who own an aggregate of more than fifty percent (50%) ... of the total percentage interests of all members of the limited liability company." (Id. § 10.9.) Additionally, if a member wants to transfer any portion of their membership interest, the member must obtain the unanimous written consent of the other members. A transfer without unanimous consent means that "the transferee of the member's interest shall have no right to participate in the management of the business and affairs of the limited liability company...." (Id. § 13.1.)

After the initial Agreement was executed, the members approved several amendments governing its operations. On July 5, 2013, a resolution was approved by all members establishing that "Vicki O. White and Louis P. Dodd ... have equal input into decisions made affecting the Company, and they shall concur in any policy change affecting the Company." (July 5, 2013 Resolution, Dkt. No. 49, Ex. 3.)

**\*2** Beginning in 2017, several amendments and resolutions purportedly taken by the Parent were made without the full authority of all four members. Specifically, on June 23, 2017, Vickie White, Vivian Murphy, and Astrid Cooper executed a Written Consent and Resolution removing Louis Dodd as Co-Manager for cause. Louis Dodd did not sign this resolution. (Dkt. No. 49, Ex. 5.) On July 17, 2017, Section 9.2 of the Agreement was revoked in its entirety and the following was substituted:

> Section 9.2. Any of the Co-Managers of the limited liability company may be removed for cause determined by the remaining Members at a meeting of the Members or by other action of the Members to be held or taken at each meeting of the Members, or as soon thereafter as such meeting or action can be held or taken by written resolution or other appropriate written instrument.

(July 17, 2018 Amendment, Dkt. No. 49, Ex 4.) This Amendment was only signed by Vickie White and Vivian Murphy; the signature line for Astrid Cooper is blank. The effect of the purported amendment gave Vickie White 57.5% of the membership interests in the Parent, leaving Louis Dodd with his original 42.5%.

In 2020, additional actions were adopted by the Parent assigning and selling the membership interests of Vivian Murphy and Astrid Cooper to Vickie White. (Dkt. No. 9, Ex. 13–14.) Only Vivian Murphy and Astrid Cooper executed these assignments. Even though there was a signature line for Vickie White, neither she nor Louis Dodd signed.

On February 27, 2023, Vickie White, as the **Manager** of the Parent, amended the Agreement to provide that **managers** "shall be **appointed**, elected, removed, or replaced by a vote, approval, or consent of Members owning greater than 50% of the total percentage interest of all members of the Company." (Dkt. No. 49, Ex. 8.) The same resolution authorized that, with the approval of members with over 50% of the membership interests, the number of **managers** could be increased, and membership interests could be transferred. (*Id.*) This resolution was executed only by Vickie White.

Also on February 27, Vickie White signed a resolution authorizing her to transfer 56% of her membership to Chicago South Loop Hotel Holdings, LLC, leaving the new ownership in the Parent as 56% by Holdings, 1.5% by Vickie White, and 42.5% by Louis Dodd. (Dkt. No. 49, Ex 10.) Finally, on the same day, another resolution elected Todd Hansen as **manager**. (Dkt. No. 49, Ex. 11.) Only Vickie White—not Holdings or Louis Dodd—signed this resolution.

Several months later, Todd Hansen executed the petition seeking protection under **chapter 11** of the Bankruptcy Code. (*See* **Chapter 11** Petition, Dkt. No. 1.)

## II. Discussion

### A. Standing

The **Debtor's** response brief alleges that the Lender **lacks** standing to argue about **corporate authority** to file for bankruptcy. In support of this argument, the **Debtor** merely cites to the legal standard for standing under Article III. (*See*

**Debtor's** Resp. at 12–13, Dkt. No. 49.) After stating the case or controversy requirement, the **Debtor** concludes—without any explanation—that "whether the **Debtor** had **authority** based on the documents presented is not something that can be raised by U.S. Bank." (*Id.* at 13.)

The Lender is correct that it has standing to challenge the **Debtor's authority** to file for bankruptcy. Section 1109(b) provides that any "party in interest, including ... a creditor ... may raise and may appear and be heard on any issue in a case under [**chapter 11**]." The Seventh Circuit has interpreted this provision to mean that "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992). Many courts have found that creditors have standing to challenge the **Debtor's authority** to file for bankruptcy. *See, e.g.*, *In re Curare Lab'y LLC*, 642 B.R. 787, 801 (Bankr. W.D. Ky. 2022); *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006). Lender is the primary secured lender and certainly has a sufficient interest in this case to challenge whether the petition was properly filed. *See Orchard*, 347 B.R. at 825–26 (finding that creditor with "a sufficient stake and a pecuniary interest" had standing to challenge **debtor's corporate authority** to file for bankruptcy).

### B. **Debtor Lacked Authority** to File for Bankruptcy

**\*3** A **corporation** must have **authority** to file for bankruptcy under state **corporate** governance law and relevant **corporate** by-laws. *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997) (collecting cases). The same is true for a limited liability company. *In re Avalon Hotel Partners, LLC,* 302 B.R. 377 (Bankr. D. Oregon 2003); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014). When **corporate authority** does not exist, there is "cause" to dismiss the case under section 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b); *NNN 123 N. Wacker, LLC*, 510 B.R. at 858 (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945)).

The Parent's Operating Agreement states that Illinois law governs the LLC. (Operating Agreement § 17.) In Illinois, LLCs are statutorily created business entities governed by the Illinois Limited Liability Company Act, 805 ILCS 180/1-1 *et seq.* The Act provides that an LLC is created by the filing of articles of organization with the Illinois Secretary of

State. 805 ILCS 180/5-1, 5-40. Although the LLC Act provides for default rules for the governance of LLCs, these rights can be modified by the adoption of an operating agreement. 805 ILCS 180/15-5. An operating agreement is adopted by the members and prescribes how the LLC will operate. See *In re Minton*, No. 14-91293, 2017 WL 354319, at * 3 (Bankr. C.D. Ill. Jan. 24, 2017).

Here, the Parent's operations did not comply with the Operating Agreement, and this noncompliance culminated with the filing of the **Debtor's** bankruptcy petition. The **Debtor** was controlled by its sole member, the Parent LLC, and any action taken by the Parent was required to abide by the requirements set forth in the Operating Agreement. An early amendment to the Agreement, executed by all four members, required that the four members act as comanagers. (March 14, 2007 Amendment, Dkt. No. 49, Ex. 3.) Because the following actions of the Parent were not unanimously approved, they violated the Operating Agreement:

- The amendment to § 9.2 which allowed the removal of a comanager for cause,

- The removal of Louis Dodd as comanager and secretary,

- The transfer and sale of the membership interests of Vivian Murphy and Astrid Cooper to Vivian White,

- The Resolution allowing the addition of **managers**,

- The election of Vickie White as **manager**,

- The transfer of Vickie White's membership interest to Chicago South Loop Hotel Holdings, and

- The election of Todd Hansen as **manager**

Under the terms of the Operating Agreement and its amendments, Vickie White did not validly acquire a membership interest large enough to gain control of the Parent, and she did not have the **authority** to transfer her interest to Holdings. Consequently, Hansen did not have the requisite **authority** to sign the **chapter 11** petition on **Debtor's** behalf. Because there was not **corporate authority** for the **Debtor** to file its petition, there is cause to dismiss this case under 11 U.S.C. § 1112(b).

Because this case was filed without proper **authority**, the Lender's Motion to Dismiss is granted.

**All Citations**

Not Reported in B.R. Rptr., 2023 WL 3643533

### III. Conclusion

Case 25-12829   Doc 52   Filed 11/10/25   Entered 11/10/25 12:20:34   Desc Main
Document   Page 19 of 61

In re Chicago South Loop Hotel Owner, LLC, Not Reported in B.R. Rptr. (2023)

Footnotes

1    The parties stated in court that the authenticity of these exhibits is not in dispute. The court understands that Exhibit B to the Reply
     is merely a demonstrative exhibit. (*See* Dkt. No. 56, Ex. B.)

2    U.S. Bank National Association is Trustee for Morgan Stanley Bank or America Merrill Lynch Trust 2013-C13, Commercial
     Mortgage Pass-Through Certificates, Series 2013-C13.

3    James White, Floyd Mix, and Jerry Cooper died after the Parent was formed, and their membership interests were inherited by
     Vickie White, Vivian Murphy, and Astrid Cooper. (Mot. to Dismiss ¶¶ 15–16.) An unsigned amendment—which the court assumes
     is valid for purposes of this ruling—states that inherited interests will have the same rights as the original owner. (Amendment to
     Operating Agreement, Dkt. No. 49, Ex 3.)

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government
                                                             Works.

