# EXHIBIT G

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| DR. VICKIE WHITE, individually and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC, | ) ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | No.   2019 CH 10966 |
| VIVIAN MURPHY, ASTRID COOPER, and CHICAGO SOUTH LOOP HOTEL, LLC, a nominal defendant, | ) ) ) ) | |
| *Defendants.* | ) ) | |
| ———————————————— | ) | |
| VIVIAN MURPHY, ASTRID COOPER, and CHICAGO SOUTH LOOP HOTEL, LLC, a nominal defendant, | ) ) ) ) | |
| *Defendants, Counter-Plaintiffs and Third-Party Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| DR. VICKIE WHITE, individually and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC, | ) ) ) ) | |
| *Plaintiff/Counter-Defendant.* | ) ) | |
| AND | ) ) | |
| LOUIS DODD; SECTOR CORPORATION, an Illinois corporation; PREMIER HOSPITALITY, LLC, an Illinois limited liability company; and PARIS FOUNTIS, | ) ) ) ) ) | |
| *Third-Party Defendants.* | ) ) | |

## AGREED ORDER

THIS CAUSE coming on to be heard for status, the Court being advised that all

issues and controversies between the parties and all causes of action raised in the pleadings

**EXHIBIT D**

have been fully compromised and settled, the parties having stipulated and agreed to

dismissal of the complaint and counterclaim with prejudice, each party to bear its own costs,

IT IS HEREBY ORDERED:

The complaint and counterclaim are dismissed with prejudice, each party to bear

its own costs. This Court shall retain jurisdiction of this cause to enforce the settlement

agreement between the parties.

This is a final order disposing of all matters between the parties.

ENTER:

_____
JUDGE

Judge Pamela McLean Meyerson

JAN 2 0 2021

Circuit Court - 2097

J. Mark Lukanich
Attorney for Dr. Vickie White
7270 W. College Drive, Suite 101
Palos Heights, IL  60463
708-361-5556
jmlukanich@mindspring.com
Attorney No. 39983

2

# EXHIBIT H

## COOPER RESIGNATION AS MANAGER OF CHICAGO SOUTH LOOP, LLC

Astrid Cooper hereby resigns as a manager of Chicago South Loop, LLC, and from any officer positions she may have with Chicago South Loop, LLC, effective December 30, 2020.

Astrid Cooper

## MURPHY RESIGNATION AS MANAGER OF CHICAGO SOUTH LOOP, LLC

Vivian Murphy hereby resigns as a manager of Chicago South Loop, LLC, and from any officer positions she may have with Chicago South Loop, LLC, effective December 30, 2020.

Vivian Murphy

# EXHIBIT I

Order                                                                    (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

#19

CHICAGO SOUTHLOOP HOTEL, LLC

v.

VICKIE WHITE AND LOUIS DODD

No. 2019 L 002607

### ORDER

This matter coming before the Court on Defendants' Vickie White and Louis Dodds motion to dismiss pursuant to 2-619 for oral argument, all parties being present and represented by counsel, and the Court being fully advised in the premises, IT IS HEREBY ORDERED:

1) The Court finds and holds that Section 10.9 of the Operating Agreement requires that a manager shall not perform any act on behalf of the Company without approval of more than 50% of the membership approval; and

2) In light of this Holding, Defendants White and Dodd's motions to dismiss pursuant to 2-619 are granted; and

401  3) This case is hereby DISMISSED WITH PREJUDICE; and

4251  4) This order shall not preclude any member of CSHL from filing a separate derivative action or actions

Judge Diane M. Shelley

OCT 08 2019

Circuit Court – 1925

Attorney No.: 14503
Name: Bill Katris/John Guzzardo
Atty. for: Defendant Vickie White
Address: 500 W Madison #3700
City/State/Zip: Chicago IL 60661
Telephone: 312 - 606 - 3221

ENTERED:

Dated: _____,

_____
Judge                  Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT J

## RESOLUTION OF MANAGER OF
## CHICAGO SOUTH LOOP HOTEL, LLC

The undersigned as the Manager of Chicago South Loop Hotel, LLC, an Illinois limited liability company ("Company"), pursuant to Section 15-1(e) of the Illinois Limited Liability Act, and Articles 9.3 and 12.2, hereby consents to and adopts the following resolutions, in lieu of a meeting, and waive all notice of meeting, and take the following actions.

WHEREAS, Vickie White is the Manager of the Company;

WHEREAS, Vickie White owns 57.5% of the membership interest of the Company and Louis Dodd owns 42.5% of the membership interest of the Company;

WHEREAS, the Manager has proposed striking certain current terms in the Articles and amending the Articles with new provisions as detailed below;

WHEREAS, Members owning greater than 50% of the of the total percentage interests of all members of the Company have executed a consent to the Amendment;

NOW, THEREFORE. the undersigned hereby amends the Articles as follows:

1. **RESOLVED**: Article 9.2, as amended, shall be stricken, and replaced with Article 9.2 with the following terms:

     9.2     **Election of Manager.** The Company's managers shall be appointed, elected, removed, or replaced by a vote, approval or consent of Members owning greater than 50% of the total percentage interests of all members of the Company.

2. **RESOLVED** Article 9.4 shall be added with the following terms;

     9.4     The number of managers may be increased or decreased as determined by consent of the Members owning greater than 50% of the total percentage interests of all members of the Company. The number of Managers is currently set at two. A vacancy of a manager shall be filled pursuant to Article 9.2.

3. **RESOLVED** Article 12.4 shall be amended striking the existing provision and inserting the following:

     12.4.   Members owning greater than 50% of the total percentage interests of all members of the Company shall have the right and the power to admit additional members upon majority vote of the members whose aggregate percentage interest in the limited liability company exceeding fifty percent (50%) of the total percentage interests of all members of the Company.

4. **RESOLVED** Article 13 in its entirety, including subsections 13.1 through 13.5, shall be stricken, and replaced with Article 13 with the following terms;

     ARTICLE 13 – TRANSFER OF MEMBERSHIP INTEREST

     13.1    **Transfers in General.**   The transfer of any interest in the

company is subject to the restrictions on transfer contained in these Articles. Any transfer in contravention of these restrictions shall be void and ineffectual and shall not bind or be recognized by the Company or any other party. No purported assignee in contravention of these restrictions shall have any right to any profits, losses, or distributions of the Company. Any attempt to transfer any interest in the Company is void unless there is written documentation of the agreement of the Manager(s) and the agreement of Members owning greater than 50% of the total percentage interests of all members of the Company to the transfer of the membership interest.

13.2   **Substituted Members.**   In connection with the Transfer of a Membership Interest agreed to by the Manager(s) and by Members owning greater than 50% of the total percentage interests of all Members of the Company, the Transferee shall become a Substituted Member (a "Substituted Member") on the effective date of such Transfer provided the Substituted Member submits a written document to the Manager agreeing to be bound by the terms of the Articles, as amended. A Substituted Member shall have all rights provided to Members in the Articles, as amended.

