# EXHIBIT N

FILED DATE: 6/13/2023 2:06 PM  2019CH10966

FILED
6/13/2023 2:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10966
Calendar, 11
23124194

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

DR. VICKIE WHITE, individually and
derivatively on behalf of CHICAGO SOUTH
LOOP HOTEL, LLC,

    *Plaintiff,*

    **v.**

VIVIAN MURPHY; ASTRID COOPER; and
CHICAGO SOUTH LOOP HOTEL, LLC, a
nominal Defendant,

    *Defendants.*

VIVIAN MURPHY; ASTRID COOPER; and
CHICAGO SOUTH LOOP HOTEL, LLC, a
nominal Defendant,

    *Defendants/Counter-Plaintiffs/Third-
Party Plaintiffs,*

    **v.**

DR. VICKIE WHITE, individually and
derivatively on behalf of CHICAGO SOUTH
LOOP HOTEL, LLC,

    *Plaintiff/Counter-Defendant.*

    **AND**

LOUIS DODD; SECTOR CORPORATION,
an Illinois corporation; PREMIER
HOSPITALITY, LLC, an Illinois limited
liability company; and PARIS FOUNTIS,

    *Third-Party Defendants.*

No. 19 CH 10966

## **MOTION TO ENFORCE SETTLEMENT AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

Now come Defendants/Counter-Plaintiffs Vivian Murphy and Astrid Cooper, by and through their attorneys, Howard & Howard Attorneys PLLC, and respectfully move this Court to enforce the settlement agreement entered into by and between Defendants and Plaintiff/Counter-Defendant Vickie White, and in support of their motion state as follows:

1.      Plaintiff Vickie White ("White") was one of two 42.5% members of Chicago South Loop Hotel, LLC ("CSLH").  Defendants/Counter-Plaintiffs Vivian Murphy and Astrid Cooper (the "Minority Owners") owned 10% and 5%, respectively.  CSLH owned the Chicago South Loop Hotel (the "Hotel").

2.      On September 23, 2019, White filed her Complaint in this matter against the Minority Owners, who then filed their Counterclaim on November 20, 2019.  The gist of both the Complaint and the Counterclaim was that both White and the Minority Owners were accusing each other of breaches of fiduciary duty,  and each side sought control of the Hotel.

3.      On December 30, 2020, the parties entered into a settlement agreement, titled CSLH Membership Interest Purchase Agreement (the "Agreement"), whereby the Minority Owners sold the membership interests to White.  A true and accurate copy of the Agreement is attached hereto as Exhibit A, and incorporated herein.

4.      Pursuant to the Agreement, the Minority Owners transferred their membership interest to White.

5.      Pursuant to the Agreement, White agreed to collectively pay the Minority Owners $3,024,300 (the "Purchase Price"), as follows:

   a.   10% ($302,430) in conjunction with the Agreement.

   b.   10% ($302,430), with interest at 5%, on December 30, 2021 (the "December 2021 Payment").

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

c.  5% ($151,215), with interest at 5%, on December 30, 2022(the "<u>December 2022 Payment</u>").

d.  75% ($2,268,225), with interest at 5%, payable in 24 monthly installments (the "<u>Monthly Payments</u>"), followed by a balloon payment of the balance (the "<u>Balloon Payment</u>").

6.      The obligation to make the Monthly Payments and the Balloon Payment were further evidenced by Promissory Notes dated December 31, 2020 (the "<u>Promissory Notes</u>"), copies of which are attached hereto as <u>Exhibits B and C</u>.  Pursuant to the Promissory Notes, White granted to the Minority Owners a first priority security interest in the membership interests being sold to White.

7.      White paid 10% of the Purchase Price in conjunction with the execution of the Agreement.

8.      On January 20, 2021, the Complaint and Counterclaim were dismissed, with prejudice, with the Court retaining jurisdiction to enforce the Agreement.  A true and accurate copy of the January 202, 2021 Order is attached hereto as <u>Exhibit D</u>.

9.      As of December 30, 2021, White was current in paying the Monthly Payments. White then failed to pay the December 2021 Payment.  The parties entered into the CSLH Forbearance Agreement, whereby White agreed to pay the December 2021 Payment, plus accrued interest, as follows: (a) $270,000 in three equal installments of $90,000, and (b) the balance, along with Fees and Expenses on June 30, 2022.  White paid the December 2021 Payment and all other amounts due under the CSLH Forbearance Agreement as of December 31, 2022.

10.     White failed to pay the  December 2022 Payment after repeated demands from the Minority Owners.

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

11.     White paid all of the Monthly Payments as of December 1, 2022, but failed to pay the Monthly Payments due on January 1 and February 1, 2023, being the 23rd and final Monthly Payments after repeated demands from the Minority Owners.

12.     White defaulted in her obligation to make the Balloon Payment, after repeated demands by the Minority Owners.

13.     In early January 2023,  the Minority Owners learned that White had sold 100% of the membership interests in CSLH to third party, including the 15% membership interest on which the Minority Owners held a security interest.

14.     Pursuant to Paragraph 4 of the Promissory Notes, in the event White defaulted under any payment, the interest rate would be increased to 9% per year on the unpaid balance to be computed from December 31, 2020.

15.     Pursuant to Paragraph 8 of the Promissory Notes, White agreed to pay the Minority Owners' costs of collection, including attorney's fees.

16.     The amount due to Vivian Murphy, including interest as of June 30, 2023, is **$1,777,897.25**, calculated as shown on Exhibit E to this motion, consisting of the following three amounts:

    a.   December 2022 Payment  = $123,490.

    b.   January/ February 2023 Monthly Payments =  $16,831.57.

    c.   Balloon Payment  = $1,637,575.68.

17.     The amount due to Astrid Cooper, including interest as of June 30, 2023, is **$888,948.63**, calculated as shown on Exhibit A to this motion, consisting of the following three amounts:

    a.   December 2022 Payment  = $61,745.

FILED DATE: 6/13/2023 2:06 PM 2019CH10966

     b.   January/ February 2023 Monthly Payments = $8,415.79.

     c.   Balloon Payment = $818,787.84.

18.    The Minority Owners did all that was required of them under the Agreement and the Promissory Notes.

WHEREFORE, Defendants/Counter-Plaintiffs Vivian Murphy and Astrid Cooper respectfully request that this Court enter judgment in their favor and against Plaintiff/Counter-Defendant Vickie White, as follows

A.  In favor of Vivian Murphy in the amount of $1,777,897.25, plus per diem interest from June 30, 2023, plus her attorneys fees and costs of suit.

B.  In favor of Astrid Cooper in the amount of $888,948.63, plus per diem interest from June 30, 2023, plus her attorneys fees and costs of suit.

VIVIAN MURPHY, ASTRID COOPER, and CHICAGO SOUTH LOOP HOTEL, LLC, a nominal Defendant.

/s/ Scott M. Levin
One of their attorneys

Scott M. Levin
Howard & Howard Attorneys PLLC - #46359
200 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 456-3418
*slevin@howardandhoward.com*

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

## CSLH MEMBERSHIP INTEREST PURCHASE AGREEMENT

This CSLH Membership Interest Purchase Agreement (this **"Agreement"**) is dated December 30, 2020, by and among Vivian Murphy (**"Vivian"**), Astrid Cooper (**"Astrid"** and each of Astrid and Vivian, a **"Seller"** and collectively, the **"Sellers"**), and Vickie White (the **"Purchaser"**).

WHEREAS, Vivian owns 10.0% of the membership interests (the **"Vivian Interest"**) of the Chicago South Loop Hotel, LLC, an Illinois limited liability company (the **"Company"**) and Astrid owns 5.0% of the membership interests (the **"Astrid Interest"** and, together with the Vivian Interest, the **"Applicable Interests"**) of the Company; and

WHEREAS, Sellers desire to sell, and Purchaser desires to purchase, the Applicable Interests, in accordance with the terms and conditions of this Agreement.

WHEREAS, Purchaser has previously deposited $302,430, representing 10% of the Purchase Price, into escrow in the Howard & Howard Client Trust Fund (the **"Escrow Fund"**).

NOW THEREFORE, in consideration of the mutual promises, covenants and conditions hereinafter set forth, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree:

1.    Purchase and Sale.

1.1    Agreement to Purchase and Sell.  Subject to the terms and conditions set forth herein, at the Closing (as defined herein), each Seller will sell to the Purchaser, and the Purchaser will purchase from each Seller, all of such Seller's right, title and interest in and to the Applicable Interests, free and clear of all liens, encumbrances, security interests and other adverse claims, whether arising by agreement, operation of law or otherwise (**"Claims"**), except for rights retained pursuant to the Pledge and Security Agreement.

1.2    Purchase Price.  The aggregate purchase price for the Applicable Interests is Three Million Twenty-four Thousand Three Hundred Dollars ($3,024,300) (the **"Purchase Price"**), which shall be payable to Sellers as follows:

a.    $2,016,200 to Vivian and $1,008,100 to Astrid, with all payments by electronic transfer of funds to an account designated by each Seller.

b.    10% of the Purchase Price, being Three Hundred Two Thousand Four Hundred Thirty Dollars ($302,430), at the Closing, with $201,620 being paid to Vivian and $100,810 being paid to Astrid, which shall be paid in cash from the Escrow Fund.

c.    10% of the Purchase Price, being Three Hundred Two Thousand Four Hundred Thirty Dollars ($302,430) to be paid in cash at on December 30,  2021, with $201,620 being paid to Vivian and $100,810 being paid to Astrid, with interest at five (5%) percent from the date of this Agreement until the date of payment.

1

4842-7053-2820 (Version 1)

**EXHIBIT A**

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

d.  5% of the Purchase Price, One Hundred Fifty One Thousand Two Hundred Fifteen Dollars ($151,215) to be paid in cash at on December 30, 2022, with $100,810 being paid to Vivian and $50,405 being paid to Astrid, with interest at five (5%) percent from the date of this Agreement until the date of payment.

e.  75% of the Purchase Price, being Two Million Two Hundred Sixty Eight Thousand Two Hundred Twenty Dollars ($2,268,225), with $1,512,150 paid to Vivian and $756,075 paid to Astrid, to be paid by promissory notes, with interest at five (5%) percent, amortized over 30 years, payable in 24 monthly payments followed by a balloon payment, with the terms and in the form attached as **Exhibit A** to this Agreement, secured by the Applicable Interests with the terms and in the form the Pledge and Security Agreement attached as **Exhibit B** to this Agreement.

> 1.3   Closing.

a.  The closing of the sale of the Applicable Interests to the Purchaser (the **"Closing"**) shall take place remotely via the electronic exchange of documents and signatures on December 30, 2020 at such time and place as the parties hereto mutually agreed upon, orally or in writing. The parties hereto acknowledge and agree that all proceedings at the Closing and all documents to be executed and delivered by all parties at the Closing shall be deemed to have been taken and executed simultaneously.

b.  Vivian shall deliver to Purchaser at the Closing, executed copies of the following documents:

>  i.   this Agreement;
>
>  ii.  an assignment of the Vivian Interest;
>
>  iii. a written resignation whereby Vivian shall resign from all positions as an officer, manager, and employee (as applicable) of the Company.

c.  Astrid shall deliver to Purchaser at the Closing, executed copies of the following documents:

>  i.   this Agreement;
>
>  ii.  an assignment of the Astrid Interest;
>
>  iii. a written resignation whereby Astrid shall resign from all positions as an officer, manager, and employee (as applicable) of the Company

2.   Representations and Warranties of Sellers. Each Seller represents and warrants to the Purchaser with respect to her Applicable Interests as follows:

2

2.1   <u>Power; Authorization</u>.  Seller has all requisite power and authority to enter into this Agreement, to sell all of her right, title and interest in and to the Applicable Interests hereunder and to carry out and perform her obligations under the terms of this Agreement.  This Agreement is a valid and binding obligation of Seller, enforceable against her in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

2.2   <u>Compliance with other Instruments and Laws</u>.  Neither the execution and delivery of this Agreement by Seller nor the consummation by Seller of the transactions contemplated herein will conflict with or constitute a breach of, any of the terms, conditions or provisions of any statute or administrative regulation, or of any order, writ, injunction, judgment or decree of any Governmental Authority or of any arbitration award to which Seller is subject or by which Seller is bound.

