UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Chicago South Loop Hotel Owner, LLC, | ) | Case No. 25-12829 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

**<u>MEMORANDUM OPINION</u>**

This matter comes to be heard on the Motion of Louis Dodd to Dismiss this Chapter 11 Case or to Appoint a Chapter 11 Trustee. The court has reviewed the parties' pleadings, listened to their arguments, and the matter is now ripe for decision. As explained below, the court grants the Motion to Dismiss under section 1112(b) of the Code.

This is the second chapter 11 case filed by the Debtor, Chicago South Loop Hotel Owner, LLC, in the last several years. The prior case, case number 23-02595, was dismissed in May 2023 because the petition was filed without proper authority as Todd Hansen did not have authority to file the chapter 11 petition on behalf of the Debtor. The new case was initiated by an involuntary petition filed by Tiffany Webb, a creditor.[1] The Debtor responded by filing a new voluntary chapter 11 petition, again, signed by Todd Hansen who is identified as the "authorized representative" of the Debtor. (Dkt. 23). Chicago South Loop Hotel, LLC (Parent) is listed as the 100% member of the Debtor. Nothing more has been provided to demonstrate Todd Hansen's authority to bind the Debtor or to provide direction for it.[2]

In the months since the second filing, the Debtor has taken advantage of the automatic stay, has filed monthly operating reports much later than required, if at all, and has made adequate protection payments to its lender, Hospitality Structured Funding IV, LLC (Hospitality). Those payments are made

---

[1] A creditor may initiate an involuntary petition may when there are less than 12 creditors. 11 U.S.C. § 303(b)

[2] It is unclear whether Todd Hansen is an employee of the Debtor or the Parent.

from revenue (the rent) it receives from Chicago South Loop Hotel.  It is not clear what a proposed plan would look like, and no plan has been proposed in the months since the voluntary petition was filed.  As explained below, the court will grant the Motion to Dismiss as cause exists under Section 1112(b) of the Code.

## I.       Jurisdiction

The court retains jurisdiction to dismiss even though it appears that the voluntary petition was filed without proper authority.  Bankruptcy courts maintain "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).  Bankruptcy courts also maintain subject matter jurisdiction "over all cases filed under the Bankruptcy Code," and "eligibility for relief . . . is a question of substantive bankruptcy law." *In re Auto. Pros., Inc.*, 370 B.R. 161, 167 (Bankr. N.D. Ill. 2007); *Promenade Nat'l Bank v. Phillips (Matter of Phillips),* 844 F.2d 230, 236 n. 2 (5th Cir. 1988).  Jurisdiction under Title 28 "extends to 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.'" *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994); 28 U.S.C. § 157(a).[3]

## II.      Background

Nothing more has been put forth vesting authority in Todd Hansen.  The court made extensive findings of fact in the prior case, which it minimally reiterates for purposes of understanding in the current case.  *See In re Chicago S. Loop Hotel Owner, LLC*, No. 23-02595, 2023 WL 3643533, (Bankr. N.D. Ill. May 24, 2023).  The Debtor is an Illinois limited liability company that owns the building in which the Chicago South Loop Hotel operates.  Essentially, the

---

[3] Several circuit courts have recently weighed in on whether a lack of authority to file impacts a bankruptcy court's subject matter jurisdiction.  The Seventh Circuit has not addressed this issue, but others have. *See In re Parks Diversified, L.P.* 2026 WL 588285 (9th Cir., March 3, 2026); *New Haven Radio, Inc. v. Meister (In re Marin-Trigona*), 760 F.2d 1334, 1340 (2d Cir. 1985)*; Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc.)* 152 F.4th 432, 443 (3d Cir. 2025).  This court finds that it even if it does not have subject matter jurisdiction, it is not needed to enter an order dismissing this case under 11 U.S.C. § 1112(b)(1).