EXHIBIT 2

FILED
8/29/2025 3:31 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2023CH09369
Calendar, 14
34243523

FILED DATE: 8/29/2025 3:31 PM    2023CH09369

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION**

| | |
|---|---|
| LOUIS DODD, in his individual capacity and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| VICKIE WHITE, CHICAGO SOUTH LOOP HOTEL HOLDINGS, LLC, A Delaware Limited Liability Company, and TODD HANSEN, PARIS FOUNTIS, and PREMIER HOSPITALITY, LLC, | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, A Delaware Limited Liability Company, | ) ) ) ) |
| Nominal Defendant. | ) |

No.    23 CH 09369

Calendar 14

**<u>AMENDED MOTION TO APPOINT A RECEIVER FOR THE
CHICAGO SOUTH LOOP HOTEL</u>**

Plaintiff Louis Dodd ("Mr. Dodd"), by and through his attorneys, Raines Feldman Littrell

LLP hereby moves this Court for an Order appointing a receiver for the Chicago South Loop Hotel

(the "Hotel"). In support of this motion, Mr. Dodd states as follows:

**I.    *Introduction and Summary of Argument***

By this motion, Mr. Dodd seeks the appointment of a receiver for the Hotel. Chicago South

Loop Hotel Holdings, LLC ("Holdings"), and Todd Hansen ("Hansen") are fraudulently operating

and mismanaging the Hotel and CSLH (hereinafter defined), such that the appointment of a

1

10607189.1

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

receiver is required. Vickie White ("Ms. White") improperly took control of CSLH in 2018 and in breach of the Operating Agreement mismanaged the Hotel and caused it to operate at a loss since 2018. Holdings, Hansen, and Ms. White are referred to collectively as "Defendants." In 2023, Ms. White executed a series of resolutions for CSLH, purportedly (i) altering the terms of the Operating Agreement, (ii) transferring her membership interests to Holdings, and (iii) electing Hansen as manager of CSLH.  The same day that Ms. White executed the resolutions, Hansen caused a bankruptcy petition to be filed on behalf of CSLH Owner (CLSH's wholly-owned subsidiary hereinafter defined), the entity that had a loan for the Hotel.

The bankruptcy court dismissed the bankruptcy petition and made multiple findings, including that Ms. White acted in breach of the Operating Agreement, never gained sufficient membership interest in CSLH to gain control of CSLH, and did not have the authority to transfer her interest to Holdings and transfer control to Hansen. Despite these findings, Holdings and Hansen have continued to operate the Hotel and CSLH in violation of the Operating Agreement and the bankruptcy court order, for their own benefit and to the detriment of the Hotel and Mr. Dodd. Holdings' and Hansen's mismanagement of the Hotel and CSLH has led to unpaid taxes on numerous real estate parcels, the City of Chicago has filed an action to revoke the Hotel's business license and liquor license, and the Illinois Department of Revenue has instituted a personal action against Mr. Dodd in excess of $1 million due to the Hotel's nonpayment of Hotel Operators Occupation Taxes. Moreover, there has been massive deterioration of the condition and value of the Hotel. A receiver is necessary to operate the Hotel, prevent further fraud, mismanagement, loss and to preserve the Hotel until an ultimate determination is made by this Court as to its rightful ownership and management.

10607189.1

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

## II.    *Nature of Motion and Necessity of a Receiver*

Holdings and Hansen, who claim to be in control of the hotel and who holds himself out to be the Hotel's manager, have failed to pay substantial real estate taxes, failed to pay Hotel Operators Occupation Taxes in excess of $1 million subject Mr. Dodd to personal liability, have caused the Hotel to be in jeopardy of losing its business license and liquor license. As a result, there is a real threat of loss of the Hotel as a going concern. Mr. Dodd, as a co-owner and co-manager of CSLH, was instrumental in the initial construction, operation, and maintenance of the Hotel until Ms. White improperly seized control of CSLH and then transferred her interest to Holdings and Hansen. A receiver is necessary to ensure that the real estate taxes and Hotel Operators Occupation Taxes are paid, and that the Hotel is properly run and tended to such that its business license and liquor license are in good standing. Moreover, a mechanics lien action and mortgage foreclosure action are pending against CSLH in Case number 2025 CH 02225, pending in the Circuit Court of Cook County, Chancery Division. Without a receiver, the Hotel is subject to being closed and/or foreclosed upon and the loss of real estate.

## III.    *Factual Background*

On or about May 22, 2006, Mr. Dodd, together with James D. White, Floyd Mix, and Jerry Cooper, formed Chicago South Loop Hotel, LLC ("CSLH") for the purpose of constructing, operating, and managing the Hotel, which was built and is located at 11 West 26th Street, Chicago, Illinois 60616.  (Second Amended Verified Complaint, ¶14).[1] The terms of CSLH's operating agreement (the "Operating Agreement") provide that Mr. Dodd, James D. White, Floyd Mix, and Jerry Cooper were each an owner as well as a co-member/manager, with ownership interests in CSLH as follows: Dodd (42.5%), James D. White (42.5%), Floyd Mix (10%), and Jerry Cooper

---

[1] A copy of the Second Amended Verified Complaint is attached hereto as Exhibit A.

10607189.1

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

(5%). (*Id.*, ¶15). The Operating Agreement also requires that any transfer of a member's interest in CSLH be approved by the affirmative vote of all members of CSLH and that any purported transfer without such a vote is of no force and effect. (*Id.*, ¶25). On March 14, 2017, Mr. Dodd, James D. White, Floyd Mix, and Jerry Cooper entered into a restrictive stock agreement (the "RSA") which, among other things, required that any member seeking to sell or transfer their shares must provide written notice of the terms of the transfer to each other member of CSLH. (*Id.*, ¶22). In 2013, Chicago South Loop Hotel Owner, LLC ("CSLH Owner") was formed to obtain a mortgage loan from Morgan Stanley Mortgage Capital Holdings, LLC to finance the Hotel, and a Limited Liability Company Agreement (the "LLC Agreement") for CSLH Owner was signed by Mr. Dodd as manager, White as manager, and Brian McCarthy as springing member/special manager. (*Id.*, ¶¶ 33-35). CSLH is the owner and sole member of CSLH Owner. *See* Ex. A, Sec. Am. Compl. at its Exhibit 6, and at its Exhibit 7.

James D. White, Floyd Mix, and Jerry Cooper each passed away and were succeeded by their respective spouses – Ms. White, Vivian Murphy, and Astrid Cooper, such that the ownership interests in CSLH were as follows: Mr. Dodd (42.5%), Ms. White (42.5%), Vivian Murphy (10%), and Astrid Cooper (5%). (Ex. A, Sec. Am. Compl., ¶¶16-17). As of July 18, 2018, Ms. White, Vivian Murphy, and Astrid Cooper purportedly (i) voted to amend the Operating Agreement to grant them authority to remove Mr. Dodd as a co-manager and (ii) resolved by written consent to remove Mr. Dodd as manager. (*Id.*, ¶18). On September 18, 2020, Vivian Murphy and Astrid Cooper purportedly assigned their membership interests in CSLH to Ms. White, allegedly resulting in Ms. White holding 57.5% of the membership interests in CSLH and making Ms. White the sole manager of CSLH. (*Id.*, ¶24).

10607189.1

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

On or about February 27, 2023, Ms. White executed a series of written consents and resolutions of CSLH, purporting to: (i) change the necessary votes required to elect a manager of CSLH, (ii) change the necessary votes required to change the number of managers of CSLH, (iii) change the necessary votes required to admit additional members of CSLH, (iv) change the necessary votes for transfers of membership interests and substituted members, (v) change the number of votes required for the election of a manager, (vi) eliminate the RSA, (vii) transfer White's membership interests in CSLH to Defendant, and (viii) electing Hansen as manager of CSLH.  (Ex. A, Sec. Am. Complaint, ¶26). On February 27, 2023, Hansen, as the purported manager of CSLH, and CSLH as the sole member of CSLH Owner, caused a bankruptcy petition to be filed on behalf of CSLH Owner. (*Id.*, ¶27). On May 30, 2023, Judge Thorne granted a motion to dismiss CSLH Owner's bankruptcy petition, finding, among other things, that Ms. White's actions to effectuate a change of control and ownership of CSLH did not comply with the Operating Agreement and that such noncompliance culminated in the filing of CSLH Owner's bankruptcy petition. (*Id.*, ¶29). In particular, Judge Thorne found that the following actions were taken in violation of the Operating Agreement: (i) the amendment to § 9.2 of the Operating Agreement allowing for removal of a co-manager of CSLH for cause, (ii) the removal of Dodd as co-manager and secretary, (iii) the transfer of Vivian Murphy and Astrid Cooper's membership interests in CSLH to White, (iv) the resolution allowing the addition of managers of CSLH, (v) Ms. White's election as manager of CSLH, (vi) the transfer of White's membership interests in CSLH to Defendant, and (vii) Hansen's election as manager of CSLH. (*Id.*, ¶30). Importantly, Judge Thorne also found that White did not validly acquire a membership interest large enough to gain control of CSLH and she did not have authority to transfer her interest to Holdings.  (*Id.*, ¶31). Despite the rulings of the bankruptcy court finding that Holdings never validly acquired an interest

10607189.1

FILED DATE: 8/29/2025 3:31 PM    2023CH09369

in CSLH and the Hotel, Holdings continues to operate the Hotel as if it were the owner of the membership interests of CSLH and Hansen continues to act as if he were the manager of CSLH. (*Id.*, ¶32).