This Memorandum of Action is hereby adopted and authorized by consent of the Manager of the limited liability company on this day February 27th, 2023.


MANAGER:

Vickie White

# EXHIBIT K

## RESOLUTION AND WRITTEN CONSENT OF MEMBERS
## AND MANAGER OF CHICAGO SOUTH LOOP HOTEL, LLC

**THIS WRITTEN CONSENT AND RESOLUTION OF THE MEMBERS AND MANAGER OF CHICAGO SOUTH LOOP HOTEL, LLC** dated as of February 27th , 2023 (this "Resolution") is entered into pursuant to that certain operating agreement of the Chicago South Loop Hotel LLC (the "Articles"), a manager-managed limited liability company organized under the laws of the State of Illinois (the "Company"). In accordance with 805 ILCS 180/15-1(e) and Articles 9.3 and 12.2 of the Operating agreement, the undersigned, constituting manager of the Company (the "Manager") and the Members of the Company owning greater than 50% of the of the total percentage interests of all members of the Company and constituting a majority of the vote needed under the Articles to consent to the Manager's approval of the transfer of Membership Interests in the Company identified herein, do hereby resolve and enter into this Written Consent and Resolution of Members and Manager in accordance with the Articles consenting to the Transfer in lieu of formal meeting to the following actions:

WHEREAS, Vickie White is the Manager of the Company;

WHEREAS, Vickie White owns 57.5% of the membership interest of the Company and Louis Dodd owns 42.5% of the membership interest of the Company;

WHEREAS, Vickie White has proposed transferring 56% of her membership interest in the Company (the "Transfer") to Chicago South Loop Hotel Holdings, LLC  (the "Substituted Member");

WHEREAS, the Manager agrees to the Transfer;

WHEREAS, Members owning greater than 50% of the of the total percentage interests of all members of the Company consent to the Transfer;

WHEREAS, the Substituted Member has provided written confirmation to the Manager agreeing to be bound by the terms of the Articles, as amended

NOW, THEREFORE. the undersigned hereby agree to as follows:

1. Vickie White's transfer of 56% of the membership interest in the Company is approved and implemented;

2. Following the Transfer, the ownership of the Company shall be as follows;

    56%   Chicago South Loop Hotel Holdings, LLC

    42.5%  Louis Dodd

    1.5%   Vickie White

IN WITNESS WHEREOF, the undersigned Manager and the Member owning greater than 50% of the total percentage interests of all members of the Company have executed this Resolution and Written Consent of the Majority of the Members and the Manager of the Company as of February 27th, 2023 approving the transfer of 56% of the membership interest in the Company to Chicago South Loop Holdings, LLC.

**MANAGER**

_Vickie White_

**Vickie White**

**MEMBER:**

_Vickie White_

**Vickie White**

# EXHIBIT L

# Purchase Agreement

**THIS PURCHASE AGREEMENT** (the *"Agreement"*) is entered into as of the **27th day of February, 2023** by and among Chicago South Loop Hotel Holdings, LLC a Delaware, LLC and Vickie White . Each of the foregoing may be referred to throughout this Agreement individually as a "party" or collectively as the "parties".

## RECITALS

(A)   Chicago South Loop Hotel, LLC an Illinois Limited Liability Company

    (i)   The two (2) members of Chicago South Loop Hotel, LLC are currently Vickie White . T, who owns eighty percent (57.5%) of the membership interest, and Louis Dodd, who owns forty two and ½ percent (42.5%) of the membership interest.

    (ii)   The manager of Chicago South Loop Hotel, LLC is currently Vickie White.

(B)   At Closing (defined below), Vickie White will sell and assign all of her membership interest in Chicago South Loop Hotel, LLC to Chicago South Loop Hotel Holdings, LLC, a Delaware limited liability company, for a lump sum Note in the amount of Two Million Five Hundred Thousand and zero cents ( $2,500,000.00) and additional consideration, and Vickie White will resign as manager of Chicago South Loop Hotel, LLC

    (ii)   This transaction is set forth in the Membership Interest Sale and Purchase Agreement for Chicago South Loop Hotel, LLC in **Exhibit 1.1**.

    (ii)   The sale and assignment is further evidenced by the Assignment Separate From Certificate contained in **Exhibit 1.2**.

    (iii)   The manager resignations are further evidenced by the Certificates of Resignation as Manager contained in **Exhibit 1.3**.

(C)   Repayment of the Note will be secured by security interests as briefly summarized below.

    (i)   The security interest in the equity of Chicago South Loop Hotel , LLC is set forth in the Equity Pledge Agreement for Chicago South Loop Hotel Holdings , LLC in **Exhibit 1.4**.

    (ii)   No later than 36 months from the date of this agreement.

    (iii)   Upon the sale of the property commonly known as " The Chicago South Loop Hotel"

    (iv)   Upon the refinance of the property known as "The Chicago South Loop Hotel".

(D)   In summary, at the Closing (defined below) and subject to the terms and conditions hereof:

    (i)   Chicago South Loop Hotel Holdings, LLC , collectively with Louis Dodds , will own one hundred percent (100%) of the membership interests in Chicago South Loop Hotel, LLC and Chicago South Loop Hotel Holdings, LLC will have managerial authority over Chicago South Loop Hotel, LLC subject to any claims under the Illinois Company Act .

    (ii)   Chicago South Loop Hotel Holdings, LLC will have issued a note to Vickie White in an amount of $2,500,000.00 and collateralized by the Security Pledge Agreement.

    (iii)   Chicago South Loop Hotel Holdings, LLC will defend at its own expense any actions against Vickie White by any current and former members of Chicago South Loop Hotel, LLC.

**NOW, THEREFORE,** in consideration of the mutual covenants, understandings, and agreements contained in this Agreement—and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged—the parties, intending to be legally bound, agree as follows:

## ARTICLE 1. CLOSING

**1.1. Closing.** The consummation of the transactions contemplated by the Related Agreements (the *"Closing"*) will occur on the _22_ day of _February_ , 20_23_ (the *"Closing Date"*) .

**1.2. Conditions to Obligations of Vickie White.** Is obligated to consummate the sale and transfer of Membership Interests in Chicago South Loop Hotel, LLC and along with resignation of management.

**1.3. Conditions to Obligations of Chicago South Loop Hotel Holdings, LLC**

(a)    Execute the Security Pledge agreement and Note in the amount of $2,500,000.00 payable to Vickie White.

(b)    Defend Vickie White in all actions by prior and current members of Chicago South Loop Hotel, LLC.

(c)    The representations and warranties of Chicago South Loop Hotel Holdings, LLC contained throughout the Related Agreements must have been true on the date they were made, and they must be true on and as of the Closing Date as if they were made on that date.

(d)    Any and all other conditions to Closing contained in any of the other Related Agreements must have been satisfied or waived.

**1.4. Additional Actions.** Each party agrees that, after the execution of the Related Agreement and/or after Closing, it will, from time to time, upon the reasonable request of one (1) or more of the other parties, execute, acknowledge, and deliver all such documents and do all such other acts and things as such requesting party may, from time to time, reasonably request in order to carry out the terms and conditions of this Agreement or any of the Related Agreement or to consummate, complete, or carry out any one (1) or more of the transactions or purposes contemplated under this Agreement or any of the Related Agreements.