2.3   <u>Title to Applicable Interests; Claims; etc.</u>  Sellers have record and beneficial ownership of their Applicable Interests, free and clear of any and Claims.  Upon delivery by Sellers of the Applicable Interests to the Purchaser as contemplated herein, the Purchaser shall acquire legal and beneficial ownership of, and shall have good title to, the Applicable Interests, free and clear of all Claims. The Applicable Interests constitute 100% of Sellers' ownership interests in the Company.

2.4   <u>Seller Investigation</u>.  Seller is fully familiar with the business, operations, financial condition and prospects of the Company and has made an independent evaluation that the Purchase Price is fair and equitable. Each Seller has had the opportunity to discuss this Agreement and the transactions set forth herein with such Seller's advisors as such Seller has deemed appropriate, including but not limited to counsel of such Seller's own choosing, and has had the opportunity to ask questions of the officers and managers of the Company, which questions have been answered to such Seller's satisfaction.

2.5   <u>No Conflicts.</u>  Except for any approval and/or consent of the members of the Company required under the Company's Operating Agreement, dated January 1, 2007 (as amended) and the Restrictive Stock Agreement Chicago South Loop Hotel dated March 14, 2007 ("**Member Consent**"), to the best of Seller's knowledge, the execution, delivery and performance by Seller of this Agreement and such other documents executed in connection herewith, and the consummation of the transactions contemplated hereby and thereby, do not and will not:

(a) require the consent, notice or other action by any Person under;
(b) conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under;
(c) result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel;

3

any contract or agreement to which Seller is a party or by which Seller is bound or to which any of her respective properties and assets are subject. To the best of Seller's knowledge, no consent, approval, declaration or filing with, or notice to, any Governmental Authority is required by or with respect to Seller in connection with the execution and delivery of this Agreement and such other documents executed in connection herewith and the consummation of the transactions contemplated hereby and thereby. For purposes of this Agreement, (i) **"Person"** shall mean an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity, and (ii) **"Governmental Authority"** shall mean any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority, or any arbitrator, court or tribunal of competent jurisdiction.

2.6   <u>Legal Proceedings.</u>   Except for the cases of *White v. Murphy*, No. 19 CH 10966, and *Murphy v. Chicago South Loop Hotel, LLC*, No. 19 CH 11737, both filed in the Circuit Court of Cook County and *Impact Networking, Inc. v. Chicago South Loop Hotel, LLC*, No. 20 L 6784 (the **"Company Litigation Matters"**), there are no Actions pending or threatened (a) against or by either Seller or any affiliate thereof relating to the Company; or (b) against or by either Seller or any affiliate thereof that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred, or circumstance exists that may give rise to, or serve as a basis for, any such Action. For purposes of the foregoing, **"Action"** shall mean any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

2.7   <u>Limited Warranties.</u>   Sellers make no other warranties, express or implied, including with respect to the Company, the Chicago South Loop Hotel or their interests in the Company.

3.   <u>Representations and Warranties of Purchaser.</u>   Purchaser hereby represents and warrants to Sellers, on behalf of herself only, as follows:

3.1   <u>Power; Authorization.</u>   The Purchaser has all requisite power and authority to enter into this Agreement and to carry out and perform her obligations under the terms of this Agreement. This Agreement is being duly executed and delivered by the Purchaser. All actions on the part of Purchaser necessary for the execution, performance and delivery by Purchaser of this Agreement have been taken and/or will have been taken prior to the Closing on this transaction, unless otherwise agreed to in writing by the parties. This Agreement is a valid and binding obligation of Purchaser, enforceable against her in accordance with its respective terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

3.2   <u>Purchaser Investigation.</u>   Purchaser is fully familiar with the business, operations, financial condition and prospects of the Company and has made an independent

4

FILED_DATE: 6/13/2023 2:06 PM   2019CH10966

evaluation that the Purchase Price is fair and equitable. Purchaser has had the opportunity to
discuss this Agreement and the transactions set forth herein with such Purchaser's advisors as
Purchaser has deemed appropriate, including but not limited to counsel of such Purchaser's own
choosing, and has had the opportunity to ask questions of the Sellers, which questions have been
answered to Purchaser's satisfaction. Purchaser acknowledges that except for their express
representations in this Agreement, Sellers make no other warranties, express or implied, including
with respect to the Company, the Chicago South Loop Hotel or their interests in the Company

      3.3    <u>Compliance with Other Instruments and Laws</u>. Neither the execution and
delivery of this Agreement by the Purchaser nor the consummation by the Purchaser of the
transactions contemplated  herein will conflict with or constitute  a breach of, any of the terms,
conditions or provisions of any statute or administrative regulation, or of any order, writ,
injunction, judgment or decree of any Governmental Authority or of any arbitration award to which
the Purchaser is subject or by which the Purchaser is bound.

      3.4    <u>No Conflicts.</u>  Except for the Member Consent and the Mortgage, Security
Agreement and Financing Statement between Chicago South Loop Hotel Owner, LLC and Morgan
Stanley Mortgage Capital Holdings LLC, dated October 24, 2013, the execution, delivery and
performance by the Purchaser of this Agreement and such other documents executed in connection
herewith, and the consummation of the transactions contemplated hereby and thereby, do not and
will not:

      (a) require the consent, notice or other action by any Person under;
      (b) conflict with, result in a violation or breach of, constitute a default or an event
      that, with or without notice or lapse of time or both, would constitute a default
      under;
      (c) result in the acceleration of or create in any party the right to accelerate,
      terminate, modify or cancel;

any contract or agreement to which the Purchaser is a party or by which the Purchaser is bound
or to which any of her respective properties and assets are subject. No consent, approval,
declaration or filing with, or notice to, any Governmental Authority is required by or with
respect to the Purchaser in connection with the execution and delivery of this Agreement and
such other documents executed in connection herewith and the consummation of the transactions
contemplated hereby and thereby.

      3.5   `<u>Legal Proceedings.</u>  Except for the Company Litigation Matters, there are
no Actions pending or threatened (a) against or by Purchaser or any affiliate thereof relating to the
Company; or (b) against or by Purchaser or any affiliate thereof that challenges or seeks to prevent,
enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred,
or circumstance exists that may give rise to, or serve as a basis for, any such Action.

      4.    <u>Release of Claims</u>.  Each party hereto, on behalf of herself and her respective
agents, heirs, executors, administrators, successors, representatives and assigns (each a "**Releasing
Party**"), hereby fully, unconditionally and irrevocably releases and discharges each other party
hereto, the Company and each of their respective affiliates' officers, directors, managers,

5

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

shareholders, members, partners, agents, attorneys, employees, executors, administrators, heirs, representatives, successors and assigns (**"Released Parties"**) from all claims, demands, agreements, contracts, covenants, torts, liens, actions, causes of action, contracts, debts, sums of money, commissions, damages, obligations, liabilities and rights whatsoever at law or in equity, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, suspected or unsuspected, now existing (including those matters arising out of or in connection with the Company Litigation Matter) or which may hereafter accrue, based upon any act or omission by any of the Released Parties occurring prior to the date of this Agreement related to claims arising out of or in connection with the Applicable Interests, each Seller's sale and the Purchaser's purchase of the Applicable Interests, any causes of action of any nature whatsoever, cognizable at law or in equity, which a Releasing Party now has or claims, or might hereafter have or claim, against such Released Party based upon such Seller's ownership of the Applicable Interests or the Purchaser's purchase of the Applicable Interests (as applicable), or any real, implied or alleged participation such Seller may have possessed, or believed to have possessed, in the right to purchase additional membership interests in the Company, and any profits, losses, cash distributions or capital appreciation arising out of property or assets of any kind of the Company, except that the foregoing release shall not apply to a Releasing Party's or her successors' and assigns' right to enforce the provisions of this Agreement.

   5.    <u>Dismissal of Company Litigation Matters</u>.  The Company Litigation Matters shall be dismissed, with prejudice, within 7 days after the Closing.

   6.    <u>Miscellaneous</u>.

      6.1    <u>Further Assurances</u>.  From and after the Closing, the parties shall execute, file and deliver such further documents, and perform such further acts, as may be necessary to effectuate the terms contained in this Agreement, and to otherwise comply with and satisfy the terms, provisions, conditions and intentions of this Agreement.

      6.2    <u>Waivers and Amendments</u>.  Neither this Agreement nor any provision hereof may be modified, amended, waived, discharged or terminated except pursuant to an instrument in writing executed and delivered by all of the parties hereto.

      6.3    <u>Governing Law</u>.  This Agreement shall be governed in all respects by the laws of the State of Illinois as such laws are applied to agreements between Illinois residents entered into and to be performed entirely within Illinois.

      6.4    <u>Successors and Assigns</u>.  The provisions hereof shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto.  Nothing in this Agreement, express or implied, is intended to confer on any Person other than the parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

      6.5    <u>Entire Agreement</u>.  This Agreement, the exhibits and schedules to this Agreement and the other documents delivered pursuant hereto constitute the full and entire

4842-7053-2820 (Version 1)

understanding and agreement between the parties with regard to the subject matter hereof and thereof.

6.6    Notice.    All notices and other communications required or permitted hereunder shall be in writing and shall be sent via facsimile, e-mail, overnight courier service or mailed by certified or registered mail, postage prepaid, return receipt requested, addressed or sent to the home addresses of the parties, or at such other address as the applicable party shall have furnished to the other parties in writing pursuant to this Section 6.6, with a copy emailed to the parties' attorneys.

6.7    Severability.    In case any provision of this Agreement shall be declared invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but this Agreement shall be reformed and construed to the maximum extent possible consistent herewith as if such invalid or illegal or unenforceable provision, or part of a provision, had never been contained herein, and so that such provisions or part reformed shall be valid, legal and enforceable.

6.8    Construction.    The titles of the paragraphs and subparagraphs of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. This Agreement shall not be construed against any party for having drafted it.

6.9    Counterparts; Electronic Signature.    This Agreement may be executed in counterparts and by the exchange of electronically transmitted counterparts, all of which together shall constitute the original of one instrument. Counterparts may be delivered by facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

6.10    Consent to Jurisdiction.    The parties hereto irrevocably submit themselves to the exclusive jurisdiction of the courts of the State of Illinois and to the jurisdiction of the County of Cook for the purpose of bringing any action that may be brought in connection with this Agreement. The parties agree that they shall not assert any claim that they are not subject to the jurisdiction of such courts, that the venue is improper, that the forum is inconvenient or any similar objection, claim or argument. To the maximum extent permitted by law, the notice provisions of this Agreement shall apply to service of process with respect to any action brought under this Agreement.

6.11    Waiver of Jury Trial.    EACH    PARTY    IRREVOCABLY    AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS, SCHEDULES, AND APPENDICES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY

4842-7053-2820 (Version 1)

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above.

**SELLERS:**                          **PURCHASER:**

_____          _____
Vivian Murphy                         Vickie White


_____
Astrid Cooper

8

4842-7053-2820 (Version 1)

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above.