Debtor is the owner of the building and the personal property that comprises the Chicago South Loop Hotel. The Debtor does not operate the hotel and has no employees. Although the parties have not shared a copy of a lease, the Debtor seems to receive rent from Chicago South Loop Hotel, and in turn, has made adequate protection payments to Hospitality, its lender. (Dkt. 65, Ex. A).

Numerous disputes exist at the Parent level and have been the subject of ongoing litigation in the state court since 2019.[4] The Parent's Operating Agreement, executed on January 1, 2007, and subsequent amendments to it govern the operation of the Parent. (*See* Operating Agreement, Dkt. 65, Ex. B). The Operating Agreement was executed by the Parent's four original members: Louis Dodd (42.5%), James White (42.5%), Floyd Mix (10%), and Jerry Cooper (5%).[5] *Id*. Under the Agreement, the manager of the Parent is elected annually at a meeting of the members or by other action of the members. Unanimous approval of the members is required to elect a manager. *Id*. at § 9.2. The Parent is the 100% member of the Debtor and must provide direction to the Debtor.[6] Dispute over who the rightful members of the Parent are culminated in the state court entering an order to appoint a receiver in August 2025, but the identification of the receiver was halted when Tiffany Webb filed the involuntary petition. (Dkt. 52).

The only difference between this case and the 2023 case is that it was initiated by the involuntary chapter 11 petition (Dkt. 1) after which an order for relief was entered (Dkt. 15). Several weeks later, the Debtor filed a voluntary petition. (Dkt. 23). The issue in this case is

---

[4] Among these ongoing disputes is the alleged wrongful removal of Louis Dodd as co-manager and the subsequent appointment of Todd Hansen as co-manager, and the sale of Vickie White's interest to Vivian Murphy and Astrid Cooper without Louis Dodd's consent in violation of the Operating Agreement. *See generally In re Chicago S. Loop Hotel Owner, LLC*, No. 23-02595, 2023 WL 3643533.

[5] James White, Floyd Mix, and Jerry Cooper died after the Parent was formed, and their membership interests were inherited by Vickie White, Vivian Murphy, and Astrid Cooper. (Dkt. 52). An unsigned amendment—which the court assumes is valid for purposes of this ruling—states that inherited interests will have the same rights as the original owner. (Amendment to Operating Agreement, Dkt. 65, Ex B).

[6] The court has not been given an operating agreement for the Debtor.

3

substantially the same as it was in 2023: does Todd Hansen have authority to direct the Debtor in bankruptcy?  No additional authority has been furnished demonstrating that Todd Hansen holds authority to direct the Debtor in this second case.  And the lack of direction in this case may very well be caused by the lack of authority and bickering within the Parent.

After examining the claims filed, it appears there are several alleged secured and unsecured creditors, although it is not clear whether these are claims against the operating hotel or the Debtor. To date the only significant activity in six months has been the monthly payment of adequate protection to Hospitality.  No plan has been filed, and the Debtor's receipts appear to be approximately $60,000 per month with a payment of $41,758 as adequate protection to Hospitality nearly every month. (Dkt. 61).[7]  No other activity moving the case forward has occurred.  The case is essentially a single asset real estate case under 11 U.S.C. § 101(51B)[8] where the Debtor has been enjoying the haven of the automatic stay yet not taking on the responsibility of proposing or negotiating a confirmable plan.

### III.    Discussion

### A.  Section 1112(b) Mandates Dismissal After the Court Finds Cause.

Section 1112(b) of the Code provides for the conversion or dismissal of a chapter 11 case on motion of a party in interest.  Before Congress amended the Code in 2005, conversion or dismissal under section 1112(b) was a matter left mostly to the court's discretion.  In 2005, that discretion was limited with the substitution of the word "shall" for "may."  If the movant meets its burden of proof, conversion or dismissal is mandatory. *See In re Aurora Memory Care, LLC,* 589 B.R. 631 (Bankr. N.D. Ill 2018).

---

[7] Monthly operating reports have been many months late, and no monthly operating report seems to have been filed for December 2025.