Defendants' mismanagement of the Hotel, dating back to 2018 when Ms. White forcibly took over its management, has caused the Hotel to operate at a loss. (Ex. A, Sec. Am. Compl., ¶37). Among other things, and in breach of the Operating Agreement and her fiduciary duties to Mr. Dodd, Ms. White (i) unilaterally terminated the Hotel's relationship with its property management company, First Hospitality Group ("FHG"), (ii) unilaterally entered into a hotel management agreement with Premier Hospitality Group, (iii) failed to obtain or present a written contract and required signatures for work amounting to more than $50,000, (iv) unilaterally attempted to terminate legal counsel, (v) sent numerous emails attacking the credibility of CSLH members, and (vi) refused to stop construction on the Hotel restaurant/bar as previously voted by the majority of the co-owners/co-managers. (*Id.*, ¶40). Ms. White's mismanagement of the Hotel also caused CSLH Owner to be sued for not complying with its obligations under the Loan. (*Id.*, ¶41). Those failed obligations included (i) not making payments due and payable to the lender, (ii) not providing financial statements when requested, (iii) not obtaining the lender's consent to the replacement of the property manager, (iv) not ensuring that Mr. Dodd controlled the day-to-day operations and management of CSLH Owner and the Hotel, (v) not obtaining the lender's consent to incur certain debts and encumber the real estate secured by the Loan, (vi) not timely filing all federal and state tax returns, (vii) not preventing liens to be filed against the real estate secured by the Loan, and (viii) not complying with a cash management agreement. (*Id.*, ¶42).

6

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

Defendants failed to pay the required taxes for certain parcels real estate owned by CSLH. As demonstrated by the records in the Cook County Treasurer, the following taxes remain <u>unpaid</u> for the following real estate parcels:

1.   Permanent Real Estate Index Number 17-28-410-003-0000

    a.   2023: $1,236.91

    b.   2024: $2,513.43

2.   Permanent Real Estate Index Number 17-28-410-002-0000

    a.   2023: $6,745.91

    b.   2024: $3,877.23

3.   Permanent Real Estate Index Number 17-28-410-004-0000

    a.   2023: $3,436.02

    b.   2024: $3,878.72.[2]

Defendants' failure to pay real taxes will result in a loss of the real estate.

On February 19, 2025, the Illinois Department of Revenue issued a notice to Mr. Dodd, personally on behalf of South Loop Hotel, contending that Mr. Dodd would be held personally responsible for a penalty of $1,117,593.25 in unpaid Hotel Operators Occupation Taxes that South Loop Hotel failed to pay. *See* **Exhibit C**. Further, the Illinois Department of Revenue issued an Assessment and Notice of Intent to collect against Mr. Dodd for Sales/Use Taxes and E911 Surcharges in the amount of $5,326.41. *See* **Exhibit D.** Despite Mr. Dodd having no actual ability to cause South Loop Hotel to pay such taxes, Mr. Dodd has been required to engage legal counsel to petition the Illinois Independent Tax Tribunal to find him not personally liable for the unpaid

---

[2] *See* tax records from the Cook County Tax Assessor, attached hereto as Group Exhibit B.

7

10607189.1

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

taxes. Said petition filed against the Illinois Department of Revenue, filed as case number 25TT51, remains pending.

The City of Chicago Department of Business Affairs and Consumer Property recently initiated a disciplinary action against Chicago South Loop Hotel for allegedly: (1) engaging in the business of a hotel without having obtained a regulated business license; (2) engaging in the business of retail liquor without having obtained a State of Illinois retail liquor license; (3) improperly holding a City of Chicago Retail Liquor License without a valid liquor license from the State of Illinois; (4) offering to sell at retail alcoholic liquor without a City of Chicago retail liquor license; (4) failing to notice the Department of Business Affair and Consumer Protection of the City of Chicago of a change in officers; (5) an other violations. *See* **Exhibit E.**

On February 25, 2025, a mechanics lien action, case number 2025 CH 02225 was filed against Chicago South Loop Hotel for amounts alleged owed in excess of $1 Million. A copy of the Verified Complaint to Foreclose on Mechanics Lien and Other Relief is attached as **Exhibit H.** As a result, Chicago South Loop Hotel's lender filed a Complaint to Foreclose against its real estate. *See* **Exhibit I**.

Defendants' gross mismanagement of the Hotel has led to a loss of revenue, a massive tax liability accrual, and has now created the imminent threat of the business being shuttered. While the parties continue to dispute proper ownership interests and management rights of the Hotel, the appointment of a receiver to manage the Hotel in the interim will prevent further loss caused by Defendants' demonstrated mismanagement of the Hotel.

## IV.   *Argument*

A court will appoint a receiver "to secure and preserve the property for the benefit of all concerned, so that it might be subjected to such order as a court might render." *People ex rel.,*

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

*Fahner v. Community Hosp. of Evanston*, 108 Ill. App. 3d 1051, 1059 (1st Dist. 1982). The appointment of a receiver is justified "where the directors are so managing or disposing of the corporate business or assets in their own interest that such assets will probably be lost or destroyed before a judgment can be rendered or where fraud or mismanagement exists which make it impossible for the corporation to carry on its business or preserve its assets until a settlement is reached." *Id.* Courts will generally appoint a receiver "either to prevent fraud, save the subject of litigation from material injury, or rescue it from threatened destruction." *City of Chicago v. Jewellery Tower, LLC*, 2021 IL App (1st) 201352, ¶47 (quoting *Compton v. Paul K. Harding Realty Co.*, 6 Ill. App. 3d 488, 497-98 (5th Dist. 1972)). The appointment of a receiver "is an equitable remedy not dependent upon any statute and rests within the discretion of the trial court." *Witters v. Hicks*, 335 Ill.App.3d 435, 446 (5th Dist. 2002); *see First Federal Sav. and Loan Ass'n of Chicago v. National Boulevard Bank of Chicago*, 104 Ill.App.3d 1061, 1064 (1st Dist. 1982).

As demonstrated by the Second Amended Verified Complaint and the records attached hereto and as supported by the findings of the bankruptcy court, the appointment of a receiver is necessary in this case to prevent the Hotel from ceasing operations, preventing loss of real estate through a tax sale and to prevent additional personal liability against Mr. Dodd. Put bluntly, a receiver is necessary to save the Hotel, a subject of this litigation, from material injury. Absent the appointment of a receiver, the main assets at issue in this litigation, the Hotel and its real estate, will not be preserved for an ultimate judgment. This alone is a sufficient basis to appoint a receiver.

Defendants' continued mismanagement necessitates the appointment of a receiver. It cannot be disputed that, since Ms. White and her purported successor, Holdings, improperly assumed control of the management of the Hotel, the Hotel has been operating without properly managing the Hotel's assets. Holdings simply does not have the knowledge and experience

necessary to run the Hotel without losing its real estate. Defendants have failed to pay the necessary taxes, as demonstrated by the documents attached hereto, which show a failure to pay real estate taxes on numerous real estate parcels (**Ex. B**) as well Hotel Operators Occupation Taxes in the amount of $1,117,593.25. *See* **Ex. C**. Furthermore, both a mechanics lien complaint (**Ex. H**) and a mortgage foreclosure complaint (**Ex. I**) threaten to foreclose on South Loop Hotel's real estate.

A receiver is also necessary because it is clear that Defendants have no intention of changing their course of conduct despite the rulings of the bankruptcy court. Judge Thorne made specific findings as to what actions were taken in violation of the Operating Agreement and found that Ms. White did not validly acquire a large enough membership interest to gain control of CSLH, nor did she have authority to transfer her interest in CSLH to Holdings or to place Hansen in control of the Hotel. Despite these clear findings, Holdings has continued to operate the Hotel and Hansen has continued to act as a its manager. Defendants have demonstrated a willingness to continue to operate in violation of the findings of the bankruptcy court and to the detriment of the Hotel, CSLH, and Mr. Dodd in order to further their own personal interests. This fraud and mismanagement necessitate the appointment of a receiver to run the Hotel.