## ARTICLE 2. INDEMNIFICATION

**2.1. Indemnification.** Chicago South Loop Hotel Holdings, LLC, shall indemnify, fund but not control the legal defense of Vickie White in any and all actions against her by former and current members of Chicago South Loop Hotel, LLC Indemnities against and in respect of all Claims (including but not limited to Claims made by third parties) that arise from, or are in any way connected to membership interests of the Chicago South Loop Hotel, LLC:

## ARTICLE 3. GENERAL PROVISIONS

**3.1. Cross-Breach.** A breach of any one (1) of the Related Agreements by Chicago South Loop Hotel Holdings, LLC will constitute a breach of all of the Related Agreements, and the party against whom the breach was committed will have access to all of the rights, remedies, and powers available under all of the Related Agreements.

**3.2. Notice.** All notices, waivers, demands, requests, or other communications required or permitted hereunder shall, unless otherwise expressly provided, be in writing and be deemed to have been properly given, served and received (i) if delivered by messenger, when delivered; (ii) if mailed, on

2

the third (3rd) business day after deposit in the United States mail, certified or registered, postage prepaid, return receipt requested; or (iii) if delivered by overnight express courier, freight prepaid, the next business day after delivery to such courier; in every case addressed to the party to be notified as follows:

Notice to Vickie White at _704 Ambriance Dr._

_Burr Ridge Ill._

_60527_

Notice to Chicago South Loop Hotel Holdings, LLC
105 W Madison , Chicago Suite 1500
Chicago IL, 60602

**3.3. Severability.** Wherever possible, each provision of this Agreement will be interpreted in such manner as to be effective, valid, and enforceable under applicable law. However, if a court of competent jurisdiction holds any provision of this Agreement to be invalid, unenforceable, or illegal, then (i) the invalid, unenforceable, or illegal provision will be severed from the Agreement, (ii) if the essential terms and conditions of this Agreement for each party remain valid, binding, and enforceable, then all other provisions of the Agreement will remain in full force and effect, and (iii) the parties shall use their commercially reasonable efforts to find and employ an alternative means to achieve the same or substantially the same result as that contemplated by the invalid, unenforceable, or illegal provision.

**3.4. Construction of Language.** The headings and captions contained herein are for convenience only and have no legal effect. As used in this Agreement, the singular will include the plural and the plural will include the singular, and masculine, feminine, and neuter pronouns will be fully interchangeable, where the context so requires. The parties stipulate and agree that the Agreement's language will be construed simply, according to its fair meaning, and never strictly for or against any party, regardless of which party is responsible for drafting the language.

**3.5. Counterparts and Signatures.** The parties may execute this Agreement in several counterparts, each an original, and all of which collectively constitute only one agreement. No execution of this Agreement will be invalidated merely because a signature was affixed or delivered digitally, electronically, or via facsimile.

**3.6. Amendments.** Any amendment to this Agreement must be made through a writing signed by all parties. Any purported amendment that does not comply with the preceding sentence is void.

**3.7. No Waiver.** No waiver of any provision of this Agreement will be effective unless made in writing and signed by the waiving party. A party's waiver of any breach of this Agreement will not be deemed a waiver of any subsequent breach. The delay or failure of any party to enforce the performance of any term or obligation of this Agreement, or to enforce any of its rights or remedies, will not prevent or otherwise limit the subsequent enforcement of any such term, obligation, right, or remedy by such party.

**3.8. Entire Agreement.** This Agreement, including all Exhibits which are incorporated by reference into and fully made part of the Agreement, constitutes the final, exclusive agreement between the parties on the matters contained herein. All previous and contemporaneous agreements between the parties relating to the matters contained herein are expressly superseded by this Agreement.

**3.9. Assignment, Delegation, and Binding Effect .**Chicago South Loop Hotel Holdings, LLC shall not assign their rights or delegate their performance under this Agreement without Vickie White's prior written consent; without such prior written consent, any purported assignment or delegation by any such party is void. Reference to assignments of rights in the preceding sentence includes voluntary and

3

Involuntary assignments, whether made by merger, consolidation, dissolution, operation of law, or any other manner.

**3.10. No Third-Party Beneficiaries.** This Agreement is intended for the benefit of the parties and their respective permitted assigns, successors, heirs, executors, administrators, and legal representatives and, unless otherwise provided herein, no provision of this Agreement may be enforced by any other person or entity.

**3.11. Governing Law and Venue.** This Agreement is governed and controlled by, and will be interpreted under, the laws of the State of Illinois, without regard to its conflicts of laws principles. Any Claim arising from, or in any way connected to, this Agreement or its performance (regardless of whether the Claim is based in contract, tort, or otherwise) shall be litigated in the State of Delaware . Each party voluntarily submits to the exclusive jurisdiction of such courts. Each party voluntarily and irrevocably WAIVES any objections to the laying of venue therein, any assertions of inconvenient or improper forum, and any right to transfer or change venue by any means or method whatsoever and howsoever arising. Notwithstanding the foregoing, actions in equity for injunctive or other equitable relief may be brought in any court or jurisdiction if reasonably necessary to protect a party's interests hereunder.

**3.12. Attorney's Fees.** In any Claim arising from, or in any way connected to, this Agreement (regardless of whether the Claim is based in contract, tort, or otherwise, and including but not limited to appeals), the prevailing party or parties will be entitled to recover all of its or their court costs, expenses, and reasonable attorney's fees from the non-prevailing party or parties, cumulative with all other relief. Judgment on any such award may be sought and enforced in the same or separate action in any court of appropriate jurisdiction.

**3.13. Time of the Essence.** Time is of the essence for the obligations contained in this Agreement.

**3.14. JURY TRIAL WAIVER.** EACH PARTY VOLUNTARILY AND IRREVOCABLY WAIVES, AND COVENANTS NOT TO ASSERT, ANY RIGHT TO TRIAL BY JURY IN ANY CLAIM, SUIT, OR OTHER PROCEEDING ARISING FROM, OR IN CONNECTION WITH, THIS AGREEMENT (REGARDLESS OF WHETHER THE PROCEEDING IS BASED IN CONTRACT, TORT, OR OTHERWISE). A PARTY'S FILING OF AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH A COURT WILL BE SUFFICIENT TO EVIDENCE THIS JURY TRIAL WAIVER'S EXISTENCE. EACH PARTY ACKNOWLEDGES HAVING RECEIVED THE ADVICE AND CARE OF INDEPENDENT, COMPETENT LEGAL COUNSEL BEFORE WILLINGLY CONSENTING TO THIS JURY TRIAL WAIVER.

**3.15. LEGAL COUNSEL.** EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS READ AND UNDERSTOOD THE ENTIRE AGREEMENT (INCLUDING ALL EXHIBITS) AND HAS THOROUGHLY EVALUATED IT WITH AN INDEPENDENT, COMPETENT ATTORNEY PRIOR TO SIGNING. FURTHERMORE, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE IS NOT UNDER ANY DURESS, COERCION, OR UNDUE INFLUENCE. FINALLY, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS ACTUAL AUTHORITY TO SIGN IT.