**SELLERS:**                                    **PURCHASER:**

Vivian Murphy                                   Vickie White

Astrid Cooper

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

# PROMISSORY NOTE

**$ 1,512,150**                                                  **Dated: December ___, 2020**

In consideration of the mutual promises, agreements and covenants contained herein, the undersigned, Vickie White ("Obligor"), agrees and promises to pay Vivian Murphy ("Obligee") One Million Five Hundred Twelve Thousand One Hundred Fifty Dollars ($1,512,150) ("Principal Amount"), with interest as stated in this Promissory Note.

1.      **Promissory Note Secured by Stock**.  All sums due under this Promissory Note are secured by 100% of Vivian's Interests, being 10% of the membership interests in Chicago South Loop Hotel, LLC, as defined in the CSLH Membership Interest Purchase Agreement entered into by the parties on December __, 2020.  Obligor grants to Obligee a first priority security interest in Vivian's Interests and pledges Vivian's Interests to Obligee pursuant to the Security Agreement of even date hereof.

2.      **Payment of Principal and Interest**.  This Promissory Note shall bear interest at the rate of five (5%) percent per annum and amortized over two (2) years until the Principal Amount has been paid in full, as reflected on **Exhibit 1** to this Promissory Note.  Obligor shall pay to Obligee the Principal Amount with: (a) 24 equal monthly installments of **$8,115.55**, with the first monthly installment due on March 1, 2021, and thereafter on the first of each month, and (b) the final payment of **$1,466,389.12** due February 1, 2023, in accordance with the amortization schedule attached as **Exhibit 1**.

A late charge equal to 5% of the amount of any principal and interest installment so due, or equal to $25, whichever is greater, shall be added to such installment payment if not made within seven calendar days after the due date.

3.      **Payments**.  All payments due hereunder are to be made to Obligee via electronic transfer or such place designated in writing by Obligee, in the most legal tender of the United States of America current on the date such sums or payments are respectively due.

4.      **Default and Acceleration of Indebtedness**.  If any payment due on this Promissory Note is not received by Obligee within five (5) days after the due date, Obligee shall provide written notice to Obligor and a copy of such notice via electronic mail.  Obligor shall have five (5) days after such notice to cure the default by making such payment in accordance with this Note (the "Cure Period"). If the payment remains unpaid after the Cure Period, the entire unpaid Principal Amount, together with interest accrued thereon, shall become immediately due and payable at the place of payment aforesaid.

Obligor hereby agrees that in the event any payment due hereunder is not paid within five (5) days of the Due Date or during the subsequent Cure Period, that the rate of interest on this Note, at the election of Obligee without notice or demand, which is hereby expressly waived, shall be increased to be equal to 9% per year ("Default Rate"). Obligor shall be obligated to pay interest on the unpaid principal balance of this Note at the Default Rate, to be computed from the Note's origination date through and including the date of actual receipt of the overdue payment, whether

1

**EXHIBIT A-1 TO PURCHASE AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

that overdue payment is a monthly installment payment or the entire indebtedness. Nothing herein shall be construed as an agreement or privilege to accelerate or extend the date of the payment of any installment of the indebtedness, or of the entire indebtedness, nor as a waiver of any other right or remedy accruing to Obligee by reason of any such default.

5.    **Remedies**.  The remedies of Obligee, or other holder hereof, as provided herein and in the Security Agreement shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Obligee, or other holder hereof, and may be exercised as often as occasion therefore shall arise.  Failure of Obligee, or other holder hereof, for any period of time or on more than one occasion, to exercise its option to accelerate the indebtedness, as provided in Section 4 hereof, shall not constitute a waiver of the right to exercise the same at any time thereafter.  No act of omission or commission of Obligee, or other holder hereof, including specifically any failure to exercise any right, remedy or recourse, shall be deemed a waiver or release of the same and any such waiver or release is to be effected only through a written document executed by Obligee, or other holder hereof, and then only to the extent specifically recited therein.

6.    **No Waiver**.  A waiver or release with reference to any one Event of Default shall not be construed as a waiver or release of any subsequent Event of Default or as a bar to any subsequent exercise of Obligee's or other holder's rights or remedies hereunder.  Except as otherwise specifically required herein, notice of the exercise of any right or remedy granted to Obligee, or other holder hereof, by this Promissory Note is not required to be given.

7.    **Prepayment**.  Obligor shall have the right to prepay, without penalty, the unpaid Principal Amount, in whole or in part, at any time.

8.    **Costs of Collection**.  In the event that this Promissory Note is placed in the hands of an attorney-at-law for collection upon the occurrence of an Event of Default or to enforce any of the rights or requirements contained herein; or in the event that proceedings at law, in equity, bankruptcy, receivership or other legal proceedings are instituted in connection herewith; or if Obligee, or other holder hereof, is made a party to any such proceeding, Obligor hereby agrees to pay all reasonable costs of collecting or attempting to collect this Promissory Note, as well as to pay all reasonable costs of collecting or attempting to collect from Obligor any outstanding amounts due hereunder and any costs of protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to the Principal Amount, interest and other amounts payable hereunder.

9.    **Waiver of Presentment, Protest and Notice of Dishonor**.  Obligor and all other makers, endorsers, guarantors and sureties hereof, if any, jointly and severally waive presentment, protest and notice of dishonor.

10.    **Business Purposes**.  This Promissory Note is made for business purposes.

**EXHIBIT A-1 TO PURCHASE AGREEMENT**

4827-3220-6548 v.1

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

11.     **Time**.  Time is of the essence of this Promissory Note and each of the provisions hereof.

12.     **Governing Law**.  This Promissory Note has been negotiated in, has been executed and delivered in, is payable in and shall be governed by the laws of the State of Illinois.

13.     **Headings**.  All headings are for convenience purposes only and shall not be construed to define or otherwise limit the provisions of this Promissory Note.

14.     **Interpretation**.  The language in all parts of this Promissory Note shall be in all cases construed simply according to its fair meaning and not strictly for or against any party.  All words used herein in the singular number shall extend to and include the plural number.  All words used herein in the plural number shall extend to and include the singular number.  All words used in any gender, male, female or neuter shall extend to and include all genders as may be applicable in any particular context.  This Promissory Note has been negotiated at arms' length between persons knowledgeable in the matters dealt with herein.  Accordingly, any rule of law or any other statutes, legal decisions or common law principles of similar effect that would require interpretation of any ambiguities against the party that has drafted it or them are of no application and are hereby expressly waived by all parties hereto.

15.     **Binding Agreement; Assignment**.  This Promissory Note shall be binding upon and inure to the benefit of the parties named herein and to their respective successors and assigns.  This Promissory Note may be assigned by Obligee without the consent of Obligor.  This Promissory Note and the rights, interests and obligations of Obligor may not be assigned without the written consent of Obligee.

**IN WITNESS WHEREOF**, Obligor has executed and delivered this Promissory Note on the day and year first above written.

**OBLIGOR**

_____
Vickie White

3

**EXHIBIT A-1 TO PURCHASE AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

# Amortization Schedule

## EXHIBIT 1 to Murphy Promissory Note

# Business Loan Calculator

| | |
|---|---|
| Loan Amount | 1512150 |
| Interest Rate | 5 |
| Compound | Monthly (APR) |
| Loan Term | 30 years |
| | 0 months |
| Pay Back | Every Month |
| Origination Fee | 0 |
| Other Fees | 0 |

**$8,117.55 Per Month**

| | |
|---|---|
| Total of 360 Loan Payments | $2,922,317.34 |
| Interest | $1,410,167.34 |

# Amortization Schedule

| | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $1,512,150.00 | $6,300.63 | -$1,816.92 | $1,510,333.08 |
| 2 | $1,510,333.08 | $6,293.05 | -$1,824.49 | $1,508,508.58 |
| 3 | $1,508,508.58 | $6,285.45 | -$1,832.10 | $1,506,676.49 |
| 4 | $1,506,676.49 | $6,277.82 | -$1,839.73 | $1,504,836.76 |
| 5 | $1,504,836.76 | $6,270.15 | -$1,847.40 | $1,502,989.36 |

4

**EXHIBIT A-1 TO PURCHASE AGREEMENT**

4827-3220-6548 v.1

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

| | | | |
|---|---|---|---|
| 6 | $1,502,989.36 | $6,262.46 | -1,855.09 | $1,501,134.27 |
| 7 | $1,501,134.27 | $6,254.73 | -$1,862.82 | $1,499,271.45 |
| 8 | $1,499,271.45 | $6,246.96 | -$1,870.58 | $1,497,400.86 |
| 9 | $1,497,400.86 | $6,239.17 | -$1,878.38 | $1,495,522.49 |
| 10 | $1,495,522.49 | $6,231.34 | -$1,886.20 | $1,493,636.28 |
| 11 | $1,493,636.28 | $6,223.48 | -$1,894.06 | $1,491,742.22 |
| 12 | $1,491,742.22 | $6,215.59 | -$1,901.96 | $1,489,840.26 |

**Year #1 End**

| | | | |
|---|---|---|---|
| 13 | $1,489,840.26 | $6,207.67 | -$1,909.88 | $1,487,930.38 |
| 14 | $1,487,930.38 | $6,199.71 | -$1,917.84 | $1,486,012.54 |
| 15 | $1,486,012.54 | $6,191.72 | -$1,925.83 | $1,484,086.72 |
| 16 | $1,484,086.72 | $6,183.69 | -$1,933.85 | $1,482,152.86 |
| 17 | $1,482,152.86 | $6,175.64 | -$1,941.91 | $1,480,210.95 |
| 18 | $1,480,210.95 | $6,167.55 | -$1,950.00 | $1,478,260.95 |
| 19 | $1,478,260.95 | $6,159.42 | -$1,958.13 | $1,476,302.82 |
| 20 | $1,476,302.82 | $6,151.26 | -$1,966.29 | $1,474,336.53 |
| 21 | $1,474,336.53 | $6,143.07 | -$1,974.48 | $1,472,362.05 |
| 22 | $1,472,362.05 | $6,134.84 | -$1,982.71 | $1,470,379.35 |
| 23 | $1,470,379.35 | $6,126.58 | -$1,990.97 | $1,468,388.38 |
| 24 | $1,468,388.38 | $6,118.28 | -$1,999.26 | $1,466,389.12 |

4827-3220-6548, v. 1

5

**EXHIBIT A-1 TO PURCHASE AGREEMENT**

4827-3220-6548 v.1

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

## PROMISSORY NOTE

**$756,075**                                          **Dated: December ___, 2020**

      In consideration of the mutual promises, agreements and covenants contained herein, the undersigned, Vickie White ("Obligor"), agrees and promises to pay Astrid Cooper ("Obligee") Seven Hundred Fifty Six Thousand Seventy-Five Dollars ($756,075) ("Principal Amount"), with interest as stated in this Promissory Note.

      1.    **Promissory Note Secured by Stock**.  All sums due under this Promissory Note are secured by 100% of Astrid's Interests, being 5% of the membership interests in Chicago South Loop Hotel, LLC, as defined in the CSLH Membership Interest Purchase Agreement entered into by the parties on December __, 2020.  Obligor grants to Obligee a first priority security interest in Astrid's Interests and pledges Astrid's Interests to Obligee pursuant to the Security Agreement of even date hereof.

      2.    **Payment of Principal and Interest**.  This Promissory Note shall bear interest at the rate of five (5%) percent per annum and amortized over two (2) years until the Principal Amount has been paid in full, as reflected on **Exhibit 1** to this Promissory Note.  Obligor shall pay to Obligee the Principal Amount with: (a) 24 equal monthly installments of **$4,058.77**, with the first monthly installment due on  March 1, 2021, and thereafter on the first of each month, and (b) the final payment of **$733,194.56** due February 1, 2023, in accordance with the amortization schedule attached as **Exhibit 1**.