[8] Had this case been filed as a single asset real estate case under §101(51B), the Debtor would have been required to file a plan within 90 days of the petition date or within 30 days of the determination under §362(d)(3).

The amended section of 1112(b)(2) also incorporates a burden-shifting scheme under which the debtor may resist an otherwise mandatory conversion or dismissal.  But absent unusual circumstances, the court must not convert or dismiss a case if (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time. 11 U.S.C. § 1112(b)(2); 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1112.04 (16th ed. 2026).

The Code does not explain "unusual circumstances," but the phrase "contemplates conditions that are not common in most chapter 11 cases." *In re Aurora Memory Care, LLC,* 589 B.R. at 638.  The debtor must also demonstrate that it is reasonably likely that a plan will be confirmed within the time set by statute and that the debtor had a "reasonable justification" for the act or omission constituting "cause" for conversion or dismissal, and the act or omission will be cured within a "reasonable time." 11 U.S.C. § 1121(b)(2)(A) and (B); *In re Orbit Petroleum, Inc.* 395 B.R. 145, 148 (Bankr. D.N.M. 2008).

## B. Cause Exists to Dismiss.

Cause exists to dismiss for two reasons: (1) The disputes at the Parent level are paralyzing the Debtor's ability to move forward with this case; (2) No reasonable likelihood of the proposal and confirmation of a plan exists.

### 1. Debtor Has Not Demonstrated It Held Authority to File a Chapter 11 Petition or That it is Capable of Proposing a Plan.

In its 2023 opinion, the court detailed why Todd Hansen lacked the authority to file on behalf of the Debtor. *In re Chicago S. Loop Hotel Owner, LLC*, No. 23-02595, 2023 WL 3643533, at *3.

The same lack of authority appears to be preventing the Debtor from proposing a confirmable plan. The 2007 Operating Agreement remains in effect with no additional amendments since 2023. The Parent's operations did not comply with the Operating Agreement. The Debtor was controlled by its sole member, the Parent, which was obligated to abide by the requirements set forth in the Operating Agreement. The Operating Agreement provides for the four members to act as co-managers. (23-02595, March 14, 2007 Amendment, Dkt. 49, Ex. 3).[9] Under the terms of the Operating Agreement and its amendments, Vickie White did not validly acquire a membership interest large enough to gain control of the Parent, and she did not have the authority to transfer her interest to Holdings without the consent of the other four members. Consequently, Hansen does not have the requisite authority to sign any chapter 11 documents on the Debtor's behalf or to direct the Debtor's lawyer.

At a hearing held on January 28, 2026, the court heard for the first time that there was a settlement agreement in 2019 in a state court action between Vivian Murphy, Astrid Cooper, Chicago South Loop Hotel, Vickie White, and Louis Dodd purporting to give Vickie White 57.5% ownership in the Debtor. Transcript of Record at 11-13, *In Re Chicago South Loop Hotel Owner, LLC*, 25-12829 (2025) (Dkt. 82). The court asked where the settlement agreement was, and the Debtor's attorney said that "the settlement agreement is not on the court's docket" and that he had no access to this document. *Id*. at 14-15. In response, the court ordered the parties to submit any documents or briefing showing this settlement by February 18th.

In its supplemental response, the Debtor states that the Circuit Court of Cook County approved the sale of Astrid Cooper's and Vivian Murphy's interests to Vickie White, giving her 57.5% ownership. (Dkt. 88). Despite saying he did not have access to the settlement documents,

---

[9] This exhibit is from the first case as none of the parties filed it in the second.

the Debtor's attorney said the agreement was attached as Exhibit F to its original response to Louis Dodd's Motion to Dismiss or to Appoint a Trustee, which the Debtor claims "was enough to authorize the sale." (Dkt. 88). The Debtor asserts that "[w]hile the Purchase Agreement is not titled settlement agreement, it acts as a settlement of the claims between the parties" for which the Debtor claims there is a state court order approving it at Exhibit G in its response. (Dkt. 88). As proof that the Purchase Agreement was a settlement agreement, the Debtor attached Vivian Murphy's and Astrid Cooper's Motion to Enforce Settlement Agreement (Dkt. 88, Ex. N). This motion was granted by the Circuit Court of Cook County on September 27, 2023. (Dkt. 88, Ex. O).