Mr. Dodd respectfully submits that Rob Sadoff and Scarlett Hotel Group, Inc. ("SHG"), be appointed as receiver for the Hotel. SHG is a professional hospitality management and development company that provides a broad range of supervisory and consulting services to institutional and individual clients throughout the United States. SHG owns and/or manages 19 hotels with a room count of 2880. SHG's credentials are detailed in **Exhibit F**, attached. SHG's management proposal and fee structure to act as receiver for the Hotel is attached hereto as **Exhibit G**. SHG is more than capable of stepping in as receiver to operate the Hotel.

10

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

FILED DATE: 8/29/2025 3:31 PM   2023CH09369

## V.    *Conclusion*

Mr. Dodd has demonstrated the need for a receiver is well-founded and respectfully requests that the motion be granted. The allegations in the Second Amended Verified Complaint are supported by the records from Cook County, the Illinois Department of Revenue, the City of Chicago, the findings of the bankruptcy court, and a separate action in the Circuit Court of Cook County, all of which demonstrate that Defendants have fraudulently wrested control of CSLH and the Hotel and are mismanaging the Hotel to the detriment of the business for their own personal gain. Their mismanagement has resulted an unacceptable risk to the continuation of South Loop Hotel's operations and the loss of its real estate. In order to preserve the Hotel's assets, which are at issue this action, and to prevent further harm to the Hotel and CSLH, Mr. Dodd respectfully requests that the Court grant his motion to appoint a receiver and name Scarlett Hotel Group, Inc. as receiver to operate the Hotel.

Respectfully submitted,

**LOUIS DODD, in his individual capacity and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC**

By: _____
    One of His Attorneys

Jason M. Metnick
Joseph A. LaPlaca
**Raines Feldman Littrell LLP**
30 North LaSalle Ste., Suite 3100
Chicago, Illinois 60602
Tel. (312) 987-9900
jmetnick@raineslaw.com
jlaplaca@raineslaw.com
Firm ID: 100679

11

10607189.1

# EXHIBIT 3

FILED
7/16/2025 3:16 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2023CH09369
Calendar, 14
33595934

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CHANCERY DIVISION

| | | |
|---|---|---|
| LOUIS DODD, in his individual capacity and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| VICKIE WHITE, CHICAGO SOUTH LOOP HOTEL HOLDINGS, LLC, A Delaware Limited Liability Company, TODD HANSEN, PARIS FOUNTIS, and PREMIER HOSPITALITY, LLC, | ) ) ) ) ) ) ) ) ) | No.   23 CH 09369 |
| Defendants, | ) ) ) | |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, A Delaware Limited Liability Company, | ) ) ) ) | |
| Nominal Defendant. | ) | |

## SECOND AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, ACCOUNTING AND OTHER RELIEF

Plaintiff, Louis Dodd, by and through his attorneys, the law firm of Raines Feldman Littrell LLP, for his Second Amended Verified Complaint for Declaratory Judgment, Accounting and Other Relief states as follows:

### The Parties

1.     Plaintiff, Louis Dodd ("Plaintiff" or "Mr. Dodd"), is an individual residing in DuPage County, Illinois.

1

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

2. Chicago South Loop Hotel, LLC ("CSLH") is a Delaware limited liability company and upon information and belief, it is the sole owner and parent company of Chicago South Loop Hotel Owner, LLC.

3. Defendant, Vickie White ("Ms. White") is an individual residing in DuPage County, Illinois.

4. Upon information and belief, Defendant Chicago South Loop Hotel Holdings, LLC is a Delaware limited liability company that purports to have an ownership interest in Chicago South Loop Hotel, LLC.

5. Defendant Todd Hansen is an individual whose current state of citizenship is unknown. Mr. Hansen has held himself out as manager of Chicago South Loop Hotel, LLC.

6. Nominal Defendant, Chicago South Loop Hotel Owner, LLC ("South Loop Hotel"), is a non-public corporation incorporated under the laws of the State of Delaware. The South Loop Hotel is in the business of operating a hotel located at 11 West 26th Street Chicago, Illinois.

7. Defendant Paris Fountis ("Mr. Fountis") is an individual who resides in Cook County, Illinois.

8. Defendant Premier Hospitality, LLC ("Premier Hospitality") is an Illinois Corporation engaged in the construction and property development industries with its principal place of business located in the City of Palos Hills, Illinois.

## Jurisdiction and Venue

9. Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(1), (3) and (7) because the transactions at issue occurred in the State of Illinois, the claims at issue concern the ownership, use and possession of real estate located in Illinois, and the operating agreement of Chicago South

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

Loop Hotel, LLC, are substantially connected to the State of Illinois. The events at issued

10.     Venue is proper under 735 ILCS 5/2-101 and -102 because various defendants maintain offices and do business in Cook County, Illinois and/or reside in Cook County, Illinois.

## Nature of the Case

11.     The case concerns the unauthorized actions taken by Ms. White, resulting in improper amendments to the operating agreement of CSLH, the wrongful removal of Mr. Dodd as comanager of CSLH, the wrongful transfer and sale of membership interests in CSLH, a wrongful resolution allowing the addition of managers to CSLH, the wrongful election of Vickie White as manager of CSLH, the wrongful transfer of Ms. White's membership interest to Chicago South Loop Hotel Holdings, LLC, and the wrongful election of Todd Hansen as manager of CSLH.

12.     This case further seeks damages against Ms. White concerning her breach of CSLH's operating agreement in connection with her unauthorized take-over of the management and operation of South Loop Hotel and her unauthorized financial dealings.

13.     Mr. Dodd seeks an accounting of South Loop Hotel, due to Ms. White's wrongful takeover of South Loop Hotel and Ms. White's unauthorized transfer of her ownership interest to Chicago South Loop Hotel Holdings, LLC. Ultimately, after accounting for Defendants' wrongful actions, Mr. Dodd seeks either a buyout of his membership interests, or to wind up the affairs of CSLH including a sale of South Loop Hotel.

## Common Factual Allegations

### *The Operating Agreement*

14.     On or about May 22, 2006, Mr. Dodd, James D. White, Floyd Mix, and Jerry Cooper formed Chicago South Loop Hotel, LLC ("CSLH") with the purpose of constructing, operating, and managing a hotel. This hotel was built and is located at 11 West 26th Street Chicago,

3

FILED DATE: 7/16/2025 3:16 PM  2023CH09369

Illinois 60616 (the "Hotel"). A copy of CSLH's operating agreement ("Operating Agreement") is attached hereto as **Exhibit 1**.

15.     Pursuant to the Operating Agreement, Mr. Dodd, James D. White, Floyd Mix, and Jerry Cooper were each an owner as well as a Co-Member/Manager with ownership interests in CSLH as follows: Mr. Dodd (42.5%), James D. White (42.5%), Floyd Mix (10%), and Jerry Cooper (5%).

16.     James D. White, Floyd Mix, and Jerry Cooper all passed away and were succeeded by their respective spouses – Vickie White, Vivian Murphy, and Astrid Cooper.

17.     Thereafter, the members of CSLH were as follows: Mr. Dodd (42.5%); Ms. White (42.5%); Vivian Murphy (10%); and Astrid Cooper (5%).

18.     As of July 18, 2018, Ms. White, Ms. Murphy and Ms. Cooper purportedly voted to amend the CSLH Operating Agreement to grant them the authority to remove Mr. Dodd as co-manager. A copy of the *Amendment* to the CSLH Operating Agreement dated July 17, 2018 (the "2018 Amendment") is attached hereto as **Exhibit 2**. In addition, Ms. White, Ms. Murphy and Ms. Cooper resolved by written consent dated July 18, 2012 (the "Resolution" attached hereto as **Exhibit 3**) to remove Mr. Dodd as manager. The Resolution further provides that Ms. Murphy and Ms. Cooper were to be co-managers of CSLH along with White.

19.     Mr. Dodd has always held and continues to hold a 42.5% membership interest in CSLH.

### The Restrictive Stock Agreement

20.     On March 14, 2017, a Restrictive Stock Agreement of Chicago South Loop Hotel, LLC (the "RSA") was signed by the then-Members and Owners of CSLH –Mr. Dodd, James D. White, Floyd Mix, D.D.S., and Jerry Cooper.

4

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

21.     The RSA contained restrictions on the sale and transfer of the stock each Member and Owner had in CSLH. A true and correct copy of the RSA is attached hereto as **Exhibit 8**.

22.     According to the RSA, "no Member shall sell or otherwise transfer or dispose of any Shares now owned or hereafter acquire by him unless the following conditions shall have been complied with: (a) the transferring Member shall give the Company and each other Member written notice of the terms (including the number of shares transferred, the price per share and the name of the proposed transferee) on which he proposes to transfer his Shares."

23.     The RSA states in Section 5 "This Agreement shall be binding upon and insure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns." Ex. 8 §5.