*[Signature Page follows; remainder of this page intentionally left blank]*

4

### Signature Page
### of
### Purchase Agreement

**IN WITNESS WHEREOF,** each party, acting independently or through a duly authorized officer or representative, intending to be legally bound, has executed and delivered this Agreement as of the date first written above.

**By:**    Vickie White

_____
Signature

STATE OF ILLINOIS        )
                         ) SS:        **ACKNOWLEDGMENT**
COUNTY OF    _Cook_      )

Before me, a Notary Public in and for said County and State, personally appeared **Vickie White**  who acknowledged the execution of the foregoing  Purchase agreement, and who, having been duly sworn, stated that any representations therein contained are true.

Witness my hand and Notarial Seal this _27_ day of _FEB_ , 2023

Signature _Joyce L. Thomson_ Printed _Joyce L Thomson_

Resident of _Cook_ County, Illinois

My Commission Expires _4-19-2026_

"OFFICIAL SEAL"
JOYCE L THOMSON
Notary Public - State of Illinois
My Commission Expires April 19, 2026

By Chicago South Loop Hotel Holdings, LLC

By : Jaroslaw Kurzac , Manager


STATE OF ILLINOIS                    )

                                     ) SS:          ACKNOWLEDGMENT

COUNTY OF _Cook_                     )


Before me, a Notary Public in and for said County and State, personally appeared Jaroslaw Kurzac who acknowledged the execution of the foregoing Purchase Agreement , and who, having been duly sworn, stated that any representations therein contained are true.

Witness my hand and Notarial Seal this _27TH_ day of _February_ , 20_23_

Signature _____ Printed _Adam Goodman_

Resident of _Cook_ County, ILLINOIS

My Commission Expires _11-23-23_

ADAM GOODMAN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Nov 23, 2023

**EXHIBIT 1.1:**     **MEMBERSHIP INTEREST SALE AND PURCHASE AGREEMENT**
**Chicago South Loop Hotel , LLC**

# Membership Interest Sale and Purchase Agreement
# Chicago South Loop Hotel,LLC

**THIS MEMBERSHIP INTEREST SALE AND PURCHASE AGREEMENT** (the **"Agreement"**) is entered into by and between Vickie White (the **"Seller"**), Chicago South Loop Hotel Holdings, LLC (the **"Purchaser"**),

### RECITALS

**WHEREAS,** the Seller is a member, fifty-seven and a ½ percent (57.5%) membership interest holder, and manager of Chicago South Loop Hotel, LLC pursuant to that certain Amended and Restated Operating Agreement of Chicago South Loop Hotel, LLC , dated January 26ᵗʰ , 2022 (the **"Operating Agreement"**); and

**WHEREAS,** subject to the terms of this Agreement and on the Closing Date, the Seller desires to sell and Purchaser desires to purchase all of Seller's right, title and interest in Chicago South Loop Hotel, LLC consisting of Seller's fifty-seven and a ½ percent (57.5%) membership interest in Chicago South Loop Hotel, LLC (the **"Purchased Interest"**); and

**WHEREAS,** subject to the terms of this Agreement and following the Closing, the Seller will resign as manager.

**NOW, THEREFORE,** in consideration of the mutual covenants, understandings, and agreements contained in this Agreement—and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged—the parties, intending to be legally bound, agree as follows:

### ARTICLE I.
### SALE AND PURCHASE OF THE MEMBERSHIP INTEREST

1.01 Purchase and Sale of the Purchased Interest. Notwithstanding anything to the contrary in the Operating Agreement, upon the terms and conditions hereinafter set forth, the Seller agrees to sell, transfer, convey, assign, and deliver to the Purchaser, and the Purchaser agrees to purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to all of the Purchased Interest. The transfer of ownership of the Purchased Interest shall be evidenced by that certain Assignment Separate From Certificate in the form attached hereto as **Exhibit 1.2** (the **"Assignment"**) to be executed by Seller and Purchaser and delivered on the Closing Date.

1.02 Purchase Price of the Purchased Interest. Subject to the terms of this Agreement, on the Closing Date, the Purchaser shall pay the Seller a purchase price for the Purchased Interest (**"Purchase Price"**) equal to **TWO MILLION FIVE HUNDRED THOUSAND  ($2,500,000.00).** Purchaser shall pay the Purchase Price  IN THE FORM OF A NOTE

1.03 Closing.  The Closing shall occur as set forth in  THE PURCHASE AGREEMENT

1.04 Transaction Costs. The Seller and the Purchaser shall each pay their respective costs for the Closing and the sale and purchase of the Purchased Interest as described in this Agreement.

1.05 Apportionments.  All items of income and expense with respect to the Purchased Interest, if any, shall be apportioned between the Seller and the Purchaser as of 11:59 p.m. on the day immediately preceding the Closing Date.

### ARTICLE II.
### REPRESENTATIONS AND WARRANTIES

8

2.01  <u>Representations and Warranties of Seller</u>.  The Seller represents and warrants to the Purchaser that:

(a)    No event of Bankruptcy has occurred with respect to the Seller;

(b)    No broker or other such person has taken any action with the Seller's authority which would give rise to any claim against either the Purchaser or the Seller for a brokerage commission, finder's fee, or like payment in connection with the transfer of the Purchased Interest;

(c)    The Seller has all necessary power and authority to enter into this Agreement and perform its obligations hereunder;

(d)    This Agreement constitutes a valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms;

(e)    Except as set forth in the Operating Agreement, the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby will not result in a breach of any terms of, or constitute a default under, any agreement or instrument to which the Seller is a party or by which the Seller is bound;

(f)    Except as set forth in the Operating Agreement, the execution, delivery and performance of this Agreement by the Seller will not result in the imposition of any lien, encumbrance, restriction or defect upon the Purchased Interest; and

(g)    Except as set forth in the Operating Agreement, the Seller has not entered into any contracts to sell all or any part of the Purchased Interest nor granted any option or other right to purchase all or any part of the Purchased Interest other than to the Purchaser or its affiliate.

2.02  <u>Representation and Warranties of the Purchaser</u>. The Purchaser represents and warrants to the Seller that:

(a)    No event of Bankruptcy has occurred with respect to the Purchaser;

(b)    No broker or other such person has taken any action with the Purchaser's authority which would give rise to any claim against either the Seller or the Purchaser for a brokerage commission, finder's fee, or like payment in connection with the transfer of the Purchased Interest;

(c)    The Purchaser has been duly organized and is validly existing and in good standing under the laws of the Stare of Indiana, and has all necessary power and authority to enter into this Agreement and perform its obligations hereunder;

(d)    This Agreement constitutes a valid and binding obligation of the Purchaser enforceable against the Purchaser in accordance with its terms;

(e)    The Purchaser has all necessary financial means to consummate the purchase of the Purchased Interest as set forth under this Agreement; and

(f)    The execution and delivery of this Agreement and consummation of the transactions contemplated hereby will not result in a breach of any terms of, or constitute a default under, any agreement or instrument to which the Purchaser is a party or by which the Purchaser is bound.