      A late charge equal to 5% of the amount of any principal and interest installment so due, or equal to $25, whichever is greater, shall be added to such installment payment if not made within seven calendar days after the due date.

      3.    **Payments**.  All payments due hereunder are to be made to Obligee via electronic transfer or such place designated in writing by Obligee, in the most legal tender of the United States of America current on the date such sums or payments are respectively due.

      4.    **Default and Acceleration of Indebtedness**.  If any payment due on this Promissory Note is not received by Obligee within five (5) days after the due date, Obligee shall provide written notice to Obligor and a copy of such notice via electronic mail.  Obligor shall have five (5) days after such notice to cure the default by making such payment in accordance with this Note (the "Cure Period"). If the payment remains unpaid after the Cure Period, the entire unpaid Principal Amount, together with interest accrued thereon, shall become immediately due and payable at the place of payment aforesaid.

      Obligor hereby agrees that in the event any payment due hereunder is not paid within five (5) days of the Due Date or during the subsequent Cure Period, that the rate of interest on this Note, at the election of Obligee without notice or demand, which is hereby expressly waived, shall be increased to be equal to 9% per year ("Default Rate"). Obligor shall be obligated to pay interest on the unpaid principal balance of this Note at the Default Rate, to be computed from the Note's origination date through and including the date of actual receipt of the overdue payment, whether

**EXHIBIT A-2 TO PURCHASE AGREEMENT**

1

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

that overdue payment is a monthly installment payment or the entire indebtedness. Nothing herein shall be construed as an agreement or privilege to accelerate or extend the date of the payment of any installment of the indebtedness, or of the entire indebtedness, nor as a waiver of any other right or remedy accruing to Obligee by reason of any such default.

5.  **Remedies**.  The remedies of Obligee, or other holder hereof, as provided herein and in the Security Agreement shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Obligee, or other holder hereof, and may be exercised as often as occasion therefore shall arise.  Failure of Obligee, or other holder hereof, for any period of time or on more than one occasion, to exercise its option to accelerate the indebtedness, as provided in Section 4 hereof, shall not constitute a waiver of the right to exercise the same at any time thereafter.  No act of omission or commission of Obligee, or other holder hereof, including specifically any failure to exercise any right, remedy or recourse, shall be deemed a waiver or release of the same and any such waiver or release is to be effected only through a written document executed by Obligee, or other holder hereof, and then only to the extent specifically recited therein.

6.  **No Waiver**.  A waiver or release with reference to any one Event of Default shall not be construed as a waiver or release of any subsequent Event of Default or as a bar to any subsequent exercise of Obligee's or other holder's rights or remedies hereunder.  Except as otherwise specifically required herein, notice of the exercise of any right or remedy granted to Obligee, or other holder hereof, by this Promissory Note is not required to be given.

7.  **Prepayment**.  Obligor shall have the right to prepay, without penalty, the unpaid Principal Amount, in whole or in part, at any time.

8.  **Costs of Collection**.  In the event that this Promissory Note is placed in the hands of an attorney-at-law for collection upon the occurrence of an Event of Default or to enforce any of the rights or requirements contained herein; or in the event that proceedings at law, in equity, bankruptcy, receivership or other legal proceedings are instituted in connection herewith; or if Obligee, or other holder hereof, is made a party to any such proceeding, Obligor hereby agrees to pay all reasonable costs of collecting or attempting to collect this Promissory Note, as well as to pay all reasonable costs of collecting or attempting to collect from Obligor any outstanding amounts due hereunder and any costs of protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to the Principal Amount, interest and other amounts payable hereunder.

9.  **Waiver of Presentment, Protest and Notice of Dishonor**.  Obligor and all other makers, endorsers, guarantors and sureties hereof, if any, jointly and severally waive presentment, protest and notice of dishonor.

10.  **Business Purposes**.  This Promissory Note is made for business purposes.

11.  **Time**.  Time is of the essence of this Promissory Note and each of the provisions hereof.

**EXHIBIT A-2 TO PURCHASE AGREEMENT**

2

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

12.    **Governing Law**.  This Promissory Note has been negotiated in, has been executed and delivered in, is payable in and shall be governed by the laws of the State of Illinois.

13.    **Headings**.  All headings are for convenience purposes only and shall not be construed to define or otherwise limit the provisions of this Promissory Note.

14.    **Interpretation**.  The language in all parts of this Promissory Note shall be in all cases construed simply according to its fair meaning and not strictly for or against any party.  All words used herein in the singular number shall extend to and include the plural number.  All words used herein in the plural number shall extend to and include the singular number.  All words used in any gender, male, female or neuter shall extend to and include all genders as may be applicable in any particular context.  This Promissory Note has been negotiated at arms' length between persons knowledgeable in the matters dealt with herein.  Accordingly, any rule of law or any other statutes, legal decisions or common law principles of similar effect that would require interpretation of any ambiguities against the party that has drafted it or them are of no application and are hereby expressly waived by all parties hereto.

15.    **Binding Agreement; Assignment**.  This Promissory Note shall be binding upon and inure to the benefit of the parties named herein and to their respective successors and assigns.  This Promissory Note may be assigned by Obligee without the consent of Obligor.  This Promissory Note and the rights, interests and obligations of Obligor may not be assigned without the written consent of Obligee.

**IN WITNESS WHEREOF**, Obligor has executed and delivered this Promissory Note on the day and year first above written.

**OBLIGOR**

_____

Vickie White

4811-4263-0868 v.1

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

## Amortization Schedule

## EXHIBIT 1 to Cooper Promissory Note

# Business Loan Calculator

| | |
|---|---|
| Loan Amount | 756075 |
| Interest Rate | 5 |
| Compound | Monthly (APR) |
| Loan Term | 30 years |
| | 0 months |
| Pay Back | Every Month |
| Origination Fee | 0 |
| Documentation Fee | |
| Other Fees | 0 |

### $4,058.77 Per Month

| | |
|---|---|
| Total of 360 Loan Payments | $1,461,158.67 |
| Interest | $705,083.67 |

## Amortization Schedule

| | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $756,075.00 | $3,150.31 | -$908.46 | $755,166.54 |
| 2 | $755,166.54 | $3,146.53 | -$912.25 | $754,254.29 |
| 3 | $754,254.29 | $3,142.73 | -$916.05 | $753,338.24 |
| 4 | $753,338.24 | $3,138.91 | -$919.86 | $752,418.38 |
| 5 | $752,418.38 | $3,135.08 | -$923.70 | $751,494.68 |
| 6 | $751,494.68 | $3,131.23 | -$927.55 | $750,567.14 |

**EXHIBIT A-2 TO PURCHASE AGREEMENT**

4

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

| | | | | |
|---|---|---|---|---|
| 7 | $750,567.14 | $3,127.36 | -$931.41 | $749,635.72 |
| 8 | $749,635.72 | $3,123.48 | -$935.29 | $748,700.43 |
| 9 | $748,700.43 | $3,119.59 | -$939.19 | $747,761.24 |
| 10 | $747,761.24 | $3,115.67 | -$943.10 | $746,818.14 |
| 11 | $746,818.14 | $3,111.74 | -$947.03 | $745,871.11 |
| 12 | $745,871.11 | $3,107.80 | -$950.98 | $744,920.13 |
| **Year #1 End** | | | | |
| 13 | $744,920.13 | $3,103.83 | -$954.94 | $743,965.19 |
| 14 | $743,965.19 | $3,099.85 | -$958.92 | $743,006.27 |
| 15 | $743,006.27 | $3,095.86 | -$962.91 | $742,043.36 |
| 16 | $742,043.36 | $3,091.85 | -$966.93 | $741,076.43 |
| 17 | $741,076.43 | $3,087.82 | -$970.96 | $740,105.48 |
| 18 | $740,105.48 | $3,083.77 | -$975.00 | $739,130.47 |
| 19 | $739,130.47 | $3,079.71 | -$979.06 | $738,151.41 |
| 20 | $738,151.41 | $3,075.63 | -$983.14 | $737,168.27 |
| 21 | $737,168.27 | $3,071.53 | -$987.24 | $736,181.03 |
| 22 | $736,181.03 | $3,067.42 | -$991.35 | $735,189.67 |
| 23 | $735,189.67 | $3,063.29 | -$995.48 | $734,194.19 |
| 24 | $734,194.19 | $3,059.14 | -$999.63 | $733,194.56 |

**EXHIBIT A-2 TO PURCHASE AGREEMENT**

4811-4263-0868 v.1

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

## CSLH PLEDGE AND SECURITY AGREEMENT

This CSLH Pledge and Security Agreement is given by Vickie White ("Debtor") in favor of Vivian Murphy ("Secured Party").

### W I T N E S S E T H:

WHEREAS, Debtor and Secured Party are parties to the CSLH Membership Interest Purchase Agreement entered into by the parties on December ____, 2020 (the "Agreement"), pursuant to which Secured Party sold 10% of the membership interests in Chicago South Loop Hotel, LLC,, being all of her membership interests, to Debtor (the "Vivian's Interests");

WHEREAS, 75% of the purchase price for Vivian's Interests is payable by the delivery to Secured Party of the Promissory Note of even date herewith, in the principal amount of One Million Five Hundred Twelve Thousand One Hundred Fifty Dollars ($1,512,150) (the "Note"); and

WHEREAS, the Note provides that Debtor shall grant to Secured Party a first priority security interest in 100% of Vivian's Interests to secure performance and payment of all of Debtor's obligations under the Note.

**NOW, THEREFORE**, for and in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    **Grant of Security Interest – Collateral**.  To secure the Obligations (as defined in Paragraph 2), Debtor hereby grants to Secured Party a first priority security interest in 100% of Vivian's Interests (the "Collateral").

2.    **Obligations**.  The obligations secured by this Agreement ("Obligations") are the following:

a.    The indebtedness of Debtor to Secured Party evidenced by the Note; and

b.    Court costs, and attorneys' fees and expenses, of Secured Party incurred in connection herewith or with the Note; and

c.    Any other sum due under the Note.

d.    Debtor's obligation to pay the Purchase Price as required by the Agreement, and attorneys' fees and expenses, of Secured Party incurred in connection with enforcing Debtor's obligation to pay the Purchase Price.

1

**EXHIBIT B-1 TO PURCHASE AGREEMENT**

4819-3247-0740 v.2

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

3.     **Representation , Warranties, and Promises**.  Debtor represents, warrants, and promises as follows:

a.     Debtor is the owner of the Collateral free and clear of any claim of any kind other than the security interest herein granted.  No security agreement, financing statement or lien instrument covering all or any part of Collateral is on file or on record in any public office.  Debtor will at any time defend Collateral against any and all claims of any person adverse to the claim of Secured Party.  Debtor has full power and authority to enter into this Security Agreement.

b.     Debtor authorizes Secured Party to advance for Debtor's account, after giving reasonable notice to Debtor, any sum reasonably necessary to preserve Collateral.

c.     All of the representations and warranties in the Note and in any other notes or instruments pertaining to Collateral are true and correct.

d.     Debtor shall comply with all of her agreements and promises in the Note and in any other notes or instruments pertaining to Collateral.

e.     Debtor has the power to execute this Security Agreement, to perform its obligations hereunder, and to subject Collateral to the security interest created hereby.

f.     Debtor shall deliver such documents as reasonably requested by Secured Party, to affect the pledge and security interest granted herein.