Mr. Dodd argues that the 2019 lawsuit and subsequent settlement were between Astrid Cooper, Vivian Murphy, and Vickie White, and Mr. Dodd "never filed a formal appearance or a pleading in the case." (Dkt. 89). Attached to Mr. Dodd's supplemental response is the Stipulation and Agreed Order from the 2019 lawsuit, which provides that Mr. Dodd disputes his dismissal as co-manager, disputes who has authority to operate the Debtor, challenges the management in place, and reserves all rights of the parties (Dkt. 89, Ex. D). Additionally, Mr. Dodd "asserts that there is no … settlement agreement" dispositive to this matter to which Mr. Dodd is a party. (Dkt. 89).

Examining the evidence shows Mr. Dodd is correct. The Purchase Agreement is between Vickie White, Vivian Murphy, and Astrid Cooper. Mr. Dodd was only an ancillary party added to the lawsuit when Astrid Cooper and Vivian Murphy countersued Vickie White. (Dkt. 89, Ex. B). Mr. Dodd did not sign the Purchase Agreement, and it appears his only involvement in the Purchase Agreement is detailed in an email from May 4, 2023 to Todd Hansen. In that email, a Mr. Mark Lukanich informs Mr. Hansen that he told counsel for Mr. Dodd in the state court action

7

that Vickie White was going to sign the Purchase Agreement and that Mr. Dodd did not object when the court was told that she was going to sign. (Dkt. 65, Ex. E).[10]

More importantly, the 2007 Operating Agreement states that only an economic interest may be transferred if all members do not approve of the transfer or assignment. (Dkt. 65, Ex. B at § 13.1). Mr. Dodd clearly was not a party to the Purchase Agreement as he did not sign it nor execute it. Without his approval, Vivian Murphy and Astrid Cooper could only sell their economic interest to Vickie White. Although Vickie White may have assumed a greater economic interest, she only maintained 42.5% of membership interest and did not give Vivian Murphy and Astrid Cooper the "right to participate in the management of the business and affairs of the limited liability company or to become a member." *Id*. There is no evidence in the record that Mr. Dodd consented to Vickie White selling her full membership interest, therefore, neither Vivian Murphy nor Astrid Cooper ever became managers. This inability to operate is preventing the Debtor from efficiently prosecuting this chapter 11 case toward confirmation of a plan.

**2. No Reasonable Likelihood Exists That a Plan Will be Filed or Confirmed.**

The Debtor owns a building and the personal property currently used for the Chicago South Loop Hotel. It does not operate the hotel but does receive monthly rent. Days before this case was filed, the state court was prepared to appoint a receiver. The bankruptcy case appears to be nothing more than an attempt to avoid the appointment of the state court receiver.[11] As described throughout this Opinion, it is clear that the Debtor's Parent is incapable of operating, and this prevents the Debtor from successfully navigating a chapter 11 case.

---

[10] This is at best hearsay and no further evidence was provided.

[11] This represents bad faith as the Debtor appears to be using bankruptcy for the tactical purpose of avoiding the receiver. In assessing bad faith, one crucial inquiry is "whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization.'" *In re Liptak*, 304 B.R. 820, 828 (Bankr. N.D. Ill. 2004) (citing *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994)).