24.     On September 18, 2020, Ms. Murphy and Ms. Cooper agreed to transfer purportedly assigned their respective membership interests to Ms. White. A copy of the CSLH Membership Interest Purchase Agreement is attached as **Exhibit 4.A.** On December 30, 2020, Ms. Murphy and Ms. Cooper assigned their membership interests to Ms. White, resulting in Ms. White allegedly holding 57.5% of the membership interests in CSLH and leaving Ms. White as the sole manager of CSLH. A copy of the Assignment of Chicago South Loop Hotel Membership Interests is attached as **Exhibit 4.B.**

25.     The CSLH Operating Agreement requires the affirmative vote of <u>all members</u> before a member can transfer its interest in CSLH. Section 13.1 provides that any purported transfer of a CSLH membership interest without such a vote "shall be void and of no force and effect." *See* Ex. 1 §13.1. If a proposed membership transfer receives less than the unanimous written consent of all members, then such transferee "***shall have no right to participate in the***

5

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

*management of the business and the affairs of the limited liability company or to become a member*." *Id*. (emphasis added).

26.     On or about February 27, 2023, Ms. White executed a series of four (4) written consents and resolutions of CSLH, which purported to have the effect of (i) changing the necessary votes required to elect a manager of CSLH; (ii) changing the necessary votes required to change the number of managers of CSLH; (iii) changing the necessary votes required to admit additional members of CSLH; (iv) changing the necessary votes required for transfers of membership interests and substituted members; (v) and changing the number of votes required for the election of a manager; and (vi) eliminating the Restrictive Stock Transfer agreement; (vii) transferring Ms. White's membership interests to Chicago South Loop Hotel Holdings, LLC; and (viii) electing Todd Hansen as manager of CSLH. Copies of the resolutions are attached as **Exhibits 5.A**, **5.B**, **5.C**, and **5.D**.

27.     On February 27, 2023, Mr. Hansen caused a bankruptcy petition to be filed on behalf of Chicago South Loop Hotel Owner, LLC.

28.     In sum, on February 27, 2023, after Ms. White fundamentally changed the operations, control and ownership of CSLH and empowered an outsider to take control of Chicago South Loop Hotel, on the very same day, Mr. Hansen caused a bankruptcy petition to be filed by Chicago South Loop Hotel Owner, LLC. *See* Bankruptcy Petition, **Exhibit 6**.

29.     On May 30, 2023, the judge presiding over the bankruptcy, Judge Thorne, granted a motion to dismiss Chicago South Loop Hotel Owner, LLC's bankruptcy petition. In her ruling, Judge Thorne found that Ms. White's actions taken to effectuate a change of control and ownership of CSLH did not comply with CSLH's operating agreement, and that such noncompliance

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

culminated with the unauthorized filing of the bankruptcy petition on behalf of Chicago South

Loop Hotel Owner, LLC. *See* Memorandum Opinion dated May 30, 2023, attached as **Exhibit 7**.

30.     Notably, the bankruptcy court's opinion specifically found that the following

actions were taken in violation of CSLH's operating agreement:

- The amendment to § 9.2 of CSLH's operating agreement, which allowed the removal of a comanager for cause.
- The removal of Louis Dodd as comanager and secretary.
- The transfer and sale of the membership interests in CSLH belonging to Vivian Murphy and Astrid Cooper to Vickie White.
- The Resolution allowing the addition of managers to CSLH.
- The election of Vickie White as manager of CSLH.
- The transfer of all of Vickie White's membership interests in CSLH to Chicago South Loop Hotel Holdings.
- The election of Todd Hansen as manager of CSLH.

Ex. 7, Memorandum Opinion dated May 30, 2023, at p. 6.

31.     Moreover, the bankruptcy court found that "Under the terms of the Operating

Agreement and its amendments, Vickie White did not validly acquire a membership interest large

enough to gain control of [CSLH], and she did not have the authority to transfer her interest to

[Chicago South Loop Hotel Holdings, LLC]." *Id.*

32.     Notwithstanding these rulings by the bankruptcy court, to this day, Chicago South

Loop Hotel Holdings, LLC continues to operate Chicago South Loop Hotel as if it had the right to

operate the business as an owner of 57.5% of CSLH, and upon information and belief, Mr. Hansen

continues to act as if he were the manager of CSLH.

### *Mortgage Loan*

33.     In 2013, Chicago South Loop Hotel Owner, LLC ("CSLH Owner") was formed.

34.     CSLH Owner obtained a mortgage loan from Morgan Stanley Mortgage Capital

Holdings, LLC to finance the Chicago South Loop Hotel.

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

35.     On October 23, 2013, a Limited Liability Company Agreement (the "LLC Agreement") was signed by Mr. Dodd (Manager), Vickie White (Manager), and Brian McCarthy (Springing Member/Special Manager). A true and accurate copy of the LLC Agreement is attached hereto as **Exhibit 9.**

36.     CSLH was tasked to own, manage, and operate the Chicago South Loop Hotel.

### *Vickie White's Forceful Takeover of CSLH and Breach of Fiduciary Duties*

37.     The Chicago South Loop Hotel had historically been successful and profitable until Ms. White forcibly took over its management in July of 2018, and, due to her inexperience and lack of knowledge, caused Chicago South Loop Hotel to operate at a loss.

38.     As a member-managed limited liability company, CSLH's members owe fiduciary duties to each other and to CSLH. *See* 805 ILCS § 180/15-3(a).

39.     Ms. White breached her fiduciary duty of care, and in turn, the Operating Agreement of CSLH, when she took the following actions:

a.  Failed and refused to communicate with current Members and Co-Managers of CSLH.

b.  Unilaterally took control of CSLH, as its sole Manager, by forcibly removing Mr. Dodd as Co-Manager without justification.

c.  Purported to acquire the relative interests in CSLH of Vivian Murphy (10%) and Astrid Cooper (5%) without proper authority.

d.  Unilaterally terminated the relationship with the Hotel's property management company, First Hospitality Group ("FHG"), without consulting with and receiving approval from the Co-Managers.

e.  Unilaterally entered into a Hotel Management Agreement with Premier Hospitality

8

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

Group without consulting with and receiving approval of Co-Managers.

40.    Ms. White also breached her fiduciary duty of good faith and fair dealing, and in turn, the Operating Agreement, when she took the following actions:

a.   Sent a letter to FHG purporting to terminate the management contract between FHG and CSLH without approval and consent of the Co-Managers as required by the Operating Agreement.

b.   Failed to obtain or present a written contract and the required signatures for work amounting to more than $50,000.

c.   Failed to consult the Co-Managers regarding the attempted termination of legal counsel.

d.   Sent numerous emails attacking the credibility of CSLH members.

e.   Refused to stop all construction regarding the restaurant/bar as previously voted by co-owners/co-managers by majority vote.

### Vickie White's Mismanagement of the Hotel and Default in Loan Obligations

41.    As a direct and proximate result of Ms. White's improper takeover and mismanagement of Chicago South Loop Hotel, CSLH Owner was sued for not complying with its obligations under a Promissory Note dated October 24, 2013 in the principal amount of Six Million Eight Hundred Thousand Dollars and No Cents ($6,800,000.00) (the "Loan").

42.    Pursuant to the Loan, CSLH Owner had obligations including, but not limited to: (i) making payments due and payable to its lender, (ii) providing financial statements when requested, (iii) obtaining its lender's consent to the replacement of the property manager, (iv) Louis Dodd must control the day-to-day operations and management of CSLH Owner and Chicago South Loop Hotel, (v) obtaining its lender's consent to incur certain debts and encumber the real estate

9

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

secured by the lean, (vi) timely filing all federal and state tax returns, (vii) preventing liens to be filed against the real estate securing the Loan, and (viii) complying with a Cash Management Agreement (collectively, the "Loan Documents"). *See* Loan Documents, attached as **Exhibits 10.A – 10.J**.

43.     Ms. White was solely responsible for the alleged defaults of the Loan Documents on account of her actions, which included the following:

   a.   Forceful takeover of Chicago South Loop Hotel and mismanagement of CSLH and Chicago South Loop Hotel.

   b.   Termination of the management agreement with First Hospitality Group without consulting Co-Managers or CSLH's lender.

   c.   Execution of a management agreement with Premier Hospitality Group without consulting Co-Managers or CSLH's lender.

   d.   Failure to pay the required taxes for the real estate securing the Loan.

   e.   Failure to maintain the requisite insurance for the real estate securing the Loan.

44.     As a result of the foregoing, Mr. Dodd seeks the following remedies against Ms. White: (a) damages on account of Ms. White's breaches of fiduciary duties pursuant to 805 ILCS § 180/15-3, (b) damages on account of Ms. White's breaches of the Operating Agreement; (c) (i) ordering an accounting and buyout of Mr. Dodd's interest in CSLH, or (ii) ordering an accounting and the dissolution and winding up of CSLH; (d) awarding Mr. Dodd his reasonable attorneys' fees and costs incurred in bringing this action as a result of Ms. White's misconduct; and (e) awarding Mr. Dodd such other and further relief that is just and proper under the circumstances.