2.03  <u>Survival of Representations</u>. The representations and warranties of the Seller and the Purchaser shall be deemed remade as of the Closing and the representations and warranties of the Purchaser will survive after the Closing, for the longest period of time and to the maximum extent permitted under applicable law.

ARTICLE III.
**ADDITIONAL COVENANTS AND AGREEMENTS**

3.01  <u>Seller's Actions Prior to Closing</u>. From the date of this Agreement's execution until the Closing Date, the Seller shall: (i) make no significant changes in Chicago South Loop Hotel, LLC operating agreement.

3.02 <u>Consents and Other Actions</u>. The Seller and the Purchaser shall cooperate and respectively use all reasonable efforts to promptly make any filings, to give any notices, to obtain any consents, approvals or authorizations, and to take such other actions, as may be necessary or desirable for the consummation of the transactions contemplated thereby.

3.03 <u>Waiver of Rights of First Refusal</u>.   At Closing, all rights of first refusal concerning the membership interest being sold and purchased hereunder (whether contained in the Operating Agreement or in any other document) are waived by the parties hereto and by Vickie White.

3.04 <u>Examination of Books</u>.  Purchaser or his agents and accountants shall have full and complete access to the books, records, and accounts of Seller relating to Chicago South Loop Hotel, LLC and may take excerpts therefrom as they may deem necessary or desirable at any time after the execution of this Agreement.

3.05 <u>Resignation of Vickie White as Managers</u>. Effective upon the Closing, the Seller will be deemed to have resigned as managers of  Chicago South Loop Hotel , LLC (see Certificates of Resignation as manager in <u>Exhibit 1.3</u>).

ARTICLE IV.<br>
<strong>CONDITIONS TO CLOSING</strong>

4.01 <u>Conditions to Obligations of Purchaser</u>.  The obligations of the Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction of each of the following conditions, any of which may be waived in whole or in part, in writing, by the Purchaser:

(a)     The representations and warranties of the Seller contained in this Agreement shall be true and correct in all material respects when made and as of the Closing Date, and the covenants and agreements of the Seller contained herein to be performed on or prior to the Closing Date shall have been performed in all material respects.

(b)     The Seller shall have executed and delivered the Assignment to the Purchaser as contemplated in this Agreement.

(c)     Any and all other conditions contained in any of the Related Agreements shall be satisfied.

4.02 <u>Conditions to Obligations of Seller</u>.   The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction of each of the following conditions, any of which may be waived in whole or in part, in writing, by the Seller:

(a)     The representations and warranties of the Purchaser contained in this Agreement shall be true and correct in all material respects when made and as of the Closing Date, and the covenants and agreements of the Purchaser contained herein to be performed on or prior to the Closing Date shall have been performed in all material respects.

(b)     The Purchaser shall have executed and delivered all of the Related Agreements to which it is a party, and  Vickie White  shall have executed and delivered all of the Related Agreements to which she  is a party. For avoidance of doubt, this Agreement is *void ab initio* if the Purchaser and Vickie White fail to execute and deliver all of the Related Agreements.

(c)     Any and all other conditions to Closing contained in any of the other Related Agreements must have been satisfied or waived.

ARTICLE V.<br>
<strong>MISCELLANEOUS AND GENERAL</strong>

5.01 <u>Miscellaneous</u>. For avoidance of doubt, all of the provisions contained throughout Article 5 of the Master Agreement apply entirely, and have full legal effect with respect to, this Agreement.

5.02 <u>JURY TRIAL WAIVER</u>. EACH PARTY VOLUNTARILY AND IRREVOCABLY WAIVES, AND COVENANTS NOT TO ASSERT, ANY RIGHT TO TRIAL BY JURY IN ANY CLAIM, SUIT, OR OTHER PROCEEDING ARISING FROM, OR IN CONNECTION WITH, THIS AGREEMENT (REGARDLESS OF WHETHER THE PROCEEDING IS BASED IN CONTRACT, TORT, OR OTHERWISE). A PARTY'S FILING OF AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH A COURT WILL BE SUFFICIENT TO EVIDENCE THIS JURY TRIAL WAIVER'S EXISTENCE. EACH PARTY ACKNOWLEDGES HAVING RECEIVED THE ADVICE AND CARE OF INDEPENDENT, COMPETENT LEGAL COUNSEL BEFORE WILLINGLY CONSENTING TO THIS JURY TRIAL WAIVER.

5.03 <u>LEGAL COUNSEL</u>. EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS READ AND UNDERSTOOD THE ENTIRE AGREEMENT AND HAS THOROUGHLY EVALUATED IT WITH AN INDEPENDENT, COMPETENT ATTORNEY PRIOR TO SIGNING. FURTHERMORE, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE IS NOT UNDER ANY DURESS, COERCION, OR UNDUE INFLUENCE. FINALLY, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS ACTUAL AUTHORITY TO SIGN IT.

*[Signature Page follows; remainder of this page intentionally left blank]*

### Signature Page
### of
### Membership Interest Sale and Purchase Agreement
### Chicago South Loop Hotel, LLC

**IN WITNESS WHEREOF,** each party, acting independently or through a duly authorized officer or representative, intending to be legally bound, has executed and delivered this Agreement as of the day and year written below.

**Date:** _27_ day of _February_, 20 _23_

**By:**    Vickie White (57.5%)

_Signature_

**By:**    Chicago South Loop Hotel Holdings,  LLC

_As the manager_

_Signature_

12

## EXHIBIT 1.2

### ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED,** Vickie White hereby sells, assigns, and transfers unto Chicago South Loop Hotel, Holdings  LLC his fifty seven and a ½ percent (57.5%) membership interest in Chicago South Loop Hotel, LLC. This transaction shall be promptly recorded in the books of Chicago South Loop Hotel, LLC.

Date: _27_ day of _February_, 20 _23_

Signed by: _Vickie White_

Vickie White

**EXHIBIT 1.3**

**CERTIFICATE OF RESIGNATION AS MANAGER (Vickie White)**

As of the date written below, Vickie White , by executing this Certificate, hereby resigns as manager of Chicago South Loop Hotel , LLC.

Date: _27 day of February 20 23_ .

Signed by: _____
Vickie White

**EXHIBIT 1.4:          EQUITY PLEDGE AGREEMENT**
**Chicago South Loop Hotel Holdings, LLC**

# Equity Pledge Agreement
# Chicago South Loop Hotel Holdings, LLC

**THIS EQUITY PLEDGE AGREEMENT** (the *"Agreement"*) is made by and between  Chicago South Loop Hotel Holdings, LLC as pledgor (the *"Pledgor"*) and  Vickie White as pledgee (the *"Pledgee"*).