4.     **Waiver of Duty to Preserve Rights**.  Secured Party may, but need not, take any action to preserve rights against any one or more account debtors (including endorsers) or any instrument or instruments constituting Collateral hereunder; and Secured Party has no obligation with respect to redemption, conversion, warrant, pre-emptive or other rights or dates limiting the exercise of such rights as to any security which may constitute Collateral hereunder.  Debtor expressly waives all requirements of presentment, notice of dishonor, protest, and diligence in collection with respect to all of Collateral.  No omission by Secured Party with respect to any such matter(s) shall in any way impair or discharge the Obligations or any of them.  Debtor understands that Secured Party shall have no duty or obligations to look to or realize upon Collateral for payment, or to protect, preserve or care for Collateral in any manner whatsoever.  The acceptance by Secured Party of Collateral as security for the Obligations, or any failure, neglect or omission on the part of Secured Party to realize upon or to protect, preserve or care for any Collateral shall not in any way affect Debtor's obligations under the Note.

5.     **Voting**.  Unless and until the occurrence of an Event of Default (as defined in Paragraph 6), Debtor shall be entitled to all incidents of ownership of Vivian's Interests, however, that Debtor agrees, however, that in the exercise of such voting rights, Debtor will not take any action which would impair or tend to impair the security interest of Secured Party in the Collateral or reduce the value of the Collateral.

2
**EXHIBIT B-1 TO PURCHASE AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

6.      **Events of Default**.  Debtor shall be in default ("Event of Default") under this Agreement upon the happening of any one of the following events or the existence of any one of the following conditions:

a.      The creation of any encumbrance upon Collateral or the making of any levy, judicial seizure, or attachment thereof or thereon; or

b.      Any default under Note.

7.      **Rights of Secured Party upon Event of Default**.

a.      Upon an Event of Default, Secured Party shall have the rights and remedies provided by the Illinois Uniform Commercial Code, and all other rights and remedies granted at law or in equity, including, without limitation, the right to sell or otherwise dispose of Collateral, or any part thereof, at public or private sale, at prices Secured Party deems best, for cash or credit or for future delivery.  Without precluding any other methods of sale, the sale of Collateral shall have been made in a commercially reasonable manner if conducted in conformity with customary commercial practices of banks disposing of similar property, but in any event Secured Party may sell on such terms as it may choose, without making any representations or warranties and without assuming any credit risk and without any obligation to advertise.  Debtor expressly acknowledges that private sales may be less favorable to a seller than public sales but that private sales shall nevertheless be deemed commercially reasonable and permitted hereunder.

b.      If any notification of intended disposition of any of the Collateral is required by law, such notification shall be deemed reasonably and properly given if mailed at least 5 days before such intended disposition with a copy sent via email.  Any such notification shall be transmitted to Debtor at the address shown above, by ordinary mail, with postage prepaid, or at any other address subsequently designated by Debtor in writing with copies via email to vmurph1@gmail.com and to SML@H2Law.com. Notification shall not be necessary if Collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold in a recognized market.  Any proceeds derived from the disposition of Collateral and any balance of such proceeds may be applied by Secured Party to the payment of Obligations, in such order of application as Secured Party may from time to time elect.  Debtor does hereby agree to indemnify, defend and hold Secured Party harmless from any and all claims, causes of action, and liabilities relating to any action of Secured Party in dealing with the Collateral.

c.      In addition to all of the other rights possessed by Secured Party in the event of a default, Secured Party may:

i.      Transfer all or any part of Collateral into the name of Secured Party or its nominee, with or without disclosing that Collateral is subject to the lien and security interest granted hereunder;

3

**EXHIBIT B-1 TO PURCHASE AGREEMENT**

4819-3247-0740 v.2

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

ii.      Notify some or all parties obligated on any of Collateral to make payment to Secured Party of any or all amounts due or to become due thereunder;

iii.      Enforce collection of any of Collateral by suit or otherwise, or surrender, release or exchange all or any part of Collateral, or compromise, extend or renew for any period (whether or not longer than the original period) any indebtedness evidenced thereby;

iv.      Take control of any or all proceeds of, income or dividends from Collateral;

v.      Exercise such additional rights and powers, if any, with respect to any security for or guaranty of any of Obligations, as may be provided in any written instrument which is in addition to this Agreement or the Note.

8.      **Duration**.  This Agreement shall be and remain in force from the date first above mentioned until Obligations have been fully paid.

9.      **Law Governing**.  This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed this ___ day of December ___, 2020.


DEBTOR                              SECURED PARTY



_____          _____
Vickie White                       Vivian Murphy



4819-3247-0740, v. 2



4
**EXHIBIT B-1 TO PURCHASE AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

## CSLH PLEDGE AND SECURITY AGREEMENT

This CSLH Pledge and Security Agreement is given by Vickie White ("Debtor") in favor of Astrid Cooper ("Secured Party").

WITNESSETH:

WHEREAS, Debtor and Secured Party are parties to the CSLH Membership Interest Purchase Agreement entered into by the parties on December _____, 2020 (the "Agreement"), pursuant to which Secured Party sold 5% of the membership interests in Chicago South Loop Hotel, LLC, being all of her membership interests, to Debtor (the "Astrid's Interests");

WHEREAS, 75% of the purchase price for Astrid's Interests is payable by the delivery to Secured Party of the Promissory Note of even date herewith, in the principal amount of Seven Hundred Fifty-Six Thousand Seventy-Five Dollars ($756,075) (the "Note"); and

WHEREAS, the Note provides that Debtor shall grant to Secured Party a first priority security interest in 100% of Astrid's Interests to secure performance and payment of all of Debtor's obligations under the Note.

NOW, THEREFORE, for and in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. **Grant of Security Interest – Collateral**. To secure the Obligations (as defined in Paragraph 2), Debtor hereby grants to Secured Party a first priority security interest in 100% of Astrid's Interests (the "Collateral").

2. **Obligations**. The obligations secured by this Agreement ("Obligations") are the following:

   a. The indebtedness of Debtor to Secured Party evidenced by the Note; and

   b. Court costs, and attorneys' fees and expenses, of Secured Party incurred in connection herewith or with the Note; and

   c. Any other sum due under the Note.

   d. Debtor's obligation to pay the Purchase Price as required by the Agreement, and attorneys' fees and expenses, of Secured Party incurred in connection with enforcing Debtor's obligation to pay the Purchase Price.

3. **Representation , Warranties, and Promises**. Debtor represents, warrants, and promises as follows:

1

**EXHIBIT B-2 TO PURCHASE AGREEMENT**

4816-1409-6852 v.2

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

a.    Debtor is the owner of the Collateral free and clear of any claim of any kind other than the security interest herein granted.  No security agreement, financing statement or lien instrument covering all or any part of Collateral is on file or on record in any public office.  Debtor will at any time defend Collateral against any and all claims of any person adverse to the claim of Secured Party.  Debtor has full power and authority to enter into this Security Agreement.

b.    Debtor authorizes Secured Party to advance for Debtor's account, after giving reasonable notice to Debtor, any sum reasonably necessary to preserve Collateral.

c.    All of the representations and warranties in the Note and in any other notes or instruments pertaining to Collateral are true and correct.

d.    Debtor shall comply with all of her agreements and promises in the Note and in any other notes or instruments pertaining to Collateral.

e.    Debtor has the power to execute this Security Agreement, to perform its obligations hereunder, and to subject Collateral to the security interest created hereby.

f.    Debtor shall deliver such documents as reasonably requested by Secured Party, to affect the pledge and security interest granted herein.

4.    **Waiver of Duty to Preserve Rights**.  Secured Party may, but need not, take any action to preserve rights against any one or more account debtors (including endorsers) or any instrument or instruments constituting Collateral hereunder; and Secured Party has no obligation with respect to redemption, conversion, warrant, pre-emptive or other rights or dates limiting the exercise of such rights as to any security which may constitute Collateral hereunder.  Debtor expressly waives all requirements of presentment, notice of dishonor, protest, and diligence in collection with respect to all of Collateral.  No omission by Secured Party with respect to any such matter(s) shall in any way impair or discharge the Obligations or any of them.  Debtor understands that Secured Party shall have no duty or obligations to look to or realize upon Collateral for payment, or to protect, preserve or care for Collateral in any manner whatsoever. The acceptance by Secured Party of Collateral as security for the Obligations, or any failure, neglect or omission on the part of Secured Party to realize upon or to protect, preserve or care for any Collateral shall not in any way affect Debtor's obligations under the Note.

5.    **Voting**.  Unless and until the occurrence of an Event of Default (as defined in Paragraph 6), Debtor shall be entitled to all incidents of ownership of Astrid's Interests, however, that Debtor agrees, however, that in the exercise of such voting rights, Debtor will not take any action which would impair or tend to impair the security interest of Secured Party in the Collateral or reduce the value of the Collateral.

2
**EXHIBIT B-2 TO PURCHASE AGREEMENT**

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

6.      **Events of Default**.  Debtor shall be in default ("Event of Default") under this Agreement upon the happening of any one of the following events or the existence of any one of the following conditions:

a.      The creation of any encumbrance upon Collateral or the making of any levy, judicial seizure, or attachment thereof or thereon; or

b.      Any default under Note.

7.      **Rights of Secured Party upon Event of Default**.

a.      Upon an Event of Default, Secured Party shall have the rights and remedies provided by the Illinois Uniform Commercial Code, and all other rights and remedies granted at law or in equity, including, without limitation, the right to sell or otherwise dispose of Collateral, or any part thereof, at public or private sale, at prices Secured Party deems best, for cash or credit or for future delivery.  Without precluding any other methods of sale, the sale of Collateral shall have been made in a commercially reasonable manner if conducted in conformity with customary commercial practices of banks disposing of similar property, but in any event Secured Party may sell on such terms as it may choose, without making any representations or warranties and without assuming any credit risk and without any obligation to advertise.  Debtor expressly acknowledges that private sales may be less favorable to a seller than public sales but that private sales shall nevertheless be deemed commercially reasonable and permitted hereunder.

b.      If any notification of intended disposition of any of the Collateral is required by law, such notification shall be deemed reasonably and properly given if mailed at least 5 days before such intended disposition with a copy sent via email.  Any such notification shall be transmitted to Debtor at the address shown above, by ordinary mail, with postage prepaid, or at any other address subsequently designated by Debtor in writing with copies via email to amcooper3@gmail.com and to SML@H2Law.com. Notification shall not be necessary if Collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold in a recognized market.  Any proceeds derived from the disposition of Collateral and any balance of such proceeds may be applied by Secured Party to the payment of Obligations, in such order of application as Secured Party may from time to time elect.  Debtor does hereby agree to indemnify, defend and hold Secured Party harmless from any and all claims, causes of action, and liabilities relating to any action of Secured Party in dealing with the Collateral.

c.      In addition to all of the other rights possessed by Secured Party in the event of a default, Secured Party may:

i.      Transfer all or any part of Collateral into the name of Secured Party or its nominee, with or without disclosing that Collateral is subject to the lien and security interest granted hereunder;

3

**EXHIBIT B-2 TO PURCHASE AGREEMENT**

4816-1409-6852 v.2

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

ii.      Notify some or all parties obligated on any of Collateral to make payment to Secured Party of any or all amounts due or to become due thereunder;

iii.     Enforce collection of any of Collateral by suit or otherwise, or surrender, release or exchange all or any part of Collateral, or compromise, extend or renew for any period (whether or not longer than the original period) any indebtedness evidenced thereby;

iv.     Take control of any or all proceeds of, income or dividends from Collateral;

v.     Exercise such additional rights and powers, if any, with respect to any security for or guaranty of any of Obligations, as may be provided in any written instrument which is in addition to this Agreement or the Note.

8.    **Duration**.  This Agreement shall be and remain in force from the date first above mentioned until Obligations have been fully paid.