Although the involuntary petition was filed in August and the voluntary petition filed shortly thereafter, to date, monthly operating reports have been filed late or not at all, and no plan has been filed or even proposed.  The managing member of the Debtor is still disputing who the appropriate managing members are, and it does not appear that this dispute will be resolved to allow the formulation of a plan.  The Parent is not a debtor in this case, and the dispute between the members of the Parent is a state law issue that can be determined in the state court. Furthermore, without movement toward a confirmable plan, protection of the automatic stay within the comfort of chapter 11 is not warranted and demonstrates bad faith. *In re Brauer*, 80 B.R. 903, 906 (N.D. Ill. 1987) (holding that failure to prosecute a case in good faith is grounds for dismissal where debtor failed to timely submit financial reports and comply with court orders).[12]

**C. Appointment of a Chapter 11 Trustee is Not in the Best Interest of This Estate.**

While Mr. Dodd asks in the alternative for the appointment of a chapter 11 trustee, and Hospitality favors appointing a trustee, both have failed to demonstrate that this is in the best interest of creditors of this estate.  Section 1104 of the Code states that "the court shall order the appointment of a trustee . . . if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).  Section (a)(2) provides a more flexible standard than section (a)(1),[13] but both sections leave the determination of whether cause exists to the discretion of the court. *In re Sharon Steel Corp,* 871 F.2d at 1226; *In re Woodlawn Comm. Dev. Corp.,* 613 B.R. 671, 684 (N.D. Ill. 2020).  When determining whether to appoint a chapter 11 trustee, courts must consider the collective "interests of creditors, equity security

---

[12] Additionally, "there is nothing improper in a debtor's thwarting state court collection proceedings by filing a Chapter 11 petition, as long as reorganization is both needed and feasible." *In re N.R. Guaranteed Ret., Inc.*, 112 B.R. 263, 273 (Bankr. N.D. Ill.), aff'd, 119 B.R. 149 (N.D. Ill. 1990). Here, reorganization does not appear feasible.

[13] Section (a)(1) mandates the appointment of a trustee when the bankruptcy court finds cause. *In re Sharon Steel Corp,* 871 F.2d 1217, 1226 (3rd Cir. 1989); *In re Spiegel*, 662 B.R. 666, 683 (Bankr. N.D. Ill. 2024).

holders and other interested parties," not one individual creditor's preference. *See In re Waterworks, Inc.*, 538 B.R. 445, 465 (Bankr. N.D. Ill. 2015).

In deciding whether collective interests are served, "the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a Trustee would be in the interests of creditors, equity security holders, and other interests of the estate." *Matter of Parker Grande Dev., Inc.*, 64 B.R. 557, 561 (Bankr. S.D. Ind. 1986). This is because "[t]he appointment of a trustee is considered an extraordinary remedy and one that requires proof by clear and convincing evidence." *Kwitchurbeliakin, LLC, v. Laporte Sav. Bank*, No. 3:10-CV-170 JVB, 2011 WL 93714, at *5 (N.D. Ind. Jan. 10, 2011). While there may be benefits to appointing a trustee, it may come at the cost of great harm to the estate as management is completely ousted and an already beleaguered estate must pay a trustee's extraordinary expenses. *See In re Waterworks, Inc.*, 538 B.R. at 465 (citations omitted).

In this case, Hospitality has received adequate protection payments each month, and along with Mr. Dodd, is the only creditor seeking appointment of a chapter 11 trustee. Other creditors assert that they are also secured, and some seem to indicate that they are unsecured. It is not clear to the court as to whether these claims are really against the Debtor or its Parent. Several are allegedly insiders of the Debtor, and, of course, its Parent. (Dkt. 52). After the prior chapter 11 case was dismissed, the Debtor returned to this court and in over six months has failed to do anything except benefit from the automatic stay, retain lawyers, and make adequate protection payments to Hospitality. It receives rent nearly every month from its Parent but nothing more. If in fact there are other creditors, none have participated or benefited from the Debtor being in bankruptcy. The addition of a chapter 11 trustee in this case is not in the best interest of the estate

10

(and if it is, no party has demonstrated this).  The court finds no reason to burden this estate with the expense of a chapter 11 trustee.

### Conclusion

The Debtor has not met its burden under section 1112(b)(2)(A) or (B), and the court can find no reason to burden a chapter 11 trustee with the assets of this estate.  Dismissal and a return to state court is merited under section 1112(b) as cause has been demonstrated.

Dated:  March 10, 2026

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

11