<u>**Count I**</u>
**Declaratory Judgment**

45.     Mr. Dodd repeats the allegations of paragraphs 1 through 44 as if restated herein.

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

46.     There now exists a dispute as to who is a proper member, owner and manager of CSLH.

47.     As ruled by the bankruptcy court, the following actions were taken in violation of CSLH's operating agreement:

a.   The amendment to § 9.2 of CSLH's operating agreement, which allowed the removal of a comanager for cause.

b.   The removal of Louis Dodd as comanager and secretary.

c.   The transfer and sale of the membership interests in CSLH belonging to Vivian Murphy and Astrid Cooper to Vickie White.

d.   The Resolution allowing the addition of managers to CSLH.

e.   The election of Vickie White as manager of CSLH.

f.   The transfer of all of Vickie White's membership interests in CSLH to Chicago South Loop Hotel Holdings.

g.   The election of Todd Hansen as manager of CSLH.

48.     Notwithstanding the foregoing findings, the amendment to §9.2 of CSLH's operating agreement has not been rescinded, Louis Dodd has not been reinstated as manager and secretary of Chicago South Loop Hotel, the transfer and sale of membership interests in CSLH belonging to Vivian Murphy and Astrid Cooper have not been returned; the resolution allowing the addition of manager to CSLH has not been rescinded, Vickie White's election as manager of CSLH has not been revoked, the transfer of all of Vickie White's membership interests in CSLH to Chicago South Loop Hotel Holdings, LLC has not been reversed, and Todd Hansen's election as manager of CSLH has not been revoked.

11

10553436.1

FILED DATE: 7/16/2025 3:16 PM    2023CH09369

49.    Mr. Dodd believes that the bankruptcy court's ruling was correct, and that all of the actions taken in violation of CSLH's Operating Agreement ought to be rectified.

50.    For their part, Ms. White, Chicago South Loop Hotel Holdings, LLC, and Todd Hansen have taken no actions to rectify the actions found by the bankruptcy court to have been taken in violation of CSLH's Operating Agreement. In fact, it appears that they have ignored the bankruptcy court's ruling and continue to operate as if their actions were not taken in violation of CSLH's Operating Agreement.

51.    Mr. Dodd seeks a declaration pursuant to 735 ILCS 5/2-701 that:

a.    The amendment to § 9.2 of CSLH's operating agreement, which allowed the removal of a comanager for cause, is deemed void *ab initio*;

b.    The removal of Louis Dodd as comanager and secretary was invalid, and that Mr. Dodd is reinstated as a manager and secretary of CSLH;

c.    The transfer and sale of the membership interests in CSLH belonging to Vivian Murphy and Astrid Cooper to Vickie White is void *ab initio*;

d.    The Resolution allowing the addition of managers to CSLH is void *ab initio*;

e.    The election of Vickie White as manager of CSLH is revoked;

f.    The transfer of all of Vickie White's membership interests in CSLH to Chicago South Loop Hotel Holdings is void *ab initio*, with the transfer of such membership interest to be returned to Vickie White; and

g.    The election of Todd Hansen as manager of CSLH is revoked.

## Count II

**Breach of Fiduciary Duty – 805 ILCS § 180/15-3**
**(Mr. Dodd, on his own behalf and derivatively on behalf of CSLH, Against Ms. White)**

52.    Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 51 as and

12

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

for this Paragraph 52.

53.     As a member of CSLH, Ms. White owe fiduciary duties of loyalty and care to CSLH's members and CSLH.

54.     Pursuant to 805 ILCS § 180/15-3(c), "[a] member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. 805 ILCS § 180/15-3(c). Further, "a manager is held to the same standards of conduct prescribed for members in subsections (b), (c), (d), and (e) of this Section." 805 ILCS § 180/15-3(g).

55.     Ms. White breached her fiduciary duty of care by, *inter alia*, failing to communicate with current members and co-managers of CSLH, unilaterally taking control of CSLH to the exclusion of Mr. Dodd, terminating the relationship with the Chicago South Loop Hotel's property management company, and entering into a hotel management agreement with Premier Hospitality Group without authority.

56.     Furthermore, Ms. White negligently and recklessly abused her position as manager of CSLH to funnel money to entities affiliated with Paris Fountis, and entering into commercially unreasonable contracts with Mr. Fountis.

57.     Ms. White also allowed the loan secured by Chicago South Loop Hotel to be in default, resulting in a foreclosure lawsuit.

58.     Ms. White took these actions without consulting the members and co-managers of CSLH.

13

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

59.     Ms. White's conduct was grossly negligent and reckless because she completely disregarded the consequences of her actions, which directly caused CSLH Owner to default on its mortgage obligations.

60.     Ms. White mismanaged Chicago South Loop Hotel in an ongoing effort to damage Mr. Dodd's business ventures and retain profits for herself and/or other individuals who took over management of the Hotel. It would be futile to demand that Ms. White sue herself on behalf of Chicago South Loop Hotel, LLC.

61.     As a true and proximate result of Ms. White's breach of her fiduciary duty of care, CSLH Owner defaulted on its mortgage obligations under the Loan Documents. In addition, Ms. White's actions have devalued the Hotel and damaged Mr. Dodd's membership interest in the Hotel.

62.     As a true and proximate result of Ms. White's breach of her fiduciary duties, Mr. Dodd has sustained damages in an amount to be proven at a trial in this matter.

WHEREFORE, Mr. Dodd respectfully requests that the Court enter judgment in his favor and against Ms. White and award Mr. Dodd his damages in an amount to be determined at trial, plus costs, attorneys' fees and such other and further relief that is just and proper under the circumstances.

## Count III
### Breach of Operating Agreement
### (Mr. Dodd, on his own behalf and derivatively on behalf of CSLH, Against Ms. White)

63.     Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 62 as if restated herein.

64.     Article 10.1 of the CSLH Operating Agreement provides:

"The Manager shall have sole and complete control of the management and operation of the affairs and business of the limited liability company and shall

14

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

operate the limited liability company for the benefit of all the members. One of the signatures of the manager shall be sufficient to bind the limited liability company (so long as such signatory has the consent thereto of the other managers, if there is more than one manager)."

*See* Ex. 1, Art.10.1

65.     Article 10.9 of the Operating Agreement provides:

"Notwithstanding anything to the contrary contained herein, the manager shall not perform any act on behalf of the limited liability company without the approval of those members who won an aggregate of more than fifty percent (50%) (or 75% in the case of the last sentence of Article 12.2 below) of the total percentage interests of all members of the limited liability, which approval may be made in writing or at a meeting of the limited liability company in accordance with Article 12.3 below."

*Id.*

66.     Ms. White breached the CSLH Operating Agreement by forcefully taking over CSLH and performing numerous acts on behalf of CSLH without the approval of the sufficient members having the requisite membership ownership percentage as required by Article 10.9 of the Operating Agreement, namely, by terminating the relationship with the Hotel's property management company, FHG, and entering into a new management agreement with Premier Hospitality Group.

67.     Additionally, Ms. White breached the Operating Agreement by failing to obtain or present a written contract and the required signatures for work amounting to more than $50,000 at the Hotel, failing to consult the Co-Managers regarding the attempted termination of legal counsel, sending numerous emails attacking the credibility of CSLH members, and refusing to stop all construction regarding the restaurant/bar as previously voted by co-owners/co-managers by majority vote.

68.     As a true and proximate result of Ms. White's breach of the Operating Agreement, Mr. Dodd has sustained damages in an amount to be proven in a trial in this action. It would be

15

10553436.1

FILED DATE: 7/16/2025 3:16 PM    2023CH09369

futile to demand that Ms. White sue herself on behalf of Chicago South Loop Hotel, LLC.

WHEREFORE, Mr. Dodd respectfully requests that the Court enter judgment in his favor and against Ms. White on Count III and award Mr. Dodd his damages in an amount to be determined at trial, plus costs, attorneys' fees and such other and further relief that is just and proper under the circumstances.

**Count IV**
**Action pursuant to 805 ILCS § 180/35-1(a)(4)-(5)**
**(Mr. Dodd, individually and derivatively on behalf of CSLH, Against all Defendants)**

69.    Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 68 as if restated herein.

70.    As a member of CSLH, Mr. Dodd seeks the entry of a judicial decree directing the dissolution and winding up of CSLH pursuant to the Illinois Limited Liability Company Act, 805 ILCS § 180/35-1(a)(4) – (5).