## RECITALS:

**WHEREAS,** pursuant to a Membership Interest Sale and Purchase Agreement entered into with the Vickie White of even date herewith, the Pledgor will, at Closing, be the owner of equity of  Chicago South Loop Hotel, LLC limited liability company, comprised of fifty seven and ½  percent (57.5%) of the membership interest in Chicago South Loop Hotels, LLC (all such equity being herein called the *"Pledged Equity"*); and

**WHEREAS,** a condition of  Vickie White entering into the above referenced Membership Interest Sale and Purchase Agreement was  Vickie Whites acceptance of a Promissory Note (the *"Note"* or the *"New Note"*) for the repayment and fulfillment of debt obligations owed from  Chicago South Loop Hotel Holdings LLC (the *"Borrower"*) to  Vickie White , and Pledgor's and Chicago South Loop Hotel Holdings, LLC guarantee of same, and that, in addition to other collateral secured under other Related Agreements of even date herewith, this Equity Pledge Agreement become effective to collateralize Pledgor's membership interest in Chicago South Loop Hotel Holdings  LLC.

**NOW, THEREFORE,** in consideration of the premises and of the mutual covenants herein contained, and other good and valuable consideration the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### SECTION 1.    PLEDGE.

As collateral security for any payments due under the Note and all other amounts payable by Pledgor to Pledgee thereunder, the Pledgor hereby pledges, hypothecates, assigns, transfers, sets over unto the Pledgee and hereby grants to the Pledgee a security interest in, the following:  except as otherwise provided in Sections 4(a)(i) and 4(a)(ii) herein, the Pledged Equity, the certificates and book entries representing the Pledged Equity, and all cash, securities, dividends/distributions and other property at any time and from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Equity (all such Pledged Equity, certificates, cash, securities, interest, dividends/distributions and other property being herein collectively called the *"Pledged Equity Collateral"*),

TO HAVE AND TO HOLD the Pledged Equity Collateral, as Custodian, subject, however, to the terms, covenants and conditions hereinafter set forth.

### SECTION 2.    REPRESENTATIONS AND WARRANTIES.

The Pledgor hereby represents and warrants as follows:

(a)    The delivery and performance by Pledgor of this Equity Pledge Agreement has been duly executed, and does not and will not (i) violate any provision of any law, rule, regulation,  injunction, decree, determination or award presently in effect having applicability to the Pledgor or of the agreement governing and creating the Pledgor, (ii) result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease or instrument to which the Pledgor is a party or by which it or its properties may be bound or affected, or (iii) result in, or require, the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance of any nature (other than this Equity Pledge Agreement) upon or with respect to any of the properties now owned or hereafter acquired of the Pledgor; and the Pledgor is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award of any such indenture, agreement, lease or instrument.

16

(b)    This Equity Pledge Agreement constitutes a legal, valid and binding obligation of the Pledgor enforceable against the Pledgor and all third parties in accordance with their respective terms.

(c)    Except as otherwise set forth herein, the Pledgor is the legal and equitable owner of the Pledged Equity free and clear of all liens, security interests, charges and encumbrances of every kind and nature; the Pledged Equity are duly authorized, validly issued, fully paid and non-assessable; and the Pledgor has legal title, and good, right and lawful authority, to pledge, assign and deliver the Pledged Equity in the manner hereby due or contemplated.

(d)    Except as otherwise set forth herein, when the other Pledged Equity Collateral is pledged hereunder the Pledgor will be the legal and equitable owner of such Pledged Equity Collateral free and clear of all liens, security interests, charges and encumbrances of every kind and nature; all of the membership interest comprising such Pledged Equity Collateral will have been duly authorized, validly issued and be fully paid and non-assessable; all indebtedness comprising such Pledged Equity Collateral will have been duly authorized and duly authenticated and/or issued and delivered and be fully paid for and not in default; and the Pledgor will have legal title, and good and lawful authority, to pledge, assign and deliver such Pledged Equity Collateral in the manner hereby contemplated.

(e)    Except as otherwise set forth herein, the Pledged Equity Collateral is wholly comprised of unrestricted assets of the Pledgor (securities which are or could become Pledged Equity Collateral and which fall within the description of this Section 2(e) are herein sometimes called **"Permitted Collateral"**).

(f)    This Equity Pledge Agreement creates a valid and perfected first priority security interest in and pledge of the Pledged Equity Collateral enforceable against all third parties securing the payment under the Note and all action required to perfect fully the security interest so constituted has been taken and completed.

### SECTION 3.    APPOINTMENT OF CUSTODIAN, HOLD HARMLESS OF CUSTODIAN, NOTICE TO CUSTODIAN.

_____ is hereby appointed the custodian (the **"Custodian"**) for retaining physical possession of certificates and instruments representing or evidencing the Pledged Equity Collateral (segregated from all other property of the Pledgor) in accordance with the provisions of this Equity Pledge Agreement.  The Pledgor shall make an appropriate entry in  Chicago South Loop Hotel Holdings  LLC's books to evidence the Pledgee's security interest in the Pledged Equity Collateral, and the Pledgor shall be responsible for carrying out any and all other acts required under applicable law with respect to evidencing or notating the security interest in the Pledged Equity Collateral. The Custodian's duties with respect to this Equity Pledge Agreement are only those set forth in this Equity Pledge Agreement.  Custodian shall not transfer possession of the membership interest without the joint direction of the parties or a court order. The Custodian shall incur no liability under or in connection with this Equity Pledge Agreement or the transactions contemplated hereby, and the Pledgee, Pledgor, and Borrower (for themselves and for their respective agents, representatives, members, managers, officers, heirs, successors, and permitted assigns) agree to indemnify, fund but not control the legal defense of, and hold Custodian harmless from and in respect of any and all Claims, and for any act or omission of Custodian, in any way connected to this Equity Pledge Agreement or the obligations or transactions arising hereunder, and the Custodian may otherwise continue to represent the Pledgee with respect this Equity Pledge Agreement and other Related Agreements during the term of this Equity Pledge Agreement. The provisions of the preceding sentence shall apply to Custodian and to any agent or sub-agent of Custodian. Any notices sent to Custodian hereunder must be sent in writing, by certified or registered mail, return receipt request, postage prepaid, , and will be deemed effective upon actual receipt thereof by Custodian.

### SECTION 4.    VOTING RIGHTS; DIVIDENDS/DISTRIBUTIONS, ETC.

(a)    So long as no Event of Default shall have occurred and be continuing:

(i)     The Pledgor shall be entitled to exercise any and all voting and/or consensual rights and powers relating or pertaining to the Pledged Equity Collateral or any part thereof for any purposes not inconsistent with the terms of this Equity Pledge Agreement.