9.    **Law Governing**.  This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed this ____ day of December ____, 2020.

DEBTOR                SECURED PARTY

_____       _____

Vickie White               Astrid Cooper

4816-1409-6852, v. 2

4

**EXHIBIT B-2 TO PURCHASE AGREEMENT**

4816-1409-6852 v.2

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

## PROMISSORY NOTE

**$ 1,512,150**                                           **Dated: December 30, 2020**

In consideration of the mutual promises, agreements and covenants contained herein, the undersigned, Vickie White ("Obligor"), agrees and promises to pay Vivian Murphy ("Obligee") One Million Five Hundred Twelve Thousand One Hundred Fifty Dollars ($1,512,150) ("Principal Amount"), with interest as stated in this Promissory Note.

1.      **Promissory Note Secured by Stock**. All sums due under this Promissory Note are secured by 100% of Vivian's Interests, being 10% of the membership interests in Chicago South Loop Hotel, LLC, as defined in the CSLH Membership Interest Purchase Agreement entered into by the parties on December 30, 2020. Obligor grants to Obligee a first priority security interest in Vivian's Interests and pledges Vivian's Interests to Obligee pursuant to the Security Agreement of even date hereof.

2.      **Payment of Principal and Interest**. This Promissory Note shall bear interest at the rate of five (5%) percent per annum and amortized over two (2) years until the Principal Amount has been paid in full, as reflected in **Exhibit 1** to this Promissory Note. Obligor shall pay to Obligee the Principal Amount with: (a) 24 equal monthly installments of **$8,115.55**, with the first monthly installment due on **March 1, 2021**, and thereafter on the first of each month, and (b) the final payment of **$1,466,389.12** due February 1, 2023, in accordance with the amortization schedule attached as **Exhibit 1**.

A late charge equal to 5% of the amount of any principal and interest installment so due, or equal to $25, whichever is greater, shall be added to such installment payment if not made within seven calendar days after the due date.

3.      **Payments**. All payments due hereunder are to be made to Obligee via electronic transfer or such place designated in writing by Obligee, in the most legal tender of the United States of America current on the date such sums or payments are respectively due.

4.      **Default and Acceleration of Indebtedness**.   If any payment due on this Promissory Note is not received by Obligee within five (5) days after the due date, Obligee shall provide written notice to Obligor and a copy of such notice via electronic mail.  Obligor shall have five (5) days after such notice to cure the default by making such payment in accordance with this Note (the "Cure Period"). If the payment remains unpaid after the Cure Period, the entire unpaid Principal Amount, together with interest accrued thereon, shall become immediately due and payable at the place of payment aforesaid.

Obligor hereby agrees that in the event any payment due hereunder is not paid within five (5) days of the Due Date or during the subsequent Cure Period, that the rate of interest on this Note, at the election of Obligee without notice or demand, which is hereby expressly waived, shall be increased to be equal to 9% per year ("Default Rate"). Obligor shall be obligated to pay interest on the unpaid principal balance of this Note at the Default Rate, to be computed from the Note's origination date through and including the date of actual receipt of the overdue payment, whether

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

that overdue payment is a monthly installment payment or the entire indebtedness. Nothing herein shall be construed as an agreement or privilege to accelerate or extend the date of the payment of any installment of the indebtedness, or of the entire indebtedness, nor as a waiver of any other right or remedy accruing to Obligee by reason of any such default.

5.   **Remedies**. The remedies of Obligee, or other holder hereof, as provided herein and in the Security Agreement shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Obligee, or other holder hereof, and may be exercised as often as occasion therefore shall arise. Failure of Obligee, or other holder hereof, for any period of time or on more than one occasion, to exercise its option to accelerate the indebtedness, as provided in Section 4 hereof, shall not constitute a waiver of the right to exercise the same at any time thereafter. No act of omission or commission of Obligee, or other holder hereof, including specifically any failure to exercise any right, remedy or recourse, shall be deemed a waiver or release of the same and any such waiver or release is to be effected only through a written document executed by Obligee, or other holder hereof, and then only to the extent specifically recited therein.

6.   **No Waiver**. A waiver or release with reference to any one Event of Default shall not be construed as a waiver or release of any subsequent Event of Default or as a bar to any subsequent exercise of Obligee's or other holder's rights or remedies hereunder. Except as otherwise specifically required herein, notice of the exercise of any right or remedy granted to Obligee, or other holder hereof, by this Promissory Note is not required to be given.

7.   **Prepayment**. Obligor shall have the right to prepay, without penalty, the unpaid Principal Amount, in whole or in part, at any time.

8.   **Costs of Collection**. In the event that this Promissory Note is placed in the hands of an attorney-at-law for collection upon the occurrence of an Event of Default or to enforce any of the rights or requirements contained herein; or in the event that proceedings at law, in equity, bankruptcy, receivership or other legal proceedings are instituted in connection herewith; or if Obligee, or other holder hereof, is made a party to any such proceeding, Obligor hereby agrees to pay all reasonable costs of collecting or attempting to collect this Promissory Note, as well as to pay all reasonable costs of collecting or attempting to collect from Obligor any outstanding amounts due hereunder and any costs of protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to the Principal Amount, interest and other amounts payable hereunder.

9.   **Waiver of Presentment, Protest and Notice of Dishonor**. Obligor and all other makers, endorsers, guarantors and sureties hereof, if any, jointly and severally waive presentment, protest and notice of dishonor.

10.   **Business Purposes**. This Promissory Note is made for business purposes.

11.   **Time**. Time is of the essence of this Promissory Note and each of the provisions hereof.

2

4837-5166-5621 v.1

12.    **Governing Law**. This Promissory Note has been negotiated in, has been executed and delivered in, is payable in and shall be governed by the laws of the State of Illinois.

13.    **Headings**. All headings are for convenience purposes only and shall not be construed to define or otherwise limit the provisions of this Promissory Note.

14.    **Interpretation**. The language in all parts of this Promissory Note shall be in all cases construed simply according to its fair meaning and not strictly for or against any party. All words used herein in the singular number shall extend to and include the plural number. All words used herein in the plural number shall extend to and include the singular number. All words used in any gender, male, female or neuter shall extend to and include all genders as may be applicable in any particular context. This Promissory Note has been negotiated at arms' length between persons knowledgeable in the matters dealt with herein. Accordingly, any rule of law or any other statutes, legal decisions or common law principles of similar effect that would require interpretation of any ambiguities against the party that has drafted it or them are of no application and are hereby expressly waived by all parties hereto.

15.    **Binding Agreement; Assignment**. This Promissory Note shall be binding upon and inure to the benefit of the parties named herein and to their respective successors and assigns. This Promissory Note may be assigned by Obligee without the consent of Obligor. This Promissory Note and the rights, interests and obligations of Obligor may not be assigned without the written consent of Obligee.

**IN WITNESS WHEREOF**, Obligor has executed and delivered this Promissory Note on the day and year first above written.

**OBLIGOR**

Vickie White

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

## Amortization Schedule

## EXHIBIT 1 to Murphy Promissory Note

# Business Loan Calculator



| | Loan Amount | 1512150 |
| | Interest Rate | 5 |
| | Compound | Monthly (APR) |
| | Loan Term | 30 years |
| | | 0 months |
| | Pay Back | Every Month |
| | Origination Fee | 0 |
| | Other Fees | 0 |

**$8,117.55 Per Month**

| | |
|---|---|
| Total of 360 Loan Payments | $2,922,317.34 |
| Interest | $1,410,167.34 |

## Amortization Schedule

| | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $1,512,150.00 | $6,300.63 | -$1,816.92 | $1,510,333.08 |
| 2 | $1,510,333.08 | $6,293.05 | -$1,824.49 | $1,508,508.58 |
| 3 | $1,508,508.58 | $6,285.45 | -$1,832.10 | $1,506,676.49 |
| 4 | $1,506,676.49 | $6,277.82 | -$1,839.73 | $1,504,836.76 |
| 5 | $1,504,836.76 | $6,270.15 | -$1,847.40 | $1,502,989.36 |
| 6 | $1,502,989.36 | $6,262.46 | -$1,855.09 | $1,501,134.27 |

4

4837-5166-5621 v.1

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

| | | | | |
|---|---|---|---|---|
| 7 | $1,501,134.27 | $6,254.73 | -$1,862.82 | $1,499,271.45 |
| 8 | $1,499,271.45 | $6,246.96 | -$1,870.58 | $1,497,400.86 |
| 9 | $1,497,400.86 | $6,239.17 | -$1,878.38 | $1,495,522.49 |
| 10 | $1,495,522.49 | $6,231.34 | -$1,886.20 | $1,493,636.28 |
| 11 | $1,493,636.28 | $6,223.48 | -$1,894.06 | $1,491,742.22 |
| 12 | $1,491,742.22 | $6,215.59 | -$1,901.96 | $1,489,840.26 |
| **Year #1 End** | | | | |
| 13 | $1,489,840.26 | $6,207.67 | -$1,909.88 | $1,487,930.38 |
| 14 | $1,487,930.38 | $6,199.71 | -$1,917.84 | $1,486,012.54 |
| 15 | $1,486,012.54 | $6,191.72 | -$1,925.83 | $1,484,086.72 |
| 16 | $1,484,086.72 | $6,183.69 | -$1,933.85 | $1,482,152.86 |
| 17 | $1,482,152.86 | $6,175.64 | -$1,941.91 | $1,480,210.95 |
| 18 | $1,480,210.95 | $6,167.55 | -$1,950.00 | $1,478,260.95 |
| 19 | $1,478,260.95 | $6,159.42 | -$1,958.13 | $1,476,302.82 |
| 20 | $1,476,302.82 | $6,151.26 | -$1,966.29 | $1,474,336.53 |
| 21 | $1,474,336.53 | $6,143.07 | -$1,974.48 | $1,472,362.05 |
| 22 | $1,472,362.05 | $6,134.84 | -$1,982.71 | $1,470,379.35 |
| 23 | $1,470,379.35 | $6,126.58 | -$1,990.97 | $1,468,388.38 |
| 24 | $1,468,388.38 | $6,118.28 | -$1,999.26 | $1,466,389.12 |

4837-5166-5621 v.1

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

## PROMISSORY NOTE

**$756,075**                                                    **Dated: December 30, 2020**

In consideration of the mutual promises, agreements and covenants contained herein, the undersigned, Vickie White ("Obligor"), agrees and promises to pay Astrid Cooper ("Obligee") Seven Hundred Fifty Six Thousand Seventy-Five Dollars ($756,075) ("Principal Amount"), with interest as stated in this Promissory Note.

1.    **Promissory Note Secured by Stock**. All sums due under this Promissory Note are secured by 100% of Astrid's Interests, being 5% of the membership interests in Chicago South Loop Hotel, LLC, as defined in the CSLH Membership Interest Purchase Agreement entered into by the parties on December 30, 2020. Obligor grants to Obligee a first priority security interest in Astrid's Interests and pledges Astrid's Interests to Obligee pursuant to the Security Agreement of even date hereof.

2.    **Payment of Principal and Interest**. This Promissory Note shall bear interest at the rate of five (5%) percent per annum and amortized over two (2) years until the Principal Amount has been paid in full, as reflected on **Exhibit 1** to this Promissory Note. Obligor shall pay to Obligee the Principal Amount with: (a) 24 equal monthly installments of **$4,058.77**, with the first monthly installment due on March 1, 2021, and thereafter on the first of each month, and (b) the final payment of **$733,194.56** due February 1, 2023, in accordance with the amortization schedule attached as **Exhibit 1**.