71.    As set forth hereinabove, due to the actions of Ms. White, Chicago South Loop Hotel Holdings, LLC and Todd Hansen, the economic purpose of CSLH has been unreasonably frustrated.

72.    As set forth hereinabove, Ms. White breached her fiduciary duties owed to the other members of CSLH making it not reasonably practicable to carry on CSLH's business with Ms. White as a member. Moreover, the illegal transfer of shares to Chicago South Loop Hotel Holdings, LLC and the action taken by Todd Hansen to unilaterally and wrongfully file a bankruptcy petition on behalf of Chicago South Loop Hotel Owner, LLC has made it impossible for CSLH to function.

73.    Mr. Hansen and Chicago South Loop Hotel Owner, LLC continue to operate Chicago South Loop Hotel as if they have membership interests, despite a court finding that the

16

10553436.1

FILED DATE: 7/16/2025 3:16 PM    2023CH09369

transfer of Ms. White's membership interests was unauthorized and improper.

74.    As set forth hereinabove, Ms. White breached several provisions of CSLH's Operating Agreement making it not reasonably practicable to carry on CSLH's business with Ms. White as a member or with the unauthorized transferee of her membership interests, Chicago South Loop Hotel Holdings, LLC.

75.    As set forth hereinabove, due to the actions of Ms. White, Chicago South Loop Hotel Holdings, LLC, Todd Hansen and the disputes among the members of CSLH, it is not reasonably practicable to carry on CSLH's business in conformity with CSLH's Operating Agreement and any other governing document.

WHEREFORE, Mr. Dodd, on his own behalf and derivatively on behalf of CSLH, respectfully requests that the Court enter a judgment in his favor and against all Defendants on Count IV and enter a judicial decree pursuant to 805 ILCS § 180/35-1(a)(4)-(5) as follows: (a) Removing Ms. White and any of her transferees as a member of CSLH; (b) in the alternative, ordering the buyout of Mr. Dodd's interest in CSLH, after accounting for all damages caused by Ms. White and any transferee(s) of her membership interests; (c) In the alternative, ordering the dissolution and winding up of CSLH, after accounting for all damages cause by Ms. White and any transferee(s) of her membership interests; (d) awarding Mr. Dodd his reasonable attorneys' fees and costs incurred in bringing this action; and (e) awarding Mr. Dodd such other and further relief that is just and proper under the circumstances.

## COUNT V
## Accounting
### (Mr. Dodd Against Ms. White and Chicago South Loop Hotel Holdings, LLC)

76.    Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 75 as restated herein.

17

10553436.1

FILED DATE: 7/16/2025 3:16 PM    2023CH09369

77.      Mr. Dodd requested from Ms. White to have access to and examination of the financial and operational books and records of CSLH.

78.      Through her forceful and unlawful takeover of CSLH, Ms. White had sole access to and control over CSLH's official books and records.

79.      Ms. White failed, after repeated requests, to provide access to and for the examination of said books and records.

80.      By virtue of her role as the Manager of CSLH, Ms. White owes Mr. Dodd and other members of CSLH fiduciary duties, including the duties of utmost good faith and fair dealing, care, and loyalty.

81.      Ms. White has since turned over the books and records of CSLH to the purported transferee of her membership interests, Chicago South Loop Hotel Holdings, LLC.

82.      Mr. Dodd has a need for discovery of the books and records of CSLH.

83.      Mr. Dodd lacks an adequate remedy at law to gain access to and understanding of CSLH's books and records.

WHEREFORE, Mr. Dodd respectfully requests that the Court enter a judgment in his favor and against Ms. White and Chicago South Loop Hotel Holdings, LLC on Count V and order a full accounting of the books and records of CSLH, awarding Mr. Dodd's his reasonable attorneys' fees and costs incurred in bringing this action, and award Mr. Dodd such other and further relief that is just and proper under the circumstances.

### COUNT VI
### Breach of Contract
### (Mr. Dodd, derivatively on behalf of CSLH, Against Premier Hospitality)

84.      Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 83 as restated herein.

18

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

85.      On January 15, 2019, Chicago South Loop Hotel, LLC and Premier Hospitality entered into a Hotel Management Agreement.

86.      On January 2, 2021, Chicago South Loop Hotel, LLC and Premier Hospitality entered into an Amendment to Agreement for Hotel Management. A copy of the Hotel Management Agreement and Amendment to Agreement for Hotel Management (collectively, the "Management Agreement") are attached hereto as **Exhibit 11.**

87.      Pursuant to the Management Agreement, Premier Hospitality was appointed as manager of Chicago South Loop Hotel to direct, supervise, manage and operate Chicago South Loop Hotel.

88.      Mr. Fountis at all relevant times was the manager of Premier Hospitality and controlled Premier Hospitality.

89.      Premier Hospitality failed to properly manage, supervise, control and operate Chicago South Loop Hotel.

90.      Among other things, under management of Premier Hospitality, the conditions and operations of Chicago South Loop Hotel deteriorated such that repairs were not made and regular maintenance of Chicago South Loop Hotel was significantly deferred or non-existent.

91.      Furthermore, Premier Hospitality failed to properly manage the finances of Chicago South Loop Hotel which resulted in a failure to pay the debt of Chicago South Loop Hotel Owner, LLC and caused a default under its loan obligations.

92.      As a result, on November 30, 2022 a mortgage foreclosure lawsuit was initiated against Chicago South Loop Hotel via its borrowing entity Chicago South Loop Hotel Owner, LLC (of which Chicago South Loop Hotel, LLC was the sole owner) filed in the Northern District of Illinois as Case Number 2022 CV 05358 (the "Foreclosure Lawsuit").

19

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

93.   In the Foreclosure Lawsuit, its lender alleged, among other things, that Chicago

South Loop Hotel Owner, LLC:

"fail[ed] to make all payments due and payable to Lender in accordance with the
Loan Documents, including Articles IV and V of the Note and Section 3.1 of the
Mortgage, by not paying default interests and late fees and other costs associated
with the late payment of the monthly installment payments in December 2019,
January and March 2020, and February, March, April, May, June, July, August,
September, October, November and December 2021, which failures each constitute
an Event of Default pursuant to, among other provisions, Section 10.1(a) of the
Mortgage; (ii) fail[ed] to provide financial statements when requested, as required
by, among other provisions, Section 3.12 of the Mortgage to Lender, each failure
of which constitutes an Event of Default pursuant to, among other provisions,
Section 10.1(b) of the Mortgage; (iii) fail[ed] to obtain Lender's consent to the
replacement of the Property Manager in violation of Section 3.17 of the Mortgage
which constitutes an Event of Default pursuant to, among other provisions, Section
10.1(m) of the Mortgage; (iv) fail[ed] to at all times to have Louis Dodd control the
day-to-day operations and management of Borrower and the Property, which
constitutes an Event of Default pursuant to, among other provisions, Section 8.5(a)
and 10.1(d) of the Mortgage; (v) fail[ed] to obtain the Lender's consent for
unpermitted debt in the amount of approximately $1.2MM (i.e., shareholder loans)
to encumber the property in violation of Section 8.1 of the Mortgage which
constitutes an Event of Default pursuant to, among other provisions, Section
10.1(h) of the Mortgage; (vi) fail[ed] to timely file its federal and state tax returns
which is an Event of Default pursuant to, among other provisions, Section 4.2(p)
and 10.1(d) of the Mortgage; (vii) fail[ed] to prevent a lien to be filed against the
Property, which is an Event of Default pursuant to, among other provisions, Section
10.1(h) of the Mortgage; (viii) fail[ed] to comply with the Cash Management
Agreement executed between the parties as of October 24, 2013, which failure to
comply is a breach under Paragraph 5 of the Cash Management Agreement and an
Event of Default pursuant to, among other provisions, Section 10.1(m) of the
Mortgage; (ix) accept[ed] additional debt other than the Loan, including, without
limitation, a loan under the Paycheck Protection Program, an Economic Injury
Disaster Loan, and a loan from an affiliate, Amber Motel, Inc., each of which is a
violation of Section 4.2(h) of the Mortgage, and an Event of Default pursuant to,
among other provisions, Section 10.1(d) of the mortgage; and (x) Guarantors'
fail[ed] to each maintain, or prove that they are maintaining, a minimum fifty
percent aggregate net worth and, at minimum, 50% aggregate liquidity, which is a
default pursuant to, among other provisions, Section 22 of the Guaranty, and an
Event of Default pursuant to, among other provisions, Section 10.1(j) of the
Mortgage.

94.   Further, as described below, Premier Hospitality failed to supervise the

management and control over the finances of Chicago South Loop Hotel, which were pilfered by

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

Mr. Fountis.

95.     Consequently, Premier Hospitality breached its obligations under the Management Agreement under at least Sections 1.2, 2.1, 2.2, 2.5, 3.4 and 6.1 thereof.