(ii)     The Pledgor shall be entitled to receive and retain any and all cash dividends/distributions and interest payable on the Pledged Equity Collateral, but any and all equity and/or liquidating dividends/distributions, distributions in property, returns of capital or other distributions made on or in respect of the Pledged Equity Collateral, whether resulting from a subdivision, combination or reclassification of the outstanding equity of any issuer thereof or received in exchange for Pledged Equity Collateral or any part thereof or as a result of any merger, consolidation, acquisition or other exchange of assets to which any such issuer may be a part or otherwise, and any and all cash and other property received in payment of the principal of or in redemption of or in exchange for any Pledged Equity Collateral (whether at maturity, upon call for redemption or otherwise), shall be and become part of the collateral pledged hereunder and, if received by the Pledgor, shall forthwith be delivered to the Pledgee or its designated agent (accompanied by proper instruments of assignment and/or equity and/or bond powers executed by the Pledgor in accordance with the Pledgee's instructions) to be held subject to the terms of this Equity Pledge Agreement.

(iii)     The Pledgee shall execute and deliver (or cause to be executed and delivered) to the Pledgor all such proxies, powers of attorney, dividend/distribution orders, interest coupons and other instruments as the Pledgor may request for the purpose of enabling the Pledgor to exercise the voting and/or consensual rights and powers which it is entitled to exercise pursuant to subparagraph (i) above and/or to receive the dividends/distributions and/or interest payments which it is authorized to receive and retain pursuant to subparagraph (ii) above.

(b)     Upon the occurrence and during the continuance of an Event of Default or any event which with the giving of notice or the lapse of time or both would constitute an Event of Default, all rights of the Pledgor to exercise the voting and/or consensual rights and powers which it is entitled to exercise pursuant to Section 4(a)(i) hereof and/or to receive the dividends/distributions and interest payments which it is authorized to receive and retain pursuant to Section 4(a)(ii) hereof, shall cease, and all such rights shall thereupon become vested in the Pledgee which shall have the sole and exclusive right and authority to exercise such voting and/or consensual rights and powers and/or to receive and retain the dividends/distributions and/or interest payments which the Pledgor would otherwise be authorized to retain pursuant to Section 4(a)(ii) hereof. Any and all money and other property paid over to or received by the Pledgee pursuant to the provisions of this subsection (b) shall be retained by the Pledgee as additional collateral hereunder and be applied in accordance with the provisions hereof.

### SECTION 5.   EVENTS OF DEFAULT.

Each of the following events shall constitute an event of default hereunder (**"Default"** or **"Event of Default"**):

(a)     The Borrower shall fail to pay any payment under the Note when due and after the expiration of any applicable cure period.

(b)     The Pledgor shall fail to perform or observe any other term, covenant or agreement contained in (i) this Equity Pledge Agreement, or (ii) any of the Related Agreements.

(c) Chicago South Loop Hotel Holdings, LLC shall fail to perform or observe any other term, covenant or agreement contained in any of the Related Agreements.

(d)     The Pledgor or Borrower shall be adjudicated as bankrupt or insolvent, or admit in writing its inability to pay its debts as they mature, or make an assignment for the benefit of creditors; or the Pledgor or Borrower shall apply for or consent to the appointment of any receiver, trustee, or similar officer for it or for all or any substantial part of its property; or such receiver, trustee or similar officer shall be appointed without the application or consent of the Pledgor or

Borrower, as the case may be, and such appointment shall continue undischarged for a period of thirty (30) calendar days; or the Pledgor or Borrower shall institute (by petition, application, answer, consent or otherwise) any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceeding relating to it under the laws of any jurisdiction; or any such proceeding shall be instituted (by petition, application or otherwise) against the Pledgor or Borrower and shall remain undismissed for a period of thirty (30) calendar days; or any judgment, writ, warrant of attachment or execution or similar process shall be issued or levied against a substantial part of the property of the Pledgor or Borrower and such judgment, writ or similar process shall not be released, vacated or fully bonded within thirty (30) calendar days after its issue.

### SECTION 6.   REMEDIES UPON DEFAULT.

If an Event of Default shall have occurred and be continuing, then, in addition to exercising any rights and remedies of a secured party under applicable law in the State of Indiana, and in addition to exercising any other rights and remedies available under the Related Agreements, the Pledgee may:

(a)    Collect any and all dividends/distributions payable on the Pledged Equity Collateral;

(b)    Apply the cash (if any) received from dividends/distributions payable on the Pledged Equity Collateral, first, to the payment of interest accrued and unpaid under the Note up to and including the date of such application, second, to the payment or prepayment of principal under the Note, and third, to the payment of all other amounts then owing to the Pledgee, including but not limited to all amounts owing to the Pledgee pursuant to any of the Related Agreements; and

(c)    If there shall be no such cash or the cash so applied shall be insufficient to pay all such indebtedness in full, sell the Pledged Equity Collateral, or any part thereof, at any public or private sale or at any broker's board or on any securities exchange, for cash, upon credit or for future delivery, as the Pledgee shall deem appropriate. The Pledgee shall be authorized at any such sale to restrict the prospective bidders or purchasers to persons, including the Pledgor, who will represent and agree that they are purchasing the Pledged Equity Collateral for their own account for investment and not with a view to the distribution or sale thereof, and upon consummation of any such sale, the Pledgee shall have the right to assign and transfer and deliver to the purchaser or purchasers thereof the Pledged Equity Collateral so sold. Each such purchaser at any such sale shall hold the property sold absolutely, free from any claim or right on the part of the Pledgor, and the Pledgor hereby voluntarily and irrevocably WAIVES (to the maximum extent permitted under applicable law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule or law or statute now existing or hereafter enacted. To the extent that notice of sale shall be required to be given by law, the Pledgee shall give the Pledgor and the Custodian at least ten (10) calendar days written notice of the Pledgee's intention to make any such public or private sale or sales at any broker's board or on any such securities exchange. Such notice, in case of public sale, shall state the time and place fixed for such sale, and, in the case of sale at a broker's board or exchange at which such sale is to be made and the day on which the Pledged Equity Collateral, or portion thereof, will first be offered for sale at such board or exchange. Any such public sale shall be held at such time or times within ordinary business hours and at such place or places, as the Pledgee may fix in the notice for such sale. At any such sale, the Pledged Equity Collateral, or portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as the Pledgee may (in its sole and absolute discretion) determine and the Pledgee may bid (which bid may be in whole or in part, in the form of cancellation of indebtedness) for and purchase for the account of the Pledgee the whole or any part of the Pledged Equity Collateral. The Pledgee shall not be obligated to make any sale of Pledged Equity Collateral if it shall determine not to do so, regardless of the fact that notice of sale of Pledged Equity Collateral may have been given. The Pledgee may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. In case sale of all or any part of the Pledged Equity Collateral is made on credit or for future delivery, the Pledged Equity Collateral so sold may be retained by the Pledgee until the sale price is paid by the purchaser or purchasers thereof, but the Pledgee shall not incur any liability in case any such purchaser or purchasers shall

fail to take up and pay for the Pledged Equity Collateral so sold and, in case of any such failure, such Pledged Equity Collateral may be sold again upon like notice. As an alternative to exercising the power of sale herein conferred upon it, the Pledgee may proceed by a suit or suits at law or in equity to foreclose this Equity Pledge Agreement and to sell the Pledged Equity Collateral, or any portion thereof, pursuant to a judgment or decree of a court or courts of competent jurisdiction. Notwithstanding anything to the contrary, the Pledgee may also elect to purchase the Pledged Equity for the amount the Pledgor originally purchased such Pledged Equity from the Pledgee under the terms of the Membership Interest Sale and Purchase Agreement between the Pledgor and Pledgee.