A late charge equal to 5% of the amount of any principal and interest installment so due, or equal to $25, whichever is greater, shall be added to such installment payment if not made within seven calendar days after the due date.

3.    **Payments**. All payments due hereunder are to be made to Obligee via electronic transfer or such place designated in writing by Obligee, in the most legal tender of the United States of America current on the date such sums or payments are respectively due.

4.    **Default and Acceleration of Indebtedness**.    If any payment due on this Promissory Note is not received by Obligee within five (5) days after the due date, Obligee shall provide written notice to Obligor and a copy of such notice via electronic mail. Obligor shall have five (5) days after such notice to cure the default by making such payment in accordance with this Note (the "Cure Period"). If the payment remains unpaid after the Cure Period, the entire unpaid Principal Amount, together with interest accrued thereon, shall become immediately due and payable at the place of payment aforesaid.

Obligor hereby agrees that in the event any payment due hereunder is not paid within five (5) days of the Due Date or during the subsequent Cure Period, that the rate of interest on this Note, at the election of Obligee without notice or demand, which is hereby expressly waived, shall be increased to be equal to 9% per year ("Default Rate"). Obligor shall be obligated to pay interest on the unpaid principal balance of this Note at the Default Rate, to be computed from the Note's origination date through and including the date of actual receipt of the overdue payment, whether that overdue payment is a monthly installment payment or the entire indebtedness. Nothing herein shall be construed as an agreement or privilege to accelerate or extend the date of the payment of

1

**EXHIBIT C**

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

any installment of the indebtedness, or of the entire indebtedness, nor as a waiver of any other right or remedy accruing to Obligee by reason of any such default.

5.  **Remedies**.  The remedies of Obligee, or other holder hereof, as provided herein and in the Security Agreement shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Obligee, or other holder hereof, and may be exercised as often as occasion therefore shall arise.  Failure of Obligee, or other holder hereof, for any period of time or on more than one occasion, to exercise its option to accelerate the indebtedness, as provided in Section 4 hereof, shall not constitute a waiver of the right to exercise the same at any time thereafter.  No act of omission or commission of Obligee, or other holder hereof, including specifically any failure to exercise any right, remedy or recourse, shall be deemed a waiver or release of the same and any such waiver or release is to be effected only through a written document executed by Obligee, or other holder hereof, and then only to the extent specifically recited therein.

6.  **No Waiver**.  A waiver or release with reference to any one Event of Default shall not be construed as a waiver or release of any subsequent Event of Default or as a bar to any subsequent exercise of Obligee's or other holder's rights or remedies hereunder.  Except as otherwise specifically required herein, notice of the exercise of any right or remedy granted to Obligee, or other holder hereof, by this Promissory Note is not required to be given.

7.  **Prepayment**.  Obligor shall have the right to prepay, without penalty, the unpaid Principal Amount, in whole or in part, at any time.

8.  **Costs of Collection**.  In the event that this Promissory Note is placed in the hands of an attorney-at-law for collection upon the occurrence of an Event of Default or to enforce any of the rights or requirements contained herein; or in the event that proceedings at law, in equity, bankruptcy, receivership or other legal proceedings are instituted in connection herewith; or if Obligee, or other holder hereof, is made a party to any such proceeding, Obligor hereby agrees to pay all reasonable costs of collecting or attempting to collect this Promissory Note, as well as to pay all reasonable costs of collecting or attempting to collect from Obligor any outstanding amounts due hereunder and any costs of protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to the Principal Amount, interest and other amounts payable hereunder.

9.  **Waiver of Presentment, Protest and Notice of Dishonor**.  Obligor and all other makers, endorsers, guarantors and sureties hereof, if any, jointly and severally waive presentment, protest and notice of dishonor.

10.  **Business Purposes**.  This Promissory Note is made for business purposes.

11.  **Time**.  Time is of the essence of this Promissory Note and each of the provisions hereof.

12.  **Governing Law**.  This Promissory Note has been negotiated in, has been executed and delivered in, is payable in and shall be governed by the laws of the State of Illinois.

4849-1119-4069 v.1

13.     **Headings**.  All headings are for reference purposes only and shall not be construed to define or otherwise limit the provisions of this Promissory Note.

14.     **Interpretation**.  The language in all parts of this Promissory Note shall be in all cases construed simply according to its fair meaning and not strictly for or against any party.  All words used herein in the singular number shall extend to and include the plural number.  All words used herein in the plural number shall extend to and include the singular number.  All words used in any gender, male, female or neuter shall extend to and include all genders as may be applicable in any particular context.  This Promissory Note has been negotiated at arms' length between persons knowledgeable in the matters dealt with herein.  Accordingly, any rule of law or any other statutes, legal decisions or common law principles of similar effect that would require interpretation of any ambiguities against the party that has drafted it or them are of no application and are hereby expressly waived by all parties hereto.

15.     **Binding Agreement; Assignment**.  This Promissory Note shall be binding upon and inure to the benefit of the parties named herein and to their respective successors and assigns.  This Promissory Note may be assigned by Obligee without the consent of Obligor.  This Promissory Note and the rights, interests and obligations of Obligor may not be assigned without the written consent of Obligee.

**IN WITNESS WHEREOF**, Obligor has executed and delivered this Promissory Note on the day and year first above written.

OBLIGOR

_____
Vickie White

4849-1119-4069 v.1

3

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

# Amortization Schedule

## EXHIBIT 1 to Cooper Promissory Note

# Business Loan Calculator



| Loan Amount | 756075 |
| Interest Rate | 5 |
| Compound | Monthly (APR) |
| Loan Term | 30 years |
|  | 0 months |
| Pay Back | Every Month |
| Origination Fee | 0 |
| Documentation Fee | |
| Other Fees | 0 |

**$4,058.77 Per Month**

| Total of 360 Loan Payments | $1,461,158.67 |
| Interest | $705,083.67 |

## Amortization Schedule

|  | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $756,075.00 | $3,150.31 | -$908.46 | $755,166.54 |
| 2 | $755,166.54 | $3,146.53 | -$912.25 | $754,254.29 |
| 3 | $754,254.29 | $3,142.73 | -$916.05 | $753,338.24 |
| 4 | $753,338.24 | $3,138.91 | -$919.86 | $752,418.38 |
| 5 | $752,418.38 | $3,135.08 | -$923.70 | $751,494.68 |
| 6 | $751,494.68 | $3,131.23 | -$927.55 | $750,567.14 |

4

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

| | | | | | |
|---|---|---|---|---|---|
| 7 | | $750,567.14 | $3,127.36 | -$931.41 | $749,635.72 |
| 8 | | $749,635.72 | $3,123.48 | -$935.29 | $748,700.43 |
| 9 | | $748,700.43 | $3,119.59 | -$939.19 | $747,761.24 |
| 10 | | $747,761.24 | $3,115.67 | -$943.10 | $746,818.14 |
| 11 | | $746,818.14 | $3,111.74 | -$947.03 | $745,871.11 |
| 12 | | $745,871.11 | $3,107.80 | -$950.98 | $744,920.13 |
| **Year #1 End** | | | | | |
| 13 | | $744,920.13 | $3,103.83 | -$954.94 | $743,965.19 |
| 14 | | $743,965.19 | $3,099.85 | -$958.92 | $743,006.27 |
| 15 | | $743,006.27 | $3,095.86 | -$962.91 | $742,043.36 |
| 16 | | $742,043.36 | $3,091.85 | -$966.93 | $741,076.43 |
| 17 | | $741,076.43 | $3,087.82 | -$970.96 | $740,105.48 |
| 18 | | $740,105.48 | $3,083.77 | -$975.00 | $739,130.47 |
| 19 | | $739,130.47 | $3,079.71 | -$979.06 | $738,151.41 |
| 20 | | $738,151.41 | $3,075.63 | -$983.14 | $737,168.27 |
| 21 | | $737,168.27 | $3,071.53 | -$987.24 | $736,181.03 |
| 22 | | $736,181.03 | $3,067.42 | -$991.35 | $735,189.67 |
| 23 | | $735,189.67 | $3,063.29 | -$995.48 | $734,194.19 |
| 24 | | $734,194.19 | $3,059.14 | -$999.63 | $733,194.56 |

4849-1119-4069 v.1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

| | |
|---|---|
| DR. VICKIE WHITE, individually and derivatively on behalf of CHICAGO SOUTH LOOP HOTEL, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>VIVIAN MURPHY, ASTRID COOPER, and CHICAGO SOUTH LOOP HOTEL, LLC, a nominal defendant,<br><br>*Defendants.* | No.    2019 CH 10966 |

VIVIAN MURPHY, ASTRID COOPER,
and CHICAGO SOUTH LOOP HOTEL,
LLC, a nominal defendant,

    *Defendants, Counter-Plaintiffs and
    Third-Party Plaintiffs,*

            v.

DR. VICKIE WHITE, individually and
derivatively on behalf of CHICAGO
SOUTH LOOP HOTEL, LLC,

    *Plaintiff/Counter-Defendant.*

    AND

LOUIS DODD; SECTOR CORPORATION,
and Illinois corporation; PREMIER
HOSPITALITY, LLC, an Illinois limited
liability company; and PARIS FOUNTIS,

    *Third-Party Defendants.*

## AGREED ORDER

THIS CAUSE coming on to be heard for status, the Court being advised that all

issues and controversies between the parties and all causes of action raised in the pleadings

## EXHIBIT D

FILED DATE: 6/13/2023 2:06 PM   2019CH10966

have been fully compromised and settled, the parties having stipulated and agreed to dismissal of the complaint and counterclaim with prejudice, each party to bear its own costs,

IT IS HEREBY ORDERED:

    The complaint and counterclaim are dismissed with prejudice, each party to bear its own costs. This Court shall retain jurisdiction of this cause to enforce the settlement agreement between the parties.

    This is a final order disposing of all matters between the parties.

ENTER:

_____
JUDGE

Judge Pamela McLean Meyerson

JAN 20 2021

Circuit Court - 2097

J. Mark Lukanich
Attorney for Dr. Vickie White
7270 W. College Drive, Suite 101
Palos Heights, IL  60463
708-361-5556
jmlukanich@mindspring.com
Attorney No. 39983

2

FILED DATE: 6/13/2023 2:06 PM    2019CH10966

**CALCULATION OF AMOUNT DUE FROM VICKIE WHITE TO VIVIAN MURPHY**

**December  2022 Payment**

$100,810 x 9% = $9,072/year / $24.86/day.

Interest due on the December 2022 Payment from December 30, 2020 through June 30, 2023 is $22,680 ($9,072 x 2.5 years).

Principal + interest through June 30, 2023 = $100,810 + $22,680 = <u>$123,490</u>

**January and February 2023 Monthly Payments**

$8,117.55/month x 2 = $16,235.10 x 9% = $1,461.16/year/ $4.00/day.

Interest due on the January and February 2023 Monthly Payments from February 1, 2023 through June 30, 2023 is $4.00 x 149 days = $596.47

Principal + interest through June 30, 2023 = $16,235.10 + $596.47 = <u>$16,831.57</u>.

**Balloon Payment**

$1,466,389.12 x 5% = $73,319.46 per year / $200.88/day.  As of January 31, 2022, White had paid interest for two years and 31 days at 5% on the Balloon Payment of $146,638.90.

$1,466,389.12 x 9% = $131,975.02 per year / $361.58/day.  As of January 31, 2022, two years interest at 9% on the Balloon Payment is $263,950.04.

$263,950.04 - $146,638.90 = $117,311.14 difference due January 31, 2020 – January 31, 2023.

Interest at 9% February 1 – June 30, 2023 = $361.58/day x 149 = $53,875.42.

Total interest due Dec 31, 2020 – June 30, 2023 = $117,311.14 + $53,875.42 = $171,186.56.

Principal + interest through June 30, 2023 = $1,466,389.12 + $171,186.56 = <u>$1,637,575.68</u>.

**CALCULATION OF AMOUNT DUE FROM VICKIE WHITE TO ASTRID COOPER**

Vivian Murphy owned 10% of the membership interests of CSLH and Astrid Cooper owned 5%. The purchase price for Astrid Cooper's membership interests was 50% of what was paid to Vivian Murphy.  The calculation of the amount due from Vickie White to Astrid Cooper is identical, but at 50% of the amount shown for Vivian Murphy.

**<u>EXHIBIT E</u>**

# EXHIBIT O

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

DR. VICKIE WHITE,
    *Plaintiff,*
    **v.**
VIVIAN MURPHY *et. al.,*
    *Defendants.*

VIVIAN MURPHY *et. al,*
    *Defendants/Counter-Plaintiffs/Third-*
    *Party Plaintiffs,*
    **v.**
DR. VICKIE WHITE,
    *Plaintiff/Counter-Defendant.*
    **AND**
LOUIS DODD; SECTOR CORPORATION,
an Illinois corporation; PREMIER
HOSPITALITY, LLC, an Illinois limited
liability company; and PARIS FOUNTIS,
    *Third-Party Defendants.*

No. 19 CH 10966

Judge Pamela McLean Meyerson

SEP 27 2023

Circuit Court – 2097

## ORDER

THIS MATTER coming to be heard on Defendants/Counter-Plaintiffs Vivian Murphy and Astrid Cooper's Motion to Enforce Settlement Agreement; due notice having been given; the motion having been fully briefed; and the Court having heard argument of counsel and otherwise being fully advised in the premises;

IT IS HEREBY ORDERED that:

1. The Motion to Enforce Settlement Agreement is granted.

2. This matter is set for status on attorney's fees and entry of a judgment on <u>October 10 , 2023</u> at <u>10:15 AM</u> via Zoom. (ID: 928 9663 2736; Password: 813107).

Judge Pamela McLean Meyerson

Scott M. Levin
Howard & Howard Attorneys PLLC #46359
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604-2461
(312) 456-3418
*sml@h2law.com*

ENTERED:

SEP 27 2023

Circuit Court – 2097

Judge

# EXHIBIT P

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

DR. VICKIE WHITE,
     *Plaintiff,*
     **v.**
VIVIAN MURPHY *et. al.,*
     *Defendants.*

No. 19 CH 10966

VIVIAN MURPHY *et. al,*
     *Defendants/Counter-Plaintiffs/Third-Party Plaintiffs,*
     **v.**
DR. VICKIE WHITE,
     *Plaintiff/Counter-Defendant.*

## JUDGMENT ORDER

     THIS MATTER coming to be heard on for entry of judgment on Defendants/Counter-Plaintiffs Vivian Murphy and Astrid Cooper's Motion to Enforce Settlement Agreement; the Court having granted the motion on September 27, 2023; due notice having been given; and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that:

     1.  Judgment is entered in favor of Vivian Murphy and against Vickie White in the amount of **$1,817,147.25** (which amount is inclusive of both prejudgment interest through September 27, 2023 and attorney's fees of $4,500).

     2.  Judgment is entered in favor of Astrid Cooper and against Vickie White in the amount of **$910,823.63** (which amount is inclusive of both prejudgment interest through September 27, 2023 and attorney's fees of $4,500).

     3.  This is a final judgment pursuant to Illinois Supreme Court Rule 303, all matters having been resolved.

Judge Pamela McLean Meyerson

OCT 1 0 2023

ENTERED:

Circuit Court – 2097

Scott M. Levin
Howard & Howard Attorneys PLLC #46359
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604-2461
(312) 456-3418 / sml@h2law.com

Judge

# EXHIBIT Q

FILED DATE: 9/23/2019 1:33 PM   2019CH10966
FILED DATE: 3/1/2019 7:28 PM   2019L002607

## Amendment to Operating Agreement Chicago South Loop Hotel, LLC dated July 17, 2018

**WHEREAS,** Section 12 of the Company's Operating Agreement is entitled: "Rights and Powers of Members" and Section 12.2 states of the Company's Operating Agreement, in part and effect, by operation of the Amendment to the Operating Agreement dated March 14, 2007, that the Co-Managers of the limited liability company shall have the authority to amend the Operating Agreement provided that any such amendment shall have received the consent of those Members whose aggregate percentage interests in the limited liability company exceed fifty percent (50%) of the total percentage interests of all Members of the limited liability company and the agreement of a majority in number of the managers.

**NOW, THEREFORE,** the undersigned Members of Chicago South Loop Hotel, LLC, an Illinois limited liability company, constituting a majority of the Members of the Company and constituting a majority of the vote needed under the Operating Agreement, do hereby resolve and enter into this Amendment to Operating Agreement Chicago South Loop Hotel, LLC.

1. Section 3 of the Operating Agreement entitled: "**REGISTERED OFFICE AND AGENT**" is hereby revoked in its entirety and the following is substituted in its stead:

"**Section 3. "REGISTERED OFFICE AND AGENT"**

The name of the registered agent of the limited liability company shall be CT Corporation. The registered office of the limited liability company shall be located at 2600 S. State Street, Chicago, Illinois 60616 and the addressee of the registered office shall be: Attention: President, Vice President, Secretary and Treasurer."

2. Section 9 of the Company's Operating Agreement is entitled: "**DESIGNATION OF MANAGER**" and Section 9.2 and 9.3 states, in part and effect by Amendment to the Operating Agreement dated March 14, 2007, that all of the business and affairs of the Company are managed by the Co-Managers. Section 9.2 is hereby revoked in its entirety and the following is substituted in its stead:

"**Section 9.2** Any of the Co-Managers of the limited liability company may be removed for cause determined by the remaining Members at a meeting of the Members or by other action of the Members to be held or taken at each meeting of the Members, or as soon thereafter as such meeting or action can be held or taken by written resolution or other appropriate written instrument."

3. This Amendment to Operating Agreement Chicago South Loop Hotel, LLC dated July 17, 2018 may be executed in any number of counterparts, each of which shall be deemed an original, and each of which will constitute one and the same document.

**IN WITNESS WHEREOF,** the undersigned Members of Chicago South Loop Hotel, LLC, have executed this Amendment to Operating Agreement Chicago South Loop Hotel, LLC dated July 17, 2018 as of the date first above written.

MEMBERS:

_Vickie White_   7-18-28
Vickie White

_Vivian Murphy_   7-18-18
Vivian Murphy

_Astrid Cooper_   7-18-18
Astrid Cooper

# EXHIBIT R

FILED DATE: 9/23/2019 1:33 PM   2019CH10966
FILED DATE: 3/11/2019 7:28 PM   2019L002607

## WRITTEN CONSENT AND RESOLUTION OF MEMBERS
### OF CHICAGO SOUTH LOOP HOTEL, LLC

THIS WRITTEN CONSENT AND RESOLUTION OF THE MEMBERS OF CHICAGO SOUTH LOOP HOTEL, LLC dated as of July 18, 2018 (this "Written Consent and Resolution of the Members") is entered into pursuant to that certain operating agreement of the Chicago South Loop Hotel LLC (the "Operating Agreement"), a manager-managed limited liability company organized under the laws of the State of Illinois (the "Company"). The undersigned, constituting a majority of the Members of the Company and constituting a majority of the vote needed under the Operating Agreement, do hereby resolve and enter into this Written Consent and Resolution of Members in accordance the Operating Agreement in lieu of formal meeting to the following actions:

WHEREAS, Section 9.2 of the Company's Operating Agreement states that any of the Co-Managers of the limited liability company may be removed for cause determined by the remaining Members at a meeting of the Members or by other action of the Members to he held or taken at each meeting of the Members, or as soon thereafter as such meeting or action can be held or taken by written resolution or other appropriate written instrument.;

WHEREAS, all Members have previously served as Co-Managers of the Company;

WHEREAS, Louis Dodd is being removed as a Co-Manager and Secretary of the Company, for cause;

WHEREAS, James D. White, President, Jerry Cooper, Assistant Secretary, Floyd Mix DDS, Treasurer are deceased and therefore, by operation of law, no longer serves as Co-Managers and have been succeeded by their lawful heirs; who are now Co-Managers;

WHEREAS, Vickie White, the sole legal heir to James D. White, Vivian Murphy, the sole legal heir to Floyd Mix, DDS, and Astrid Cooper, the sole legal heir to Jerry Cooper are now, and have been, a Members and Co-Managers; and

WHEREAS, the Members holding a Majority Interest of the Membership Interests of the Company wish to remove Louis Dodd as Co-Manager of the Company.

NOW, THEREFORE, the undersigned hereby agree as follows:

1.      Louis Dodd is hereby removed for cause as Co-Manager;

2.      Louis Dodd is Co-Owner of the Company and shall have no authority, power, rights, or privileges regarding all hotel operations;

3.      James D. White, Co-Manager and President, Jerry Cooper, Co-Manager and Assistant Secretary, and Floyd Mix DDS, Co-Manager and Treasurer have been removed due to their respective deaths and have been succeeded by their respective lawful heirs, Vickie White, the sole legal heir to James D. White, Vivian Murphy, the sole legal heir to Floyd Mix, DDS, and Astrid Cooper, the sole legal heir to Jerry Cooper;

FILED DATE: 9/23/2019 1:33 PM   2019CH10966
FILED DATE: 3/11/2019 7:28 PM   2019L002607

4.    Vickie White, the sole legal heir to James D. White and holds 42.5% of the membership interests in the Company is hereby elected President and shall continue to serve as Co-Manager and is Co-Owner of the Company;

5.    Vivian Murphy, the sole legal heir to Floyd Mix DDS and holds 10% of the membership interests in the Company is hereby elected Treasurer and shall continue to serve as Co-Manager and is Co-Owner of the Company;

6.    Astrid Cooper, the sole legal heir to Jerry Cooper and holds 5% of the membership interests in the Company is hereby elected Secretary and shall continue to serve as Co-Manager and is Co-Owner of the Company;

7.    The remaining Co-Owners/Co-Managers, Vickie White, Vivian Murphy and Astrid Cooper are the only authorized contact persons of the South Loop Hotel and shall have full authority, power, rights and privileges concerning any and all business matters regarding all hotel operations as written and agreed upon in the Amendment of the Chicago South Loop Hotel Operating Agreement, dated March 14, 2007;

8.    All expenditures of the company, which exceed $5,000.00, require two (2) written estimates and shall be reviewed and approved by the majority vote of the Co-Owners/Co-Managers of the company, prior to any and all work to be performed;

9.    Any written proposal or estimate must include the detailing and the scope of any work to be completed along with the cost estimate.  Original proposals, receipts and invoices must be presented to the co- managers for any and all expenditures;

10.    That the remaining Co-Owners/ Co-Managers of the Company, Vickie White, Vivian Murphy and Astrid Cooper are hereby authorized to take any and all actions necessary and proper to carry out the intent of this Written Consent and Resolution of the Members; and

11.    This Written Consent and Resolution of the Members may be executed in any number of counterparts, each of which shall be deemed an original, and each of which will constitute one and the same document.

IN WITNESS WHEREOF, the undersigned Members constituting a legal majority of the Members of Chicago South Loop Hotel, LLC in number and membership interest, have executed this Written Consent of the Majority of the Members of the Company as of the date first above written.

MEMBERS:

_Vickie White_    7-18-18
Vickie White

_Vivian M Murphy_    7-18-18
Vivian Murphy

_Astrid Cooper_    7-18-2018
Astrid Cooper