96.     Premier Hospitality's conduct in breaching the Management Agreement was grossly negligent and constituted willful misconduct.

97.     At the time that Premier Hospitality breached the Management Agreement, Chicago South Loop Hotel had performed all its obligations under the Management Agreement.

98.     Chicago South Loop Hotel has been damaged by Premier Hospitality's breached in an amount to be proven at trial, but believed to be in excess of $500,000.00.

WHEREFORE, Mr. Dodd, derivatively on behalf of CSLH, respectfully requests that the Court enter a judgment in his favor and against Premier Hospitality in an amount to be proven at trial, believed to be in excess of $500,000.00, and awarding Mr. Dodd such other and further relief that is just and proper under the circumstances.

### COUNT VII
### Conversion
### (Mr. Dodd, derivatively on behalf of CSLH, Against Mr. Fountis)

99.     Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 98 as restated herein.

100.     In the course of Premier Hospitality's management of Chicago South Loop Hotel, Premier Hospitality granted Mr. Fountis access to the bank accounts of Chicago South Loop Hotel.

101.     Mr. Fountis wrote checks from the bank accounts of Chicago South Loop Hotel and signed checks on behalf of Chicago South Loop Hotel.

102.     Mr. Fountis wrote checks payable to himself from the bank accounts for Chicago South Loop Hotel.

10553436.1

FILED DATE: 7/16/2025 3:16 PM    2023CH09369

103.    Mr. Fountis wrote checks payable to cash from the bank accounts for Chicago South Loop Hotel.

104.    Numerous checks that Mr. Fountis wrote and made payable to himself or payable to cash from the bank accounts of Chicago South Loop Hotel were not drawn for any legitimate business purpose. Instead, said checks were noted as reimbursements, payments related to another hotel, Amber Inn, or for other illegitimate purposes.

105.    Over the course of several years and on a monthly basis, continuing through 2023, Mr. Fountis wrote checks payable to himself from the bank account of Chicago South Loop Hotel totaling several hundreds of thousands of dollars. A sample of a few such checks are attached hereto as **Exhibit 12**.

106.    Mr. Fountis wrote checks payable to cash from the bank account of Chicago South Loop Hotel. One such check Mr. Fountis wrote payable to cash was for $300,000.00. See **Exhibit 13-A**. The checks that Mr. Fountis wrote payable to cash from the bank accounts for Chicago South Loop Hotel were not drawn for any legitimate business purpose. See **Exhibit 13-B.**

107.    Mr. Fountis also wrongfully regularly transferred funds from the bank account of Chicago South Loop Hotel for unknown purposes. See sample copies of transfers attached hereto as **Exhibit 14**.

108.    Chicago South Loop Hotel has an immediate right to, and return of, the funds that Mr. Fountis wrongfully drew from or transferred away from its bank account, whether through checks made payable to Mr. Fountis, made payable to cash, or transferred to unknown locations.

109.    Chicago South Loop Hotel and an unconditional and absolute right to all such funds.

110.    Chicago South Loop Hotel has made a demand upon Mr. Fountis to return all such

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

funds.

111.    Despite such demand, Mr. Fountis has failed and refused to return such funds to Chicago South Loop Hotel.

112.    Mr. Fountis wrongfully and without authorization assumed control and ownership of funds that rightfully belong to Chicago South Loop Hotel.

113.    As a result of Mr. Fountis's wrongful retention, control and ownership of funds belonging to Chicago South Loop Hotel, Chicago South Loop Hotel has been damaged.

114.    The full amount of damages is believed to be in excess of $500,000.00.

WHEREFORE, Mr. Dodd, derivatively on behalf of CSLH, respectfully requests that the Court enter a judgment in his favor and against Paris Fountis in an amount to be proven at trial, believed to be in excess of $500,000.00, and awarding Mr. Dodd such other and further relief that is just and proper under the circumstances.

<div align="center">

**COUNT VIII**
**Aiding and Abetting Conversion**
**(Mr. Dodd, derivatively on behalf of CSLH, Against Premier Hospitality)**

</div>

115.    Mr. Dodd realleges and incorporates by reference Paragraphs 1 through 114 as restated herein.

116.    As alleged hereinabove, Mr. Fountis converted funds belonging to Chicago South Loop Hotel.

117.    Premier Hospitality aided and abetted Mr. Fountis to convert said funds by giving him unfettered access to the bank account of Chicago South Loop Hotel without any oversight or auditing of his removal of funds from Chicago South Loop Hotel.

118.    Premier Hospitality was aware of its role in this tortious activity, because it was engaged as manager of Chicago South Loop Hotel and was responsible for managing the operation

10553436.1

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

and maintenance of Chicago South Loop Hotel, and was responsible for supervising all employees including Mr. Fountis.

119.    By granting Mr. Fountis complete and unchecked control over the bank account of Chicago South Loop Hotel, Premier Hospitality knowingly and substantially assisted Mr. Fountis in converting funds belonging to Chicago South Loop Hotel.

120.    As a result of Premier Hospitality aiding and abetting Mr. Fountis, Chicago South Loop Hotel has been damaged in an amount in excess of $500,000.00.

WHEREFORE, Mr. Dodd, derivatively on behalf of CSLH, respectfully requests that the Court enter a judgment in his favor and against Premier Hospitality in an amount to be proven at trial, believed to be in excess of $500,000.00, and awarding Mr. Dodd such other and further relief that is just and proper under the circumstances.

<div style="margin-left:50%">

**LOUIS DODD, individually and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC**

By: /s/ Jason M. Metnick
One of His Attorneys

</div>

Jason M. Metnick
**RAINES FELDMAN LITTRELL LLP**
30 N. LaSalle St., Ste 3100
Chicago, IL  60602
(312) 704-9400
jmetnick@raineslaw.com
Firm ID: 100679

24

10553436.1

**VERIFICATION**

Under penalties as provided by law under 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned, certifies that the statements set forth in the foregoing Second Amended Verified Complaint for Declaratory Relief, Accounting and Other Relief are true, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

FILED DATE: 7/16/2025 3:16 PM   2023CH09369

Louis Dodd

EXHIBIT 4

Form 85 (20200413_bko)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number:  25-12829 |
| CHICAGO SOUTH LOOP HOTEL | ) | |
| OWNER, LLC | ) | |
| | ) | Chapter:  11 |
| | ) | Honorable Deborah L. Thorne |
| | ) | |
| Debtor(s) | ) | |

**Order Granting Motion to Dismiss This Chapter 11 Case**


   Upon consideration of the motion of Louis Dodd to Dismiss This Chapter 11 Case or Appoint a Chapter 11 Trustee, and to Shorten Notice (Docket No. _____) (the "Motion"); and the Motion having come to be heard by this Court on November 19, 2025; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and the Court have determined that adequate notice of the Motion was given; and upon all of the proceedings at the hearing on the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1. The request to shorten notice of the Motion is granted.

2. This chapter 11 case is dismissed.

            Enter:


            Honorable Deborah L. Thorne

Dated:            United States Bankruptcy Judge


**Prepared by:**

Mark S. Melickian
RAINES FELDMAN LITTRELL LLP
30 N. LaSalle Street, Suite 3100
Chicago, IL  60602
Tele:  (312)  704-2174
Email:  mmelickian@raineslaw.com

# EXHIBIT 5

Form 85 (20200113_bko)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

Eastern Division

In Re:                                         )          Case Number: 25-12829
CHICAGO SOUTH LOOP HOTEL                        )
OWNER, LLC                                      )          Chapter: 11
                                                )
                                                )              Honorable Deborah L. Thorne
                                                )
Debtor(s)                                       )

**Order Directing the United States Trustee
to Identify and Appoint a Chapter 11 Trustee**

Upon consideration of the motion of Louis Dodd to Dismiss This Chapter 11 Case or Appoint a
Chapter 11 Trustee, and to Shorten Notice (Docket No. _____) (the "Motion"); and the Motion having
come to be heard by this Court on November 19, 2025; and it appearing that this Court has jurisdiction
over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the
Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and the Court
have determined that adequate notice of the Motion was given; and upon all of the proceedings at the
hearing on the Motion; and the Court having found and determined that the relief sought in the Motion
is in the best interests of the Debtor, its estate, its creditors, and all parties in interest and that the legal
and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due
deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The request to shorten notice of the Motion is granted.

2.      The United States Trustee is directed to identify and appoint a chapter 11 trustee.

Enter:


Honorable Deborah L. Thorne
United States Bankruptcy Judge

Dated:

**Prepared by:**

Mark S. Melickian
RAINES FELDMAN LITTRELL LLP
30 N. LaSalle Street, Suite 3100
Chicago, IL  60602
Tele:  (312)  704-2174
Email:  mmelickian@raineslaw.com