(d)     Exercise any and all other rights and remedies howsoever available or arising, whether under any of the Related Agreements, any other agreement, statutory law, common law, or otherwise.

### SECTION 7.   APPLICATION OF PROCEEDS OF SALE.

The proceeds of sale of Pledged Equity Collateral sold pursuant to Section 6 hereof shall be applied by the Pledgee as follows:

(a)     First, to the payment of the costs and expenses of such sale, including the out-of-pocket expenses of the Pledgee and the reasonable fees and out-of-pocket expenses of counsel employed in connection therewith, and to the payment of all advances made by the Pledgee for the account of the Pledgor pursuant solely to this Equity Pledge Agreement and the payment of all costs and expenses incurred by the Pledgee in connection with the administration and enforcement of this Equity Pledge Agreement, to the extent that such advances, costs and expenses shall not have been reimbursed to the Pledgee;

(b)     Second, to the payment or prepayment in full of all indebtedness referred to in paragraph (b) of Section 6 hereof, in the order of priority and in the manner therein specified; and

(c)     Third, the balance (if any) of such proceeds shall be paid to the Pledgor, its successors and assigns, or as a court of competent jurisdiction may direct.

### SECTION 8.   CONDITIONS OF EFFECTIVENESS.

This Equity Pledge Agreement shall become effective at Closing and when the Pledgee shall have received each of the following, in form and substance satisfactory to the Pledgee:

(a)     An executed copy of this Equity Pledge Agreement.

(b)     Executed copies of the Related Agreements.

### SECTION 9.   REPORTING REQUIREMENTS.

So long as the Note or any other obligation of the Pledgor to the Pledgee shall remain unpaid or unfulfilled, the Pledgor will, unless the Pledgee shall otherwise consent in writing, produce and furnish to the Pledgee:

(a)     As soon as possible, and in any event, within five (5) calendar days after the occurrence of each Event of Default, or each event which, with the giving of notice or lapse of time or both, would constitute an Event of Default, continuing on the date of such statement, a statement setting forth details of such Event of Default or event and the action which the Pledgor proposes to take with respect thereto;

(b)     As soon as possible and in any event upon written request of the Pledgee, a balance sheet of all funds of Borrower as of the end of such quarter and any other financial statements of the Borrower requested by Pledgee; and

(c)     Such other Information as the Pledgee may reasonably request.

### SECTION 10.  TERMINATION.

This Equity Pledge Agreement shall terminate upon such time that all amounts due and owing under the Note, including without limitation accrued interest, and any amounts that may become due and owing under any of the other Related Agreements, have been paid in full.

### SECTION 11.  MISCELLANEOUS.

For avoidance of doubt, all of the provisions contained throughout Article 5 of the Master Agreement apply entirely, and have full legal effect with respect to, this Equity Pledge Agreement.

### SECTION 12. JURY TRIAL WAIVER.

EACH PARTY VOLUNTARILY AND IRREVOCABLY WAIVES, AND COVENANTS NOT TO ASSERT, ANY RIGHT TO TRIAL BY JURY IN ANY CLAIM, SUIT, OR OTHER PROCEEDING ARISING FROM, OR IN CONNECTION WITH, THIS AGREEMENT (REGARDLESS OF WHETHER THE PROCEEDING IS BASED IN CONTRACT, TORT, OR OTHERWISE). A PARTY'S FILING OF AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH A COURT WILL BE SUFFICIENT TO EVIDENCE THIS JURY TRIAL WAIVER'S EXISTENCE. EACH PARTY ACKNOWLEDGES HAVING RECEIVED THE ADVICE AND CARE OF INDEPENDENT, COMPETENT LEGAL COUNSEL BEFORE WILLINGLY CONSENTING TO THIS JURY TRIAL WAIVER.

### SECTION 13. LEGAL COUNSEL.

EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS READ AND UNDERSTOOD THE ENTIRE AGREEMENT AND HAS THOROUGHLY EVALUATED IT WITH AN INDEPENDENT, COMPETENT ATTORNEY PRIOR TO SIGNING. FURTHERMORE, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE IS NOT UNDER ANY DURESS, COERCION, OR UNDUE INFLUENCE. FINALLY, EACH PERSON SIGNING THIS AGREEMENT AFFIRMS THAT HE HAS ACTUAL AUTHORITY TO SIGN IT.

*[Signature Page follows; remainder of this page intentionally left blank]*

### Signature Page
### of
### Equity Pledge Agreement
### Chicago South Loop Hotel Holdings LLC

**IN WITNESS WHEREOF,** each party, acting independently or through a duly authorized officer or representative, intending to be legally bound, has executed and delivered this Equity Pledge Agreement as of the day and year written below.

**Date:** _27_ day of _February_ , 20_23_

**By:**   Chicago South Loop Hotel Holdings, LLC (Pledgor)

_____
Signature [ Jaroslaw Kurzac member / manager ]

**Acknowledged and agreed to by:**   Vickie White

Vickie White  V.W.

22

# EXHIBIT M

**RESOLUTION AND WRITTEN CONSENT**
**OF MEMBERS OF CHICAGO SOUTH LOOP HOTEL, LLC**

THIS WRITTEN CONSENT AND RESOLUTION OF THE MEMBERS OF CHICAGO SOUTH LOOP HOTEL, LLC dated as of February 27th, 2023 (this "Resolution") is entered into pursuant to that certain operating agreement of the Chicago South Loop Hotel LLC (the "Operating Agreement"), a manager-managed limited liability company organized under the laws of the State of Illinois (the "Company"). In accordance with Articles 9.2, 9.3 and 9.4, and 805 ILCS 180/15-1(e), the undersigned, constituting the Members of the Company owning greater than 50% of the total percentage interests of all members of the Company, do hereby resolve and enter into this Written Consent and Resolution of Members in accordance with the Articles electing Todd Hansen as a Manager of the Company in lieu of formal meeting:

WHEREAS, Vickie White is the Manager of the Company;

WHEREAS, Vickie White owns 1.5% of the membership interest of the Company, Louis Dodd owns 42.5% of the membership interest of the Company and Chicago South Loop Hotel Holdings, LLC owns 56% of the membership interest of the Company;

WHEREAS, the Articles provide for a second Manager for the Company;

NOW, THEREFORE. the undersigned hereby agree to as follows:

1. Todd Hansen is elected to fill the Manager position for the Company;

IN WITNESS WHEREOF, Members of the Company owning greater than 50% of the total percentage interests of all members of the Company have executed this Resolution and Written Consent of the Majority of the Members of the Company as of February 27th 2023 electing Todd Hansen as a Manager of the Company.


MEMBER:                                    MEMBER:


_Vickie White_                             [NAME]
Vickie White                               By: _____
                                               Todd Hansen
                                               Its